**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
—WHEELING DIVISION—**

**DIANA MEY, individually and on behalf of
a proposed class,**

        **Plaintiff,**

    **v.**

**LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR & MOUGEY P.A.; PRINCIPAL
LAW GROUP, LLC; MCM SERVICES
GROUP LLC; AND JOHN DOE
DEFENDANTS 1-5.**

        **Defendants.**

**Civil Action No. 5:23-cv-00046-JPB**

**DEFENDANT LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN,
O'BRIEN, BARR & MOUGEY P.A.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT ALLEGATIONS............................................................................. 2

III.  LEGAL STANDARDS ....................................................................................... 4

    A.    FRCP 12(b)(2) – Personal Jurisdiction ................................................. 4

    B.    FRCP 12(b)(1) – Article III Standing .................................................... 4

    C.    FRCP 12(b)(6) – Dismissal.................................................................... 5

IV.   ARGUMENT ...................................................................................................... 6

    A.    The Court Lacks Personal Jurisdiction .................................................. 6

        i.    The Court Does Not Have General Jurisdiction Over Levin Law ............ 7

        ii.   The Court Does Not Have Specific Jurisdiction Over Levin Law ........... 7

        iii.  The Court Does Not Have Jurisdiction Over Non-Resident Plaintiffs ................................................................................................. 9

    B.    Plaintiff Lacks Article III Standing........................................................ 10

        i.    Plaintiff Lacks Article III Standing as a Matter of Fact.......................... 10

        ii.   Plaintiff Fails to Plead Sufficient Facts Demonstrating Article III Standing. ......................................................................................... 12

    C.    Plaintiff Does Not Plead a Theory of Liability Against Levin Law ................... 13

        i.    Plaintiff Does Not Plead Direct Liability Against Levin Law................ 13

        ii.   Plaintiff Does Not Plead Vicarious Liability Against Levin Law .......... 14

    D.    Plaintiff Does Not Plead a DNC Claim ................................................. 18

        i.    The TCPA's DNC Provisions Do Not Extend to Cell Phones ............... 19

        ii.   Plaintiff Fails to Allege That Her Telephone Number is "Residential." ............................................................................. 21

        iii.  Plaintiff Does Not Allege She Registered Her Telephone Number on the National DNC Registry ................................................ 22

V.    CONCLUSION................................................................................................... 24

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aaronson v. CHW Grp., Inc.*,
  2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ............................................................13, 14, 16

*Aderhold v. car2go N.A. LLC*,
  668 F. App'x 795 (9th Cir. 2016) (unpublished) ....................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................6, 13

*Baccari v. Carguard Admin., Inc.*,
  2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) ........................................................11

*Bank v. Vivint Solar, Inc.*,
  2019 WL 2280731, at *4 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL
  1306064 (Mar. 22, 2019) ..................................................................................16

*Barker v. Sunrun Inc.*,
  2019 WL 1983291 (D.N.M. Apr. 29, 2019) ....................................................12

*Bean v. Newrez LLC*,
  2022 WL 421216 (N.D.W. Va. Jan. 10, 2022) ..............................................15, 17

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) ............................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S 544 (2007)............................................................................................6

*Blaniar v. Sw. Energy Co.*,
  2020 WL 12654265 (N.D.W. Va. Oct. 26, 2020) (Bailey, J.) ..................................4

*Blum v. Yaretsky*,
  457 U.S. 991 (1982)............................................................................................5

*Brentzel v. Fairfax Transfer & Storage, Inc.*,
  2021 WL 6138286 (4th Cir. Dec. 29, 2021) ........................................................15

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
  582 U.S. 255 (2017)............................................................................................10

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)............................................................................................8

*Callier v. Greensky, Inc.*,
  2021 WL 2688622 (W.D. Tex. May 10, 2021) ....................................................21

*Calzone v. Hawley*,
  866 F.3d 866 (8th Cir. 2017) ............................................................................10

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Carpenter v. PetSmart, Inc.*,
441 F. Supp. 3d 1028 (S.D. Cal. 2020) ...................................................................10

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
6 F.3d 177 (4th Cir. 1993) ...........................................................................................5

*Chapman v. CKE Restaurants Holdings, Inc.*,
2020 WL 1230130 (E.D.N.C. Mar. 12, 2020) ...........................................................5

*Childress v. Liberty Mut. Ins. Co.*,
2018 WL 4684209 (D.N.M. Sept. 28, 2018) ....................................................15, 16

*Combs v. Bakker*,
886 F.2d 673 (4th Cir. 1989) .......................................................................................4

*Culley-Brown v. Am. Petroleum Partners, LLC*,
2022 WL 18671130 (N.D.W. Va. Feb. 7, 2022) ......................................................22

*Cunningham v. Creative Edge Mktg. LLC*,
2021 WL 3085415, at *5 (E.D. Tex. June 16, 2021), *report and rec. adopted*, 2021
WL 3085399 (E.D. Tex. July 20, 2021) ...................................................................21

*Cunningham v. Enagic USA, Inc.*,
2017 WL 2719992 (M.D. Tenn. June 23, 2017) ......................................................21

*Cunningham v. Politi*,
2019 WL 2519702, at *5 (E.D. Tex. Apr. 26, 2019), *report and rec. adopted*, 2019
WL 2526536 (June 19, 2019) ...................................................................................21

*Cunningham v. Rapid Capital Funding, LLC*,
2017 WL 3574451 (M.D. Tenn. July 27, 2017) ......................................................21

*Cunningham v. Spectrum Tax Relief, LLC*,
2017 WL 3222559 (M.D. Tenn. July 7, 2017) ........................................................21

*Cunningham v. Sunshine Consulting Grp., LLC*,
2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *report and rec. adopted*, 2018
WL 5728534 (Aug. 7, 2018)......................................................................................21

*D.W. by & through Williams v. Chesterfield Cnty. Sch.*,
2018 WL 3098121, at *7 (E.D. Va. June 5, 2018), *report and recommendation
adopted*, 2018 WL 3097017 (E.D. Va. June 22, 2018) ...........................................12

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)......................................................................................................7

*Daniel v. Five Stars Loyalty, Inc.*,
2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) ........................................................17

*Disability Rts. S.C. v. McMaster*,
24 F.4th 893 (4th Cir. 2022) ....................................................................................10

*Donaca v. Dish Network, LLC*,
303 F.R.D. 390 (D. Colo. 2014) ..............................................................................14

# TABLE OF AUTHORITIES
(continued)

**Page**

*Ford Mot. Co. v. Montana Eighth Judicial District Court*,
592 U.S. ___, 141 S.Ct. 1017 (2021) ........................................................................7, 9

*Freidman v. Massage Envy Franchising, LCC*,
2013 WL 3026641 (S.D. Cal. June 13, 2013) ..............................................................12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
528 U.S. 167 (2000) ......................................................................................................12

*Gaker v. Q3M Ins. Sols.*,
2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) ..................................................19, 20, 21

*Gaston v. LexisNexis Risk Sols., Inc.*,
483 F. Supp. 3d 318 (W.D.N.C. 2020) ........................................................................10

*Geiser v. Simplicity, Inc.*,
2011 WL 843663 (N.D.W. Va. Mar. 8, 2011) ...............................................................9

*Giarratano v. Johnson*,
521 F.3d 298 (4th Cir. 2008) ........................................................................................15

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ........................................................20, 23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ....................................................................................................6, 7

*Hamdan v. Rumsfeld*,
548 U.S. 557 (2006) ......................................................................................................20

*Health & Res. Ctr., Ltd. v. Promologics, Inc.*,
2018 WL 3474444 (N.D. Ill. July 19, 2018) ................................................................10

*Hicks v. Alarm.com Inc.*,
2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ..............................................12, 13, 14, 22

*Hurley v. Messer*,
2018 WL 4854082 (S.D.W. Va. Oct. 4, 2018) .......................................................13, 17

*In re Celotex Corp.*,
124 F.3d 619 (4th Cir. 1997) ..........................................................................................6

*In re: Monitronics Int'l, Inc., TCPA Litig.*,
223 F. Supp. 3d 514 (N.D.W. Va. 2016) (Bailey, J.), *aff'd sub nom. Hodgin v. UTC
Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ...............................13, 14, 15, 16

*Jackson v. Caribbean Cruise Line, Inc.*,
88 F. Supp. 3d 129 (E.D.N.Y. 2015) ......................................................................16, 17

*Johansen v. Nat'l Gas & Elec. LLC*,
2018 WL 3933472 (S.D. Ohio Aug. 16, 2018) .............................................................17

# TABLE OF AUTHORITIES
(continued)

**Page**

*Johnson v. Palmer Admin. Servs., Inc.*,
 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), *report and rec. adopted*, 2022
 WL 16919786 (Nov. 14, 2022) ...................................................................................21, 22

*Jones v. Pohanka Auto N., Inc.*,
 43 F. Supp. 3d 554 (D. Md. 2014) ..............................................................................5

*Jung v. Bank of Am., N.A.*,
 2016 WL 5929273 (M.D. Pa. Aug. 2, 2016) ...........................................................23

*Kemen v. Cincinnati Bell Tel. Co., Inc.*,
 2023 WL 361136 (S.D. Ohio Jan. 23, 2023) ...........................................................22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014)..................................................................................................10

*Luellen v. Gulick*,
 2012 WL 1029577 (N.D.W. Va. Mar. 26, 2012).......................................................4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
 504 U.S. 555 ......................................................................................................10, 11

*Mack Trucks, Inc. v. Int'l Union United Auto. Aerospace & Agric. Implement Workers of
 Am., UAW*,
 2020 WL 5250285 (D. Md. Sept. 3, 2020) ..............................................................11

*Mantha v. QuoteWizard.com, LLC*,
 2022 WL 325722 (D. Mass. Feb. 3, 2022) ..............................................................22

*Meeks v. Buffalo Wild Wings, Inc.*,
 2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)..........................................................16

*Melito v. Am. Eagle Outfitters, Inc.*,
 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015).....................................................15, 16

*Mey v. All Access Telecom, Inc.*,
 2021 WL 8892199 (N.D.W. Va. Apr. 23, 2021) (Bailey, J.)....................................8

*Mey v. Baltimore Life Insurance Co.*,
 No. 22-cv-00266-JPB, Dkt. 16 (N.D.W. Va. May 18, 2023) .................................18

*Mey v. Medguard Alert, Inc.*,
 No. 5:19-CV-315, 2020 WL 1258639 (N.D.W. Va. Mar. 16, 2020)......................18

*Mey v. Patriot Payment Grp., LLC*,
 2016 WL 11501451 (N.D.W. Va. July 26, 2016) ....................................................18

*Mey v. Pinnacle Sec., LLC*,
 2012 WL 4009718 (N.D.W. Va. Sept. 12, 2012) ...............................................15, 17

*Mey v. Venture Data, LLC*,
 245 F. Supp.3d 771 (N.D.W. Va. Mar. 29, 2017)................................................18, 22

## TABLE OF AUTHORITIES
(continued)

<div align="right">**Page**</div>

*Miller v. Bearman Indus., LLC*,
   No. 2:18-CV-00269, 2023 WL 2603383 (S.D.W. Va. Mar. 22, 2023) ...................................7

*Morgan v. U.S. Xpress, Inc.*,
   2018 WL 3580775 (W.D. Va. July 25, 2018) ....................................................................21, 22

*Panacci v. A1 Solar Power, Inc.*,
   2015 WL 3750112 (N.D. Cal. June 15, 2015) ........................................................................18

*Pascal v. Agentra, LLC*,
   2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) .........................................................................13

*Plumbers' Local Union No. 690 Health Plan v. Apotex*,
   2017 WL 3129147 (E.D. Pa. July 24, 2017) ...........................................................................10

*Powers v. One Techs., LLC*,
   2021 WL 3519282 (W.D.N.C. Aug. 10, 2021) ..........................................................................9

*Reese v. Marketron Broadcast Sols., Inc.*,
   2018 WL 2117241 (E.D. La. May 8, 2018) .............................................................................17

*Rogers v. Assurance IQ, LLC*,
   2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) .................................................16, 22, 23, 24

*Rogers v. Postmates Inc.*,
   2020 WL 1032153 (N.D. Cal. 2020) .................................................................................13, 16

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
   2022 WL 2713278 (N.D. Iowa June 9, 2022) .........................................................................23

*Rowland Marietta, Inc. v. Casdorph*,
   2008 WL 11381425 (S.D.W. Va. Nov. 26, 2008) ...................................................................14

*Salcedo v. Hanna*,
   936 F.3d 1162 (11th Cir. 2019) .............................................................................................20

*Scruggs v. CHW Grp., Inc.*,
   2020 WL 9348208 (E.D. Va. Nov. 12, 2020) ...........................................................13, 14, 16

*Shelton v. Fast Advance Funding, LLC*,
   378 F. Supp. 3d 356 (E.D. Pa. 2019) ................................................................................20, 21

*Sheski v. Shopify (USA) Inc.*,
   2020 WL 2474421 (N.D. Cal. May 13, 2020) ........................................................................14

*Simon v. Eastern Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976)...................................................................................................................11

*Smith v. Am. Amicable Life Ins. Co. of Texas*,
   2022 WL 1003762 (E.D. Pa. Apr. 4, 2022) ............................................................................22

*Smith v. Vision Solar LLC*,
   2020 WL 5632653 (E.D. Pa Sept. 21, 2020) ..........................................................................22

## TABLE OF AUTHORITIES
(continued)

**Page**

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)............................................................................4, 5

*Stacker v. Intellisource, LLC*,
    2021 WL 2646444 (D. Kan. June 28, 2021).........................................10

*Strange v. Doe #1*,
    2020 WL 2476545 (W.D. La. May 12, 2020).......................................21

*Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*,
    471 F.3d 544 (4th Cir. 2006)..................................................................4

*Taubman Realty Grp. Ltd. P'ship v. Mineta*,
    320 F.3d 475 (4th Cir. 2003)..................................................................4

*Universal Leather, LLC v. Koro AR, S.A.*,
    773 F.3d 553 (4th Cir. 2014)...........................................................6, 7, 8

*Vitol, S.A. v. Primerose Shipping Co. Ltd.*,
    708 F.3d 527 (4th Cir. 2013)..................................................................4

*Weirton Area Water Bd. v. 3M Co.*,
    2020 WL 8184442 (N.D.W. Va. Nov. 20, 2020) (Bailey, J.)...........4, 6, 7

*Wick v. Twilio Inc.*,
    2016 WL 6460316 (W.D. Wash. Nov. 1, 2016)....................................17

*Worsham v. Direct Energy Servs., LLC*,
    2021 WL 2451641 (D. Md. May 12, 2021)...........................................23

*Worsham v. Disc. Power, Inc.*,
    2021 WL 50922 (D. Md. Jan. 6, 2021), amended, 2021 WL 1390310 (D. Md. Apr.
    13, 2021)...............................................................................................22

## OTHER AUTHORITIES

47 U.S.C. § 227(c) ...............................................................................19–23

47 C.F.R. § 64.1200(c)(2)...................................................................19, 23

Fla. Stat. §§ 621.01 *et seq.*...........................................................................3

Restatement (Third) of Agency § 1.01, cmt. c.............................................15

## I.   INTRODUCTION

Plaintiff Diana Mey alleges violations of the Telephone Consumer Protection Act ("TCPA") for calls made to her cell phone, which she alleges is registered on the National "Do-Not-Call" ("DNC") Registry. The alleged calls—made by MCM Services Group LLC, a marketing company hired by the law firm of Principal Law Group ("PLG")—sought to identify potential claimants who may have been exposed to toxic chemicals and contaminated water at Camp Lejeune in Jacksonville, North Carolina.

Plaintiff alleges several telephone discussions with MCM in which she feigned interest and answered a multitude of questions about her supposed experiences at Camp Lejeune. After actively requesting a representation agreement, Plaintiff engaged in several more calls with PLG. Because she asked for it, PLG sent Mey an "Attorney-Client Employment Agreement" which identified PLG and Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey P.A. ("Levin Law") as counsel. Plaintiff never signed the agreement. Instead, she filed this putative class action lawsuit against MCM, PLG, and Levin Law. But no claim against Levin Law can survive dismissal in this case.

As a threshold matter, this Court lacks personal jurisdiction over Levin Law. Levin Law is a Florida corporation domiciled and doing business in Florida with no direct ties to West Virginia or the calls directed into West Virginia. The Complaint does not allege *any* conduct by Levin Law in, or directed to, West Virginia. In fact, Plaintiff does not allege that Levin Law placed a single call to her, nor does she allege that Levin Law controlled MCM's telephonic outreach.

The Court lacks federal subject matter jurisdiction because Plaintiff lacks standing to bring a TCPA claim against Levin Law under Article III of the U.S. Constitution. Extrinsic evidence demonstrates that Plaintiff's alleged injuries are not fairly traceable to any unlawful conduct by Levin Law. Moreover, Plaintiff's Complaint, on its face, fails to allege facts sufficient to

demonstrate Article III standing.

Additionally, Plaintiff's Complaint should be dismissed for failure to state a claim under Rule 12(b)(6). Plaintiff does not allege that Levin Law called her (because it did not); thus, she cannot plead that Levin Law is directly liable under the TCPA. All that could be left against Levin Law is vicarious liability, which Plaintiff did not plead. Plaintiff does not—and cannot— allege that Levin Law directed, instructed, or controlled the manner and means of any telephonic outreach made by MCM. The Complaint does not even allege that Levin Law knew of MCM's existence (it did not). The Complaint alleges only that PLG hired MCM, who then contacted Plaintiff. Plaintiff alleges no nexus between Levin Law and MCM because there is none.

The Complaint also should be dismissed under Rule 12(b)(6) because Plaintiff has not adequately pled the elements of a DNC claim. Plaintiff alleges calls to her cell phone, but the TCPA's DNC provision does not cover cell phones. Numerous courts have reached the same conclusion, and this Court should join them. Even if the DNC provision did apply, Plaintiff's TCPA claim should be dismissed because she fails to plead that she is a "residential" subscriber or that she registered her telephone number on the DNC Registry.

## II.   RELEVANT ALLEGATIONS

Camp Lejeune is a military training facility in Jacksonville, North Carolina. Between the 1950s and 1980s, families stationed at Camp Lejeune were exposed to exceptionally high levels of contaminants in the drinking water. Compl. ¶ 13. The contaminated water "expos[ed] millions of service members and their families to toxic chemicals." *Id.* These contaminants have caused cancer and other illnesses in servicemembers and their families. In August 2022, Congress passed the Promise to Address Comprehensive Toxics Act, which allows individuals stationed at Camp Lejeune during this period to recover damages. *Id.* ¶ 14.

Levin Law, a Florida corporation[1] whose only office is in Pensacola, Florida, represents servicemembers who served at Camp Lejeune and their families. *Id.* ¶¶ 6, 13. In certain instances, Levin Law has represented Camp Lejeune plaintiffs together with PLG, a law firm based in Maryland. *Id.* ¶ 7. Plaintiff alleges that PLG worked with one or more marketing partners to represent Camp Lejeune plaintiffs. *Id.* ¶¶ 31–34. MCM is purportedly one of PLG's marketing partners. *Id.* ¶¶ 32–33. Plaintiff does not allege any relationship between MCM and Levin Law.

Plaintiff alleges that she received several calls from MCM, in which she answered various questions, leading the MCM representative to believe that she was a Camp Lejeune victim who may be entitled to compensation. *Id.* ¶¶ 20, 25, 27, 28. *See also id.* ¶¶ 31–33. MCM informed her that it "represents a law firm [PLG]." *Id.* ¶¶ 19, 32. In one of the calls, MCM "read Mey a disclosure" that any calls "would override any do-not-call registry her phone number might be on." *Id.* ¶ 28. In response to the disclosure, Plaintiff "agree[d] to be transferred" to PLG. *Id.*

On one occasion, MCM transferred Plaintiff to a representative of PLG, who "qualified Mey and her husband for Camp Lejeune claims." *Id.* ¶ 20. Plaintiff requested, and PLG promised to provide, "the necessary paperwork." *Id.* Several calls between Plaintiff and PLG ensued regarding the paperwork for her claim. *Id.* ¶¶ 21–23, 26, 29, 32. For example, on January 25, Plaintiff called PLG because "she had not yet received the promised paperwork" and "again provided her name and email address." *Id.* ¶ 26. In response to Plaintiff's request for paperwork, PLG provided Plaintiff with an "ATTORNEY-CLIENT EMPLOYMENT AGREEMENT in Mass Torts Cases." *Id.* ¶ 29. The agreement, if fully executed, would employ PLG along with Levin Law to "provide legal services to Mey in her claim for damages arising out of injuries

---

[1] Florida law permits a special subset of corporations to be identified as "professional associations." Levin Law is registered as both. Fla. Stat. §§ 621.01 *et seq.*

related to exposure at Camp Lejeune." *Id.* ¶ 30. Plaintiff never signed the agreement and never spoke with Levin Law.

## III.   LEGAL STANDARDS

### A.   FRCP 12(b)(2) – Personal Jurisdiction

Jurisdiction "is a 'threshold' issue that must be resolved before reaching 'an issue relating to the merits of the dispute, such as failure to state a claim.'" *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 533 (4th Cir. 2013) (quoting *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006)). "Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of producing facts that support the existence of jurisdiction." *Weirton Area Water Bd. v. 3M Co.*, 2020 WL 8184442, at *2 (N.D.W. Va. Nov. 20, 2020) (Bailey, J.). *Accord Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (plaintiffs must prove personal jurisdiction by a preponderance of the evidence). Thus, "[a] plaintiff cannot establish personal jurisdiction by relying solely on the basis of his own conclusory, speculative assertions." *Luellen v. Gulick*, 2012 WL 1029577, at *5 (N.D.W. Va. Mar. 26, 2012). To the contrary, when "evidence refuting the exercise of personal jurisdiction is submitted, the burden shifts to plaintiff to come forward with evidence on the issue of personal jurisdiction and further eliminates the inferences in favor of plaintiff." *Blaniar v. Sw. Energy Co.*, 2020 WL 12654265, at *4 (N.D.W. Va. Oct. 26, 2020) (Bailey, J.).

### B.   FRCP 12(b)(1) – Article III Standing

A plaintiff's lack of Article III standing to bring a claim is considered under Rule 12(b)(1), as the Court lacks federal subject matter jurisdiction to hear the claim if the plaintiff lacks standing. *See*, *e.g.*, *Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480–81 (4th Cir. 2003). Plaintiff bears the burden of demonstrating Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

To avoid dismissal, Plaintiff must show that: (1) she suffered an "injury in fact," (2) there is a causal connection between the injury and the conduct complained of (*a.k.a.* causation or "traceability"), and (3) the injury is capable of being redressed by a favorable decision (*a.k.a.* "redressability"). *Id*. at 338.[2]

There are generally two types of motions to dismiss for lack of federal subject matter jurisdiction—facial and factual attacks. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). The former questions the sufficiency of the allegations in the pleading—*i.e.*, whether the "'complaint simply fails to allege facts upon which subject matter jurisdiction can be based'" and the Court must generally take the well pled factual allegations as true. *Id.* But the Court need not accept as true mere conclusory allegations or legal conclusions under Rule 12(b)(1). *Id.*

By contrast, a factual attack challenges the factual existence of subject matter jurisdiction—*i.e.,* that the jurisdictional allegations in the Complaint are false. *Id.* Thus, no presumption of truth attaches to the allegations in the Complaint and the Court may consider evidence outside of the pleadings. *See id.* Plaintiff cannot merely rest on the factual assertions in her pleading in the face of a factual attack and, instead, must present competent evidence of her own to sustain her burden of proof. *Id*. Levin Law makes both a factual (*see* pp. 10–12, *infra*) and facial standing challenge (*see* pp. 12–13, *infra*).

## C.  FRCP 12(b)(6) – Dismissal

Rule 12(b)(6) provides for dismissal where a plaintiff fails to state a claim upon which relief can be granted. Under the familiar standard, allegations "must be enough to raise a right to

---

[2] "[I]t is essential that named class representatives demonstrate standing through a 'requisite case or controversy between themselves personally and [each defendant].'" *Jones v. Pohanka Auto N., Inc.,* 43 F. Supp. 3d 554, 562 (D. Md. 2014) (quoting *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1001 n. 13 (1982))) (alterations in original). Thus, where a named plaintiff lacks Article III standing for her individual claims, she also "lacks standing to pursue a nationwide class action" for those claims. *Chapman v. CKE Restaurants Holdings, Inc*., 2020 WL 1230130, at *7 (E.D.N.C. Mar. 12, 2020).

relief above the speculative level" and provide "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007). A "bare assertion"

and "conclusory allegations" will not do. *Id*. at 556–57. Allegations without such factual

enhancements "stop[] short of the line between possibility and plausibility of entitlement to

relief." *Id*. at 557. (internal quotations omitted). Thus, a "formulaic recitation of the elements" of

a claim cannot withstand dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

## IV.  ARGUMENT

### A.  The Court Lacks Personal Jurisdiction.

To establish personal jurisdiction, the plaintiff must satisfy two prongs:

> A federal district court may exercise personal jurisdiction over a foreign corporation
> only if: (1) such jurisdiction is authorized by the long-arm statute of the state in
> which the district court sits; and (2) application of the relevant long-arm statute is
> consistent with the Due Process Clause of the Fourteenth Amendment.

*Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). In West Virginia, the

long-arm statute extends to the "constitutional maximum permitted by the Due Process Clause."

*Weirton*, 2020 WL 8184442, at *2 (citations omitted). Thus, "the issue of personal jurisdiction is

simple: whether the exercise of personal jurisdiction would comport with the Due Process

Clause." *Id. See also In re Celotex Corp.*, 124 F.3d 619, 627–28 (4th Cir. 1997) (holding that the

long-arm statutory inquiry "necessarily merges with the Constitutional inquiry.").

"To comport with the Due Process Clause, a plaintiff must demonstrate that: (1) the non-

resident has minimum contacts with the forum and (2) 'requir[ing] the defendant to defend its

interests in that state does not offend traditional notions of fair play and substantial justice.'"

*Weirton*, 2020 WL 8184442, at *2 (quotation and citations omitted). Minimum contacts may be

established by showing either general or specific jurisdiction. *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011). *See also Universal Leather, LLC*, 773 F.3d

at 559; *Weirton*, 2020 WL 8184442, at *2. Plaintiff expressly alleges neither general nor specific personal jurisdiction, and she cannot demonstrate either one when it comes to Levin Law.

### i.   The Court Does Not Have General Jurisdiction Over Levin Law.

For the Court to exercise general jurisdiction over a non-resident corporate entity, Plaintiff must prove that the entity's "affiliations with the State [are] so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman,* 571 U.S. 117, 138–39 (2014) (quotations omitted). For entities such as Levin Law, the "paradigm" for general jurisdiction is where it is incorporated or where it maintains its principal place of business. *Goodyear*, 564 U.S. at 924. Plaintiff correctly alleges that Levin Law is a Florida corporation with its principal place of business in Florida. Compl. ¶ 6; Declaration of Mark Proctor ("Proctor Decl.") ¶ 3. Thus, the Court lacks general jurisdiction over Levin Law. *See Weirton*, 2020 WL 8184442, at *3.

### ii.   The Court Does Not Have Specific Jurisdiction Over Levin Law.

Specific personal jurisdiction depends on an "activity or an occurrence that takes place in the forum State," (citations and internal quotations omitted), and Plaintiff "must show that the defendant *deliberately* reached out beyond its home." *Ford Mot. Co. v. Montana Eighth Judicial District Court*, 592 U.S. ___, 141 S.Ct. 1017, 1025 (2021) (emphasis added) (internal quotation omitted). *See also Daimler*, 571 U.S. at 126–27. Unilateral activity in the forum state by third parties (such as MCM's activity in this case) does not impute to a defendant and will not confer specific jurisdiction. *Miller v. Bearman Indus., LLC*, No. 2:18-CV-00269, 2023 WL 2603383, at *4 (S.D.W. Va. Mar. 22, 2023) ("Importantly, the unilateral acts of third parties cannot create the minimum contacts necessary for jurisdiction; 'the defendant himself [must] create a "substantial connection" with the forum State.'") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Fourth Circuit employs a three-part test to determine whether the exercise of specific personal jurisdiction meets the requirements of Due Process: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Universal Leather, LLC*, 773 F.3d at 559. Plaintiff must establish all three factors. *Mey v. All Access Telecom, Inc.*, 2021 WL 8892199, at *2 (N.D.W. Va. Apr. 23, 2021) (Bailey, J.).

As this Court noted, "the first part of the three part [specific jurisdiction] test encompasses two distinct concepts, 'purposeful direction' and 'purposeful availment.' 'Purposeful availment' is generally used to analyze contract claims, while 'purposeful direction' is used to analyze tort claims." *All Access Telecom, Inc.*, 2021 WL 8892199, at *3. Because Plaintiff's one-count TCPA Complaint sounds in tort, the Court's analysis of the first prong of the specific jurisdiction test focuses on whether Levin Law "purposefully directed" the alleged tortious activity. *Id.*

"In TCPA cases, courts generally find that specific jurisdiction exists when a defendant makes a call or sends a message into the forum state by targeting a telephone number within the particular forum." *Id.* (collecting cases). *All Access Telecom* is instructive on this point. There, this Court determined that the defendant met the "purposeful direction" test because it "instructed [a third-party] to deliver the call to Ms. Mey's West Virginia phone number" and found that "[e]ach Defendant was paid to send these calls into West Virginia, each knew the calls were headed to West Virginia, and the calls were in fact received in West Virginia." *Id.* Here, by stark contrast, none of that is true. Levin Law did not solicit Plaintiff or target Plaintiff's phone number and there is no allegation Levin Law did so—indeed, the Complaint alleges that only MCM did so. Compl. ¶¶ 19–30. The Complaint does not allege that Levin Law "instructed" MCM to contact Plaintiff in West Virginia or that Levin Law even knew that MCM was doing so

(because it did not). *See id.* In fact, there are no allegations whatsoever of *any* relationship between Plaintiff and the party that made the offending calls, MCM.

Further, "[c]ases across various district and circuit courts weigh heavily against finding purposeful availment [or direction] when a defendant is not involved with the delivery or approval of communications received within a forum." *Powers v. One Techs., LLC*, 2021 WL 3519282, at *3 (W.D.N.C. Aug. 10, 2021) (dismissing TCPA case on jurisdictional grounds and collecting cases). The Complaint makes *no* allegations that *Levin Law* had *any* direct contacts with the forum state in connection with this case, let alone that Levin Law had any involvement in the delivery or approval of MCM's communications received in this forum. Nor could Plaintiff allege such facts, as Levin Law did not have a relationship with, control over, or even any knowledge of any telephonic outreach by MCM. *See* Proctor Decl. ¶¶ 5, 6. Because Plaintiff cannot plead that Levin Law meets the first prong for specific jurisdiction, the Court should dismiss Levin Law on personal jurisdiction grounds under Rule 12(b)(2). *See, e.g., Geiser v. Simplicity, Inc.*, 2011 WL 843663, at *5 (N.D.W. Va. Mar. 8, 2011) ("Because the plaintiff has not satisfied this first prong of the test for specific jurisdiction, this Court does not consider the second and third prongs."). To establish personal jurisdiction, Due Process requires allegations that a defendant itself engage in "purposeful" and "deliberate" acts that establish a "substantial [case-related] connection" with the forum state. *Ford Mot. Co.*, 141 S.Ct. at 1026. None of that is alleged here for the simple reason that none of it occurred.

### iii.  The Court Does Not Have Jurisdiction Over Non-Resident Plaintiffs.

In addition to lacking jurisdiction over Levin Law, this Court lacks jurisdiction over the unnamed non-resident plaintiffs. "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' When there is no

such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017).

Here, the claims of out-of-state members of the purported class do not arise, or have any connection to, activity occurring in West Virginia. Pursuant to *Bristol-Myers*, the Complaint should be dismissed as to all out-of-state putative class members for lack of personal jurisdiction. *See*, *e.g.*, *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 338 (W.D.N.C. 2020) (denying out-of-state class certification following *Bristol-Myers*); *Stacker v. Intellisource, LLC*, 2021 WL 2646444, at *11 (D. Kan. June 28, 2021) (same); *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1035 (S.D. Cal. 2020) (same); *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, 2018 WL 3474444, at *2 (N.D. Ill. July 19, 2018); *Plumbers' Local Union No. 690 Health Plan v. Apotex*, 2017 WL 3129147, at *12 (E.D. Pa. July 24, 2017) (same).

### B.  Plaintiff Lacks Article III Standing.

Plaintiff cannot overcome a factual or facial challenge to her Article III standing with respect to her TCPA claim against Levin Law.

#### i.   Plaintiff Lacks Article III Standing As a Matter of Fact.

Any alleged injury must be "fairly traceable" to the *defendant's* conduct to meet the second "causation" element for Article III standing. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 125–26 (2014). Article III standing must be determined for *each* defendant. *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022) ("[T]he standing inquiry must be evaluated separately as to each defendant."); *see also Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) ("Article III standing to sue each defendant . . . requires a showing that each defendant caused [the plaintiff's] injury and that an order of the court against each defendant could redress the injury.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61). This

requirement is not satisfied where the injury complained of is "th[e] result [of] the *independent action of some third party*[.]" *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)) (emphasis added). An "independent action" of a third party (MCM) is what occurred here.

Plaintiff alleges that "MCM uses . . . cold calls to solicit prospective clients," Compl. ¶ 32, but Levin Law had nothing to do with MCM's calls.[3] *See* Proctor Decl., ¶¶ 5–7. Specifically, Levin Law did not call Plaintiff or contract with MCM. *Id.* Nor did Levin Law instruct MCM, directly or indirectly, or control its telephonic outreach, let alone outreach that might violate the DNC Rules. *Id.* ¶ 5. Indeed, it could not have instructed or controlled MCM's calling activities because Levin Law has no relationship with MCM whatsoever (nor does Plaintiff allege any such relationship). *See* Proctor Decl., ¶ 6. In fact, Levin Law was not aware of MCM's existence, or its telephonic outreach, until after this lawsuit was filed. *Id.*

Plaintiff's alleged injury—which rests entirely on purported unlawful telemarketing calls initiated by MCM—is not fairly traceable to any alleged conduct by Levin Law, lawful or unlawful. Therefore, Levin Law should be dismissed. *See Baccari v. Carguard Admin., Inc.,* 2022 WL 3213839, at *2–3 (E.D. Pa. Aug. 8, 2022) (dismissing TCPA case under Rule 12(b)(1) based on factual standing challenge where plaintiff's alleged harm was not fairly traceable to defendant because it did not make or authorize the alleged unlawful calls). *See also Mack Trucks, Inc. v. Int'l Union United Auto. Aerospace & Agric. Implement Workers of Am., UAW*, 2020 WL 5250285, at *5 (D. Md. Sept. 3, 2020) (granting motion to dismiss on 12(b)(1) grounds on factual challenge where declarations revealed that "the injury is not fairly traceable to the

---

[3] Levin Law disputes that Plaintiff has suffered a concrete and particularized injury-in-fact sufficient for Article III standing purposes, or that she has adequately alleged such an injury, and therefore reserves the right to address this issue at a later time.

- 11 -

Union's conduct."); *D.W. by & through Williams v. Chesterfield Cnty. Sch.*, 2018 WL 3098121, at *7 (E.D. Va. June 5, 2018), *report and recommendation adopted*, 2018 WL 3097017 (E.D. Va. June 22, 2018) (granting motion to dismiss under 12(b)(1) on factual challenge to redressability).

### ii.  Plaintiff Fails to Plead Sufficient Facts Demonstrating Article III Standing.

On its face, the Complaint also does not allege sufficient facts demonstrating that Plaintiff has Article III standing to bring a TCPA claim against Levin Law. As discussed more fully below (*see* pp. 13–18, *infra*), Plaintiff (i) readily concedes that Levin Law is not directly liable under the TCPA because Levin Law did not physically place any calls to her, and (ii) does not plausibly allege Levin Law had any modicum of "control" over the "manner and means" of the calls as issue, as is required to state a claim for vicarious TCPA liability.

These defects not only warrant Levin Law's dismissal under Rule 12(b)(6), as discussed in Sections IV.C, D, but also show that Plaintiff failed to properly plead the causation and redressability elements for Article III standing, warranting Levin Law's dismissal under Rule 12(b)(1). *See, e.g.*, *Hicks v. Alarm.com Inc.,* 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (holding that, "[b]ased on the deficiencies identified under Rule 12(b)(6) [with respect to direct and vicarious TCPA liability], Plaintiff also fails to properly plead causation and redressability" under Rule 12(b)(1));[4] *Barker v. Sunrun Inc.,* 2019 WL 1983291, at *4 (D.N.M. Apr. 29, 2019) (ruling similarly); *Freidman v. Massage Envy Franchising, LCC*, 2013 WL 3026641, at *4 (S.D. Cal. June 13, 2013) (holding plaintiff lacked Article III standing for TCPA claim where plaintiff did not allege facts from which the court could "infer direct or vicarious liability"). *See also*

---

[4] As the *Hicks* court aptly noted, "[t]he arguments against causation and redressability are, of course, interconnected – because Plaintiff fails to allege facts to trace the injury to [Levin Law's] conduct, there is likewise a failure to show redressability by" Levin Law. 2020 WL 9261758, at *5. Moreover, the third "redressability" element requires that it be "likely, as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision" from the court. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 181 (2000). Because Plaintiff has not pled facts showing any unlawful conduct attributable *to* Levin Law, her TCPA claim is not capable of being redressed *by* Levin Law.

*Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *8 (E.D. Va. Nov. 12, 2020) ("Having found that the contested calls are not fairly traceable to [defendant] in the context of standing [under Rule 12(b)(1)], the Court also finds that [plaintiff] has not adequately pled facts under the [*Twombly/*]*Iqbal* pleading standards supporting direct or vicarious liability under the TCPA" under 12(b)(6)).

### C.  Plaintiff Does Not Plead a Theory of Liability Against Levin Law.

It is well settled that, to avoid dismissal of any TCPA claim, all plaintiffs must first adequately plead a viable theory of liability—*i.e.,* direct or vicarious liability. *See, e.g.*, *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020). In other words, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) *directly make* the call, or (2) have an *agency relationship* with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (emphasis added). Courts in this Circuit have consistently dismissed complaints, like Plaintiff's, at the pleadings stage on these bases. *See, e.g.*, *Hurley v. Messer*, 2018 WL 4854082, at *2–6 (S.D.W. Va. Oct. 4, 2018); *Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *2–3 (E.D. Va. Apr. 15, 2019); *Hicks*, 2020 WL 9261758, at *3–5; *Scruggs*, 2020 WL 9348208, at *7–10.

### i.  Plaintiff Does Not Plead Direct Liability Against Levin Law.

"Direct liability under the TCPA . . . applies only to entities that 'initiate' the telemarketing calls." *In re: Monitronics Int'l, Inc.*, *TCPA Litig.*, 223 F. Supp. 3d 514, 519 (N.D.W. Va. 2016) (Bailey, J.), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) (citations omitted). In other words, direct TCPA liability only attaches where the defendant itself, not a third party, "physically" places a call to the plaintiff.[5] *See, e.g.*, *Sheski v. Shopify*

---

[5] This applies with equal force to claims brought under the TCPA's DNC provision. *See*, *e.g.*, *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 394–96 (D. Colo. 2014).

*(USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)). Thus, "at the pleadings stage, plaintiff must allege facts to support [her] conclusion or belief that defendant is the party that [physically] made the calls to plaintiff's cellular phone." *Aaronson*, 2019 WL 8953349, at *2.

Plaintiff's Complaint does not allege a direct liability claim. The Complaint alleges that MCM—not Levin Law—placed the calls at issue. *See*, *e.g.*, Compl. ¶¶ 19–33. As a result, the Complaint fails to allege direct liability and, therefore, Levin Law should be dismissed on this additional basis. *See Aaronson*, 2019 WL 8953349, at *2 (dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue"); *Scruggs*, 2020 WL 9348208, at *9 (ruling similarly, citing *Aaronson*); *Hicks*, 2020 WL 9261758, at *5 (dismissing case where the complaint did not sufficiently allege that defendant physically placed the calls at issue).

### ii. Plaintiff Does Not Plead Vicarious Liability Against Levin Law.

In the absence of direct liability, Plaintiff must show vicarious liability, but the Complaint fails to allege such a theory. To plead vicarious liability under the TCPA, Plaintiff must allege facts showing a consensual common-law agency relationship existed between Levin Law and the third party who actually called her. *See, e.g., Aaronson,* 2019 WL 8953349, at *3 (citing, *inter alia, In re Monitronics*, 223 F. Supp. 3d at 520). The touchstone of any agency relationship is the principal's "control" over the alleged agent. *See, e.g., Rowland Marietta, Inc. v. Casdorph*, 2008 WL 11381425, at *10 (S.D.W. Va. Nov. 26, 2008) ("[T]he concept of agency posits a consensual relationship in which one person . . . acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person. The person

represented has a right to control the actions of the agent.") (quoting Restatement (Third) of Agency § 1.01 ("Restatement"), cmt. c).

In the TCPA context, Plaintiff "'cannot simply allege general control in a vacuum'" and avoid dismissal under Rule 12(b)(6). *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (quoting *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015)). "[A] formulaic recitation of the elements of a cause of action will not do." *Bean v. Newrez LLC*, 2022 WL 421216, at *4 (N.D.W. Va. Jan. 10, 2022) (citing *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008). Rather, as this Court has recognized, what matters is whether Levin Law had sufficient control over the "*manner and means*"—*the functional steps—of how the alleged call campaign was conducted*. *In re Monitronics*, 223 F. Supp. 3d at 520 (emphasis added). *See also Mey v. Pinnacle Sec., LLC*, 2012 WL 4009718, at *5 (N.D.W. Va. Sept. 12, 2012) (summary judgment for defendant where the same Plaintiff "failed to create an issue of material fact with regard to [defendant's] ability to control the manner and means of the calls made on its behalf").

Applying this principle, federal courts consistently dismiss TCPA complaints at the pleadings stage that lack sufficient, non-conclusory facts demonstrating control over where, how, and when allegedly violative calls are made. *See, e.g.*, *Brentzel v. Fairfax Transfer & Storage, Inc.*, 2021 WL 6138286, at *4 (4th Cir. Dec. 29, 2021) (finding "meritless" a claim of agency that "does not allege how, when, or where [defendants] agreed to the agency relationship and its limitations and fails to provide the contours of this agreement, except in general terms"); *Bean*, 2022 WL 421216, at *4 (N.D.W. Va. Jan. 10, 2022) ("Quite simply, the complaint fails to include any fact in support of its conclusory recitation of the joint venture elements. This is precisely the kind of baseless recitation of legal elements that Federal Rules of Civil Procedure 8 and 12 are designed to eliminate."); *Childress*, 2018 WL 4684209, at *4 (dismissing where plaintiff did "not

establish that [d]efendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call"); *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *4 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (dismissing on this same basis where complaint lacked "allegations of fact that establish an agency relationship between [the defendant] and [the maker of the robocalls] or any control by [the defendant] over [that entity]") (internal quotation omitted); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *6 (N.D. Cal. Mar. 28, 2018) (dismissing on this basis where complaint lacked facts suggesting defendant controlled "whether, when, and to whom to send the text messages, along with their content"); *Rogers v. Postmates Inc.*, 2020 WL 1032153, at *3–5 (N.D. Cal. Mar. 3, 2020) (dismissing TCPA case on vicarious liability grounds where plaintiff alleged defendant contracted with third party or its "sub-agents" to place calls but did not otherwise plead facts suggesting defendant "exercised any control over the 'manner and means' in which [the caller] executed the [alleged calling] campaign on its behalf"); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *6 (W.D. Wash. Mar. 27, 2023) (dismissing where plaintiff did not sufficiently allege control by defendants over the call campaign at issue).

Other courts in the Fourth Circuit have ruled similarly. *See, e.g.*, *Aaronson*, 2019 WL 8953349, at *3 (dismissing where plaintiff failed to allege "details from the telephone calls that would tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control") (applying, *inter alia*, *Childress*, *Monitronics*, *Melito*); *Scruggs*, 2020 WL 9348208, at *9–10 (dismissing on this basis where caller merely indicated he/she was "associated with" the defendant); *Hurley*, 2018 WL 4854082, at *6 (dismissing where plaintiff did not plausibly allege control over agent). *See also Mey v. Pinnacle*, 2012 WL 4009718, at *5 (judgment for defendant where Plaintiff "failed to

create an issue of material fact with regard to Pinnacle's ability to control the manner and means

of the calls made on its behalf"). This Court should reach the same conclusion and dismiss Levin

Law for this reason too.

While courts dismissed cases that merely allege a formulaic recitation of the required

elements of an agency relationship—*see*, *e.g.*, *Bean*, 2022 WL 421216, at *4—Plaintiff here has

not even gone that far. Plaintiff alleges that MCM made the offending "solicitation" calls.

Compl. ¶¶ 20, 25, 27, 28. But Plaintiff fails to allege that Levin Law exercised any control over

the "manner and means" of MCM's calling activities. Plaintiff does not allege *any* relationship

whatsoever between MCM and Levin Law. Therefore, it is not possible to find or infer that Levin

Law could have controlled the manner or means of any calls that MCM placed. Nor is it possible

for Levin Law to have provided MCM "interim instructions." *See* quoting *Jackson v. Caribbean

Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138–139 (E.D.N.Y. 2015) (noting that the "power to give

'interim instructions' to" an alleged third party telemarketer is "the hallmark of an agency

relationship").[6] Accordingly, Plaintiff does not—and cannot—allege the essential ingredient of

control—or any control at all—to state a claim for vicarious liability. *See Panacci v. A1 Solar

Power, Inc.*, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (dismissing where plaintiff did

not allege defendant "controlled, authorized, or even knew about [third party's] phone calls or

---

[6] The alleged calls made by PLG were in response to Plaintiff's request for the "necessary paperwork," Compl. ¶¶ 20–23, 26, 29, and are not "telephone solicitations." *See*, *e.g.*, *Daniel v. Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *3 (N.D. Cal. Nov. 24, 2015) (text message sent on how to complete registration after opting into rewards program not marketing); *Reese v. Marketron Broadcast Sols., Inc.*, 2018 WL 2117241, at *4 (E.D. La. May 8, 2018) (text message sent in response to request to enter contest for free concert tickets not marketing); *Wick v. Twilio Inc.*, 2016 WL 6460316, at *1–3 (W.D. Wash. Nov. 1, 2016) (text directing recipient to complete order not marketing). *See also Johansen v. Nat'l Gas & Elec. LLC*, 2018 WL 3933472, at *5 (S.D. Ohio Aug. 16, 2018), case dismissed, 2019 WL 4597740 (6th Cir. Apr. 18, 2019) (no telephone solicitation where plaintiff "kept agreeing to be called by an enrollment specialist and even attempted to call NG&E to complete the enrollment process"). *See generally Aderhold v. car2go N.A. LLC*, 668 F. App'x 795, 796 (9th Cir. 2016) (unpublished) (messages "whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements").

that [defendant] had any control over" the caller and plead "virtually no allegations regarding the relationship" between the defendant and caller).

Plaintiff will undoubtedly cite prior decisions of this Court in which she is a named plaintiff, but these cases are readily distinguishable.

- In *Mey v. Venture Data, LLC*, 245 F. Supp.3d 771, 787 (N.D.W. Va. Mar. 29, 2017), the Court entered summary judgment for Plaintiff where defendant's control over calls was indisputable given that defendant provided telemarketer with telephone numbers to be called, wrote the telephone scripts, dictated when and how calls would be made, provided calling reports, and oversaw the call center operations.

- In *Mey v. Patriot Payment Grp., LLC*, 2016 WL 11501451, at *5–6 (N.D.W. Va. July 26, 2016), the Court denied a motion to dismiss where Plaintiff alleged the telemarketer's website was "plastered with [defendant's] name and trademarks," defendant "knew that [the telemarketer] placed thousands of telemarketing calls per day" given its "close relationship" with the telemarketer, and even paid the telemarketer "healthy bonuses for sales generated."

- In *Mey v. Baltimore Life Insurance Co.*, No. 22-cv-00266-JPB, Dkt. 16, at 4–5 (N.D.W. Va. May 18, 2023), the Court denied a motion to dismiss where the call was transferred from the telemarketer and the defendant "was looped into the call."

- In *Mey v. Medguard Alert, Inc.*, No. 5:19-CV-315, 2020 WL 1258639, at *1, 3 (N.D.W. Va. Mar. 16, 2020), the Court denied a motion to dismiss where Plaintiff alleged that the moving defendants directly called her, defendants "acted as a common enterprise" and "that all three defendants share the same principal place of business."

These cases stand in stark contrast to the case at bar, where there is *no* alleged relationship between the alleged telemarketer MCM and Levin Law, let alone one showing that Levin Law "controlled" MCM's calling activities.

In short, because Plaintiff does not plausibly allege that Levin Law is directly or vicariously liable, this Court should dismiss Plaintiff's DNC claim against Levin Law under Rule 12(b)(6).

### D.  Plaintiff Does Not Plead a DNC Claim.

The lone Count of Plaintiff's Complaint alleges telephone solicitations "to Mey's residential telephone, which was listed on [*sic*] do-not-call registry[.]" Compl. ¶ 52. To plead a

DNC violation under the TCPA, Plaintiff must allege (1) the initiation of a "telephone solicitation" (2) to a "residential telephone subscriber" (3) who has registered her telephone number on the National DNC Registry. *See Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649, at *2 (W.D.N.C. Feb. 8, 2023). *See also* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Plaintiff does not and cannot plead these elements, therefore her claim fails.

### i.   The TCPA's DNC Provisions Do Not Extend to Cell Phones.

As an initial matter, Plaintiff must allege that she is a residential telephone subscriber in order to plead a DNC claim under the TCPA. Here, Plaintiff admits in her Complaint that she was called on a "wireless telephone." Compl. ¶ 17. But the DNC provision of the TCPA applies only to residential telephones; it does not extend to cell phones.

Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect *residential telephone subscribers' privacy rights* to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). In turn, the FCC promulgated regulations stating, in pertinent part: "No person or entity shall initiate any telephone solicitation to [a] *residential telephone subscriber* who has registered his or her telephone number on the national do-not-call registry of persons[.]" 47 C.F.R. § 64.1200(c)(2) (emphasis added). The plain language of the statute and regulations demonstrates that only residential telephones are covered under the DNC provisions.

Earlier this year, the court in *Gaker v. Q3M Ins. Sols.* granted a motion to dismiss on the basis that the DNC provision of the TCPA does not extend to cell phones. While the court acknowledged FCC authority suggesting that the DNC rules apply to wireless numbers,[7] the court held that "[t]he FCC's interpretation at issue does not preclude this Court from applying the

---

[7] *See In re Rules & Regs. Implementing the TCPA*, 18 F.C.C. Rcd. 14014, 14148 (2003).

clear text of the TCPA" and that the "*structure and language of the TCPA controvert coverage of cell phones*." 2023 WL 2472649, at *3 (emphasis added). The Court considered several key factors in reaching its conclusion.

*First*, consistent with the statutory and regulatory history above, the *Gaker* court determined that "[t]he language of the TCPA specifically provides that the regulations implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights." *Id.* (citation and quotation omitted).

*Second*, Congress specifically referenced "cellular telephone" in other provisions of the TCPA but not the DNC provision, "evidencing that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)." *Id.* (quoting *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 n.7 (E.D. Pa. 2019)); *see also Hamdan v. Rumsfeld*, 548 U.S. 557, 558 (2006) ("[A] negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute.").

*Third*, the court acknowledged that "[c]ell phones do not present the same concerns as residential telephones," where "the TCPA show[s] a concern for privacy within the sanctity of the home." *Id.* (quoting *Salcedo v. Hanna*, 936 F.3d 1162, 1168–69 (11th Cir. 2019)). *See also id.* (noting the mobility of cell phones and the ability to silence or decline calls).

Other courts are in accord that the DNC provisions of the TCPA do not apply to cell phones. *See*, *e.g.*, *Johnson v. Palmer Admin. Servs., Inc.*, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), *report and rec. adopted*, 2022 WL 16919786 (Nov. 14, 2022); *Cunningham v. Creative Edge Mktg. LLC*, 2021 WL 3085415, at *5 (E.D. Tex. June 16, 2021), *report and rec. adopted*, 2021 WL 3085399 (E.D. Tex. July 20, 2021)*; Callier v. Greensky, Inc.*, 2021 WL

2688622, at *6 (W.D. Tex. May 10, 2021); *Strange v. Doe #1*, 2020 WL 2476545, at *3 (W.D. La. May 12, 2020); *Cunningham v. Sunshine Consulting Grp., LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *report and rec. adopted*, 2018 WL 5728534 (Aug. 7, 2018); *Shelton*, 378 F. Supp. 3d at 363 n.7; *Cunningham v. Spectrum Tax Relief, LLC*, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017); *Cunningham v. Enagic USA, Inc.*, 2017 WL 2719992, at *5–6 (M.D. Tenn. June 23, 2017). *See also Cunningham v. Politi*, 2019 WL 2519702, at *5 (E.D. Tex. Apr. 26, 2019), *report and rec. adopted*, 2019 WL 2526536 (June 19, 2019).

Accordingly, Plaintiff's DNC claim fails as a matter of law because Plaintiff alleges that she was called on her cell phone and cell phones are not covered by the DNC rules. Not only does the statute preclude her claims, but Plaintiff alleges that she repeatedly engaged with MCM and PLG by phone, and requested to be called back, Compl. ¶¶ 19–36, "thus diminishing any claim that such calls invaded her privacy." *Gaker*, 2023 WL 2472649, at *3.

### ii. Plaintiff Fails to Allege That Her Telephone Number is "Residential."

Even if the DNC provision of the TCPA extended to cell phones, Plaintiff must allege sufficient non-conclusory facts showing that the subject phone number is *actually used* for "residential" purposes in order to avoid dismissal. *See*, *e.g.*, *Cunningham v. Rapid Capital Funding, LLC*, 2017 WL 3574451, *3 (M.D. Tenn. July 27, 2017) ("As Plaintiff has not alleged facts showing his cell phones are used for residential purposes, he fails to state a claim under [Section 227(c) of the TCPA]."); *Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (holding that plaintiff's characterization that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute").

Here, Plaintiff simply alleges—without more—that her cell phone is "used for residential purposes." Compl. ¶ 17. That is wholly insufficient. As Judge Moon correctly recognized in the *Morgan* case, *supra*, that is a purely conclusory allegation merely parroting the statutory text

without any supporting facts demonstrating how her cell phone number is actually used.[8] Thus, this Court should follow the weight of applicable authority and find that Plaintiff fails to state a plausible DNC claim.[9] *See*, *e.g.*, *Hicks*, 2020 WL 9261758, at *5 (dismissing Section 227(c) claim where the plaintiff only alleged that his cell phone was "not associated with a business and is for personal use" but not how the phone was used for residential purposes); *Johnson,* 2022 WL 17546957, at *8 ("Assuming, *arguendo*, the Court were to view cell phones to constitute residential phones . . . Plaintiff failed to plead that his cellphone was used as a residential phone); *Smith v. Am. Amicable Life Ins. Co. of Texas*, 2022 WL 1003762, at *3 (E.D. Pa. Apr. 4, 2022) (dismissing Section 227(c) where plaintiff did not sufficiently plead residential use of the subject phone number); *Assurance IQ, LLC*, 2023 WL 2646468, at *4 (same); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa Sept. 21, 2020) (same); *Kemen v. Cincinnati Bell Tel. Co., Inc.*, 2023 WL 361136, at *5 (S.D. Ohio Jan. 23, 2023) (same); *Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023) (same, dismissing with prejudice).

### iii. Plaintiff Does Not Allege She Registered Her Telephone Number on the National DNC Registry.

The TCPA's DNC provision expressly proscribes initiating a telephone solicitation to a

---

[8] As one district court recently noted, whether someone qualifies as a "residential telephone subscriber" for purposes of a TCPA DNC claim generally depends on certain conditions, including in particular that the subject phone number at which the alleged calls were received "*is the primary means of reaching the individual at their residence—that is, there is no other landline or phone at their residence* which is instead the primary means of reaching them." *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added). Plaintiff alleges no such facts in her Complaint here.

[9] Plaintiff cannot remedy her pleading because she uses her telephone number for business purposes. *See Worsham v. Disc. Power, Inc.*, 2021 WL 50922, at *4 (D. Md. Jan. 6, 2021), amended, 2021 WL 1390310 (D. Md. Apr. 13, 2021) (no TCPA violation where "number is primarily used by Worsham for residential purposes, [but] the number is also used for business, and business numbers are not permitted to be registered on the DNC registry"). Like plaintiff Worsham, Plaintiff regularly files TCPA lawsuits. *See Venture Data, LLC*, 245 F. Supp. at 783 ("plaintiff has brought a number of TCPA cases"). Indeed, Plaintiff "uses equipment to record and document TCPA calls." *Id.* Because amendment would be futile, leave to amend should be denied. *Culley-Brown v. Am. Petroleum Partners, LLC*, 2022 WL 18671130, at *3 (N.D.W. Va. Feb. 7, 2022) (denying leave to amend on futility grounds) (Bailey, J.).

"residential telephone subscriber *who has registered his or her telephone number*" on the Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added). Given the plain language of the statute,[10] courts have dismissed claims under Section 227(c) where plaintiffs fail to allege that they personally registered their telephone number on the DNC Registry. *See*, *e.g.*, *Assurance IQ, LLC*, 2023 WL 2646468, at *4 (the absence of this critical fact made it equally plausible that "the numbers could have been registered by previous owners of those numbers rather than by Plaintiffs themselves"); *Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 WL 2713278, at *3 (N.D. Iowa June 9, 2022) (dismissing where plaintiff "did not allege, either directly or indirectly, that *she* [personally] registered her telephone on the [DNC] registry" and noting that "Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national [DNC] registry") (emphasis in original). *See also Jung v. Bank of Am., N.A.*, 2016 WL 5929273, at *9 (M.D. Pa. Aug. 2, 2016) (dismissing DNC claim because plaintiff alleged no facts plausibly demonstrating that the defendants "violated the FCC's prescribed regulations for protecting the privacy of residential telephone subscribers").

Here, Plaintiff does not allege that she registered her phone number on the DNC registry. Instead, Plaintiff alleges that her "wireless telephone number is 304-242-XXXX, which is listed on the National Do-Not-Call Registry[.]" Compl. ¶17. This inartful pleading suggests that "the numbers could have been registered by previous owners of those numbers rather than by Plaintiff[.]" *Assurance IQ, LLC*, 2023 WL 2646468, at *4. While some might see this as elevating form over substance, it is in fact a substantive federal requirement, as numerous courts have held. Dismissal is particularly appropriate given that "[t]hese are facts that are easily within

---

[10] *See also Worsham v. Direct Energy Servs., LLC*, 2021 WL 2451641, at *2 (D. Md. May 12, 2021) ("Plaintiff's talismanic reliance on the TCPA's remedial nature cannot justify the sort of departure from the statute's plain language that he seeks.").

the knowledge of Plaintiff[] and can be pleaded to remove any doubt about whether [Plaintiff] actually registered [her] own number[] on the DNC list[.]" *Id*. As such, dismissal of Plaintiff's DNC claim is warranted on this basis as well.

## V.    CONCLUSION

For all these reasons, the Court should grant Levin Law's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and/or 12(b)(6) and dismiss Levin Law with prejudice.

This the 25th day of May, 2023

<div style="margin-left:40%">

**HILL PETERSON CARPER BEE & DEITZLER, PLLC**

BY:    /s/ R. Edison Hill
R. Edison Hill (WVSB 1734)
North Gate Business Park
500 Tracy Way
Charleston, WV 25311
Ph: 304-345-5667
Fax: 304-345-1519
Email: REHill@hpcbd.com

**MANATT, PHELPS & PHILLIPS, LLP**

Christine M. Reilly (admitted pro hac vice)
Cody A. DeCamp (admitted pro hac vice)
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
CReilly@manatt.com
CDeCamp@manatt.com

Bezalel A. Stern (admitted pro hac vice)
1050 Connecticut Ave. NW, Suite 600
Washington, DC 20036
Telephone: 202.585.6500
BStern@manatt.com

*Attorneys for Defendant Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey P.A.*

</div>

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed with the Clerk of the Court using the

CM/ECF system which will send notice of such filing to the following registered CM/ECF users:

> Ryan M. Donovan (WVSB#1160)
> Andrew C. Robey (WVSB#12806)
> HISSAM FORMAN DONOVAN RITCHIE PLLC
> P.O. Box 3983
> Charleston, WV 25339
> rdonovan@hfdrlaw.com
> arobey@hfdrlaw.com
>
> *Counsel for Plaintiff*

This the 25th day of May, 2023.

**HILL PETERSON CARPER BEE & DEITZLER,
PLLC**

BY:     /s/ R. Edison Hill
        R. Edison Hill (WVSB 1734)
        North Gate Business Park
        500 Tracy Way
        Charleston, WV 25311
        Ph: 304-345-5667
        Fax: 304-345-1519
        Email: REHill@hpcbd.com