IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

DIANA MEY, on behalf of herself
and a class of others similarly situated,

    Plaintiff,

                                                                                     Civil Action No.  5:23-cv-46

v.

LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR, & MOUGEY P.A., et al.

    Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT PRINCIPAL LAW GROUP, LLC'S MOTION TO DISMISS

Diana Mey alleges that Defendant Principal Law Group, LLC, violated the Telephone Consumer Protection Act in an effort to sign her up as a client. Principal Law moves to dismiss based on a supposed lack of personal jurisdiction. That motion should be denied for at least two independently sufficient reasons:

**First**, Principal Law directly solicited Mey, a West Virginia resident, and those solicitations are the subject of this lawsuit. For example, the telemarketer responsible for initiating one of the offending calls transferred Mey directly to Principal Law, who, knowing that Mey was a West Virginia resident, proceeded to promote his firm's services.  Later, Principal Law directly and repeatedly placed additional unsolicited calls to Mey. Because Principal Law intentionally directed its marketing efforts toward a West Virginia resident and purposely availed itself of the privilege of doing business in the State, this Court may exercise specific jurisdiction over Principal Law.

**Second**, in addition to the calls Principal Law placed directly to Mey, Mey has alleged sufficient facts for this Court to reasonably infer that other telemarketing calls were made by a third-party vendor under Principal Law's control.  So, even if Principal Law's direct contacts with the State are insufficient, Mey has alleged facts sufficient to establish specific jurisdiction through the forum-based contacts of its agent.

For these reasons, personal jurisdiction exists and the motion to dismiss should be denied.

## OPERATIVE ALLEGATIONS

Mey brings this class action under Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), alleging that Defendants and others under their supervision and control placed unsolicited telemarketing calls to residential telephone numbers listed on the National Do Not Call Registry.

Defendants Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, & Mougey P.A. ("Levin Law") and the Principal Law Group, LLC ("Principal Law") are law firms representing clients in the prosecution of mass toxic tort claims against the United State of America.  Compl. ¶ 13.  These mass toxic tort claims commonly allege that the drinking water at Camp Lejeune was contaminated between the 1950s and 1980s, exposing millions of service members and their families to toxic chemicals.  *Id.* at ¶ 14.

In August 2022, Congress passed the Promise to Address Comprehensive Toxics Act, providing a new private right of action to a class of individuals affected by

2

the tainted water at Camp Lejeune. *Id.* at ¶ 14. In a race to sign up clients, law firms—including Levin Law and Principal Law—have collectively spent millions of dollars on ad campaigns seeking to represent Camp Lejeune victims. *Id.* at ¶ 15. Advertising is the main method to find claimants, and it's handled by an ecosystem of lawyer-specific ad agencies known as lead generators. *Id.* To increase the reach of their efforts to sign up Camp Lejeune victims, Defendants and their agents used automated technology to place thousands of calls to potential clients. *Id.* at ¶ 16.

Mey's wireless telephone number is 304-242-XXXX, which she registered to the National Do Not Call Registry (the "DNC Registry"). *Id.* at ¶ 17. At all relevant times, Mey used this number for residential purposes. *Id.* Despite being listed on the DNC Registry, Defendants, directly or through one or more intermediaries, initiated telephone calls to Mey to pitch legal services in connection with the Camp Lejeune litigation. *Id.* at ¶ 18.

On January 24, 2023 at 11:24 a.m., Mey received a call from 304-242-2040. *Id.* at ¶ 19. When Mey answered the call, she spoke to "Jeff Hopkins" who represented that he was calling in regard to Camp Lejeune. *Id.* Before asking a series of scripted questions to determine whether Mey qualified to be a Camp Lejeune claimant, Hopkins stated that he worked with a law firm and they were "providing cash settlements on behalf of the government." *Id.* As part of this pre-qualification process, Mey identified herself as a resident of Wheeling, West Virginia. *See* Exhibits

A and B (declaration and call transcript).[1] For some unknown reason, the call abruptly ended after about 5 minutes of discussion. Compl. ¶ 19. The Complaint identifies this telemarketing vendor as MCM Services Group LLC ("MCM"). *Id*. at ¶ 32.

On January 24, 2023 at 11:30 a.m., Mey received a call from 818-691-7969. Compl. ¶ 20. It was "Jeff Hopkins" calling back. *Id*. After several more pre-qualification questions, the caller transferred Mey to "Dwaine" with Principal Law. *Id*. Once Dwaine was patched into the call, Hopkins introduced Mey as a West Virginia resident. *See* Exhibit C, at 6 (call transcript). After asking more pre-qualification questions, Dwaine qualified Mey and her husband for Camp Lejeune claims. *Id*. As part of that pre-qualification process, Dwaine confirmed that Mey resided in Wheeling, West Virginia. *Id*. at 8-9. Dwaine represented that his firm, Principal Law, contracts with marketing companies to obtain leads and then partners with a much bigger law firm—here, "LPR"—to prosecute the claims. Compl. ¶ 20. Mey would later learn that "LPR" stands for Levin Law. *Id*. Before the call was disconnected, Dwaine advised Mey that she would receive the necessary paperwork via email from "Deb Crist." *Id*. For some unknown reason, this call also abruptly disconnected. *Id*.

---

[1] When defendants make a factual challenge to jurisdiction, courts may consider evidence outside the pleadings to resolve disputed facts necessary for the determination of jurisdiction. Courts have applied this rule to challenges of both subject matter jurisdiction and personal jurisdiction. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). This Court may also consider documents that are incorporated by reference into the complaint without converting the motion to one for summary judgment. *See Johnson v. James B. Nutter & Co.*, 438 F. Supp. 3d 697, 704 (S.D.W. Va. 2020).

On January 24, 2023 at 5:29 p.m., Dwaine with Principal Law called again. *Id.* at ¶ 22. Dwaine reiterated that Deb Crist at Principal Law would email Mey the necessary paperwork. *Id.* Dwaine represented that Crist worked in the same office at Principal Law. *Id.* Mey did not receive the promised paperwork because, as she later learned, Dwaine had omitted a character in Mey's email address. *Id.*

On January 25, 2023 at 10:03 a.m., Dwaine with Principal Law called Mey. *Id.* at ¶ 23. Mey did not answer, so Dwaine was forwarded to her answering machine. *Id.* As his message indicated, Dwaine was following up to ensure that Mey had received the necessary paperwork from Deb Crist. *Id.*

On January 25, 2023 at 10:27 a.m., Mey received two calls in quick succession from 818-691-7969. *Id.* at ¶ 24. The caller represented himself to by "Brian Fury," calling regarding Camp Lejeune. *Id.* Mey did not answer either call; both calls were forwarded to her answering machine. *Id.*

On January 25, 2023 at 12:03 p.m., Mey received a call from 818-691-7969. *Id.* at ¶ 25. The caller was "Jeff Hopkins" from the original January 24 call. *Id.* As if they had never spoken before, Hopkins again asked a series of scripted questions to determine whether Mey qualified to be a Camp Lejeune claimant. *Id.* Like the original January 24 call, Hopkins represented that he was going to transfer the call to a law firm. *Id.* Hopkins apparently had trouble reaching the law firm, so Mey hung up. *Id.*

On January 25, 2023 at 12:24 and 12:27 p.m., Mey again received calls from "Brian Fury" at 818-691-7969. *Id.* at ¶ 27. After again asking a series of scripted

5

questions to determine whether Mey qualified to be a Camp Lejeune claimant, Fury attempted to connect Mey with his "verification officer." *Id*. Mey was on hold for approximately 2 minutes before the call abruptly disconnected. *Id*.

On January 25, 2023 at 4:27 p.m., Mey received another call from 818-691-7969. *Id*. at ¶ 28. The caller represented himself to be "Mark" from "the verification center" and he was calling to see if Mey was still interested in qualifying for a Camp Lejeune claim. *Id*. Mark attempted to transfer the call, but the call was abruptly disconnected. *Id*.

On January 26, 2023 at 11:22 a.m., Mey received another call from Dwaine at Principal Law, asking if Mey had received the email and paperwork promised in earlier calls. *Id*. at ¶ 29. She had not. *Id*. Dwaine then realized that he had omitted a character from Mey's email address. *Id*. After correcting Mey's email address, Dwaine resent the email, which contained an "ATTORNEY-CLIENT EMPLOYMENT AGREEMENT in Mass Torts Cases" (the "Representation Agreement"). *Id*. The Representation Agreement was between Mey and Levin Law and provided that Level Law would provide legal services to Mey in her claim for damages arising out of injuries related to exposure at Camp Lejeune. *Id*. at ¶ 30. Principal Law was identified as Levin Law's associate counsel. *Id*. Under the Representation Agreement, Levin Law and Principal Law were associated and would share in any fees awarded in Mey's case. *Id*. The Representation Agreement contemplated that it would be countersigned by both Levin Law and Principal Law. *Id*.

On January 30, 2023 at 2:03 p.m., Dwaine from Principal Law called back and said that it appears a "senior partner at my office had someone from the marketing group call you." *Id.* at ¶ 34. Dwaine attempted to assuage Mey's concerns about the legitimacy of the proposed representation by extolling the size and credentials of Principal Law's partner law firm, Levin Law. *Id.* On that call, Mey advised Dwaine that she was not interested in the proposed representation and asked that he pass on her request to not receive any further calls "by you or any of the marketing companies." *Id.* at ¶ 35. The call ended. *Id.* Less than an hour later, Dwaine called Mey in a last-ditch effort to sign Mey up as a client. *Id.* at ¶ 36. Again, Dwaine extolled the size and credentials of Principal Law's partner law firm, Levin Law. *Id.* Mey again rebuffed Dwaine's sales pitch. *Id.*

This lawsuit followed.

## ARGUMENT

Principal Law advances a single argument: that this Court is without personal jurisdiction. In determining whether specific jurisdiction exists, this Court must consider: "(1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally reasonable." *Mey v. Matrix Warranty Solutions, Inc., et al.*, No. 5:21-CV-62, 2021 WL 11421819, at *4 (N.D.W. Va. Sept. 2, 2021) (cleaned up). Principal Law attacks each element, all of which are addressed in turn.

### *Principal Law Purposely Availed Itself*

Principal Law directly solicited Mey, a West Virginia resident, for representation in the Camp Lejeune litigation. For instance, on January 24, 2023 at 11:30 a.m., Mey received an unsolicited call from Principal Law's telemarketing agent. Compl. ¶ 20. After a few pre-qualification questions, the telemarketing agent transferred the call to Dwaine with Principal Law. In the course of transferring the call, the telemarketing agent introduced Mey as a West Virginia resident. *See* Exhibits A and C (declaration and call transcript). The Principal Law representative accepted the call and—knowing that Mey was a West Virginia resident—continued to solicit his firm's services. *Id*. Then, in a series of subsequent calls, Principal Law directly and repeatedly placed additional unsolicited calls to Mey for the purpose of promoting the firm's services. *See* Compl. ¶¶ 22-23, 29, 34-36 (identifying calls directly from Principal Law). This Court has previously recognized that even a single contact with the forum state can constitute purposeful availment sufficient to satisfy due process requirements. *See Matrix Warranty Solutions,* 2021 WL 11421819, at *4 (citing *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976)). Because Principal Law directly and repeatedly solicited a West Virginia resident for commercial gain, Principal Law has purposely availed itself of the privilege of conducting business in the State.

This Court can also reasonably infer that Principal Law's contacts with the State extend beyond Mey. The Declaration of Greg March, for example, states that Principal Law "does not routinely" transact business in West Virginia, seemingly

conceding that Principal Law does indeed transact some business in West Virginia. ECF No. 22-1, at ¶ 6. Likewise, March states that Principal Law does not engage in any "long-term" business in West Virginia, seemingly conceding that Principal Law does indeed transact business of other durations in West Virginia. *Id*. at ¶ 8. March's declaration is also notable for what it does not say. For instance, March's declaration does not suggest that Principal Law's marketing efforts stopped at the West Virginia border. Nor does he suggest that these marketing efforts failed to yield a single West Virginia client.

By directing its marketing efforts into West Virginia, Principal Law hopes to secure West Virginia clients for the Camp Lejeune litigation. And with each West Virginia client, Principal Law expects to profit from the provision of legal services, which will necessarily be rendered over a significant period of time. *See Johnson v. Diamond Shine, Inc.*, 890 F. Supp. 2d 763, 770 (W.D. Ky. 2012) (finding that out-of-state defendant purposely availed itself of forum state when contract with forum resident contemplated substantial and continuing relationship within forum state); *Southwest Research Inst. v. California Fueling, LLC*, 509 F. Supp. 3d 656, 665 (W.D. Tex. 2020) ("Where the defendant deliberately has engaged in significant activities within a State or has created continuing obligations between himself and residents of the forum, he has availed himself of the privilege of conducting business there"). Because Principal Law directly and repeatedly marketed its services to other West Virginia residents for commercial gain, Principal Law has purposely availed itself of the privilege of conducting business in the State.

*There Is a Sufficient Nexus to Principal Law's Forum-Based Activities*

The second element "demands that the suit arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). A plaintiff may satisfy the nexus requirement by showing that the lawsuit either "arises out of" or "relates to" the defendant's contacts with the forum state. *See Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326, 336 (D. Md. 2022). Here, specific personal jurisdiction can be established based on two independently sufficient forms of contact with the forum state: (1) Principal Law's direct contacts with the State, and (2) Principal Law's contacts through a third-party vendor under its supervision and control.

**First**, even if the calls initiated directly by Principal Law are not independently actionable under the TCPA, as Principal Law suggests, these contacts may nonetheless be used to satisfy the "relatedness" test for purposes of determining personal jurisdiction.[2] In a series of follow up calls, Principal Law directly and repeatedly placed unsolicited calls to Mey, building upon the foundation originally laid by its telemarketing vendor. *See* Compl. ¶¶ 22-23, 29, 34-36 (identifying calls directly from Principal Law). These contacts are an outgrowth from the first two offending calls, which Principal Law seems to concede are indeed violations of the TCPA. Because Principal Law's forum-based contacts plainly relate to the subject

---

[2] Principal Law argues that only the first two calls—which were placed by the telemarketing vendor—are actionable because the subsequent calls placed by Principal Law were voluntary or authorized. ECF No. 22, at 10.

10

matter of this litigation, which concerns illicit telemarketing, the nexus requirement is satisfied.

**Second**, though Principal Law's direct contacts with the State are sufficient to confer specific jurisdiction, this Court may also exercise specific jurisdiction based on the forum-based acts of its agent. *See Matrix Warranty Solutions, Inc.,* 2021 WL 11421819, at *5-6 (exercising personal jurisdiction based on an agent's contacts with the forum state); *Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 861-62 (N.D. Ill. 2020) (same); *Bradley*, 617 F. Supp. 3d at 337-338 (same). Principal Law does not dispute that its telemarketing vendor placed several unsolicited calls to Mey in contravention of the TCPA. *See* Compl. ¶¶ 19-20, 24-25, 27-28 (identifying calls from MCM). On each occasion, the telemarketing agent joined (or, in some instances, attempted to join) a Principal Law representative to the line. Compl. ¶¶ 20, 25, 27, 28. That the telemarketing vendor was directly connecting Principal Law to the offending calls suggests that the vendor was authorized to solicit Principal Law's services to West Virginia residents and that Principal Law directed these efforts. And because the information gleaned from MCM's pre-qualification process determined whether the lead would be forwarded to Principal Law for further engagement, this Court can reasonably infer that the pre-qualification questions were furnished by Principal Law, evidencing an additional degree of control. At a minimum, Mey's allegations plausibly connect Principal Law to the alleged calls and therefore are sufficient to establish specific jurisdiction through an agency theory of vicarious liability. Whether Principal Law indeed exercised a sufficient degree of control over

11

that telemarketing vendor or otherwise ratified its actions is a question to be answered in discovery.

### *Jurisdiction Is Constitutionally Reasonable*

Aside from stating the general principle of law, Principal Law does not otherwise explain how this Court's exercise of jurisdiction would be constitutionally unreasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (providing that the defendant has the burden to "present a compelling case" that jurisdiction is unreasonable). Because Principal Law has failed to identify any potential for prejudice or inconvenience, there is no basis for this Court to presume that jurisdiction would be constitutionally unreasonable.

### CONCLUSION

For the foregoing reasons, Principal Law's motion to dismiss must be denied.

**DIANA MEY**

By Counsel:

/s/ *Andrew C. Robey*
Michael B. Hissam (WVSB #11526)
Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
mhissam@hfdrlaw.com
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com

12

## CERTIFICATE OF SERVICE

The undersigned counsel does hereby certify that on June 15, 2023, a true copy of the foregoing document was served upon all parties of record via ECF notification.

/s/ *Andrew C. Robey*
Andrew C. Robey (WVSB #12806)
