## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### —WHEELING DIVISION—

**DIANA MEY, individually and on behalf of a proposed class,**

        **Plaintiff,**

    **v.**

**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY P.A.; PRINCIPAL LAW GROUP, LLC; MCM SERVICES GROUP LLC; AND JOHN DOE DEFENDANTS 1-5.**

        **Defendants.**

**Civil Action No. 5:23-cv-00046-JPB**

 

**DEFENDANT LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY P.A.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   PLAINTIFF CANNOT SHOW LEVIN LAW IS VICARIOUSLY LIABLE. ................. 2

    A.    Plaintiff Fails to Plausibly Allege That Levin Law is Vicariously Liable
        and Thus, Her TCPA Claim Fails On its Face. ..................................................... 3

    B.    Plaintiff Does Not Meet her Evidentiary Burden to Rebut Levin Law's
        Evidence in Support of its Factual Challenges to Personal Jurisdiction and
        Article III Standing. ............................................................................................ 8

III.  THERE IS NO OTHER BASIS FOR PERSONAL JURISDICTION OVER
     LEVIN LAW. .................................................................................................... 12

IV.   PLAINTIFF LACKS STANDING TO PURSUE HER CLAIM AGAINST
     LEVIN LAW. .................................................................................................... 13

V.    PLAINTIFF'S TCPA CLAIM FAILS FOR ADDITIONAL REASONS. ..................... 14

    A.    Cell Phones Are Not Subject to the TCPA's DNC Registry Provisions. ............ 14

    B.    Plaintiff Fails to Allege that She Used Her Phone for Residential Purposes....... 15

    C.    Plaintiff Fails to Allege That She Registered Her Phone on the DNC
        Registry. ........................................................................................................... 15

VI.   CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Bain*,
   697 F.2d 1213 (4th Cir. 1982) .........................................................................3

*Baccari v. Carguard Admin., Inc.*,
   2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) ....................................................3, 13

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ........................................................................3, 9

*Blaniar v. Sw. Energy Co.*,
   2020 WL 12654265 (N.D.W. Va. Oct. 26, 2020) ...........................................8, 12

*Callier v. SunPath Ltd.*,
   2020 WL 10285659 (W.D. Tex. Aug. 10, 2020) .................................................4

*Cobb v. Postmates, Inc.*,
   2021 WL 2480109 (N.D. Ga. Mar. 8, 2021) .......................................................6

*Cunningham v. Daybreak Solar Power, LLC*,
   2023 WL 3985245 (N.D. Tex. June 13, 2023) ....................................................4

*Doane v. Benefytt Tech., Inc.*,
   2023 WL 2465628 (D. Mass. Mar. 10, 2023) ...................................................4, 5

*Doyle v. GoHealth LLC*,
   2023 WL 3984951 (D.N.J. Mar. 30, 2023) .........................................................4

*Gaker v. Q3M Ins. Sols.*,
   2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) ................................................14, 15

*In re Monitronics Int'l, Inc., TCPA Litig.*,
   223 F. Supp. 3d 514 (N.D.W. Va. 2016) ................................................. *passim*

*Jackson v. Caribbean Cruise Line, Inc.*,
   88 F. Supp. 3d 129 (E.D.N.Y. 2015) ...........................................................4, 5, 7

*Jackson v. Genuine Data Servs., LLC*,
   2022 WL 256281 (E.D. Va. Jan. 26, 2022) .......................................................11

*Johansen v. HomeAdvisor, Inc.*,
   218 F. Supp. 3d 577 (S.D. Ohio 2016) .............................................................10

*Lipscomb v. Techs., Servs., & Info., Inc.*,
   2011 WL 691605 (D. Md. Feb. 18, 2011) ...........................................................9

*Melito v. Am. Eagle Outfitters, Inc.*,
   2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) ....................................................6

*Morgan v. U.S. Xpress, Inc.*,
   2018 WL 3580775 (W.D. Va. July 25, 2018) ....................................................15

### TABLE OF AUTHORITIES
(continued)

**Page**

*Naiman v. TranzVia LLC*,
 2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) .................................................................3, 11

*New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*,
 376 F. Supp. 3d 683 (E.D. Va. 2019) ...................................................................................13

*Powers v. One Techs., LLC*,
 2021 WL 3519282 (W.D.N.C. Aug. 10, 2021)......................................................................3

*Rogers v. Assurance IQ*,
 2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ...............................................................4, 7

*Rogers v. Postmates Inc.*,
 2020 WL 3869191 (N.D. Cal. July 9, 2020)...........................................................................4

*Shaolian-Tehrani v. Khatami*,
 2008 WL 1790386 (S.D.N.Y. Apr. 21, 2008)........................................................................9

*Smith v. Direct Building Supplies, LLC*,
 2021 WL 4623275 (E.D. Pa. Pct. 7, 2021) ............................................................................4

*Smith v. Liberty Mut. Ins. Co.*,
 2021 WL 1581017 (D. Mass. Apr. 22, 2021) .........................................................................4

*Smith v. State Farm Mut. Auto. Ins. Co.*,
 30 F. Supp. 3d 765 (N.D. Ill. 2014) .......................................................................................6

*Smith v. Vision Solar, LLC*,
 2020 WL. 5632653 (E.D. Pa. Sept. 21, 2020) .......................................................................4

*Underwood v. IFA Holdings, LLC*,
 2022 WL 2307738 (N.D. Ala. June 27, 2022).....................................................................14

*Williams v. Studivent*,
 2010 WL 4273224 (M.D.N.C. Oct. 20, 2010) .......................................................................3

*Wince v. Easterbrooke Cellular Corp.*,
 681 F. Supp. 2d 688 (N.D.W. Va. 2010) ...............................................................................8

### OTHER AUTHORITIES

Restatement (Third) of Agency § 1.01 cmt. f(1) (2006)...............................................................6

Restatement (Third) of Agency, § 2.01 (2006).........................................................................11

Restatement (Third) of Agency § 3.15 (2006) .............................................................................6

### RULES

Rule 12(b)(1)...................................................................................................... *passim*

Rule 12(b)(2)...................................................................................................... *passim*

Rule 12(b)(6)...............................................................................................1, 2, 3, 7

## I.  <u>INTRODUCTION</u>

As Plaintiff concedes, the dismissal of Plaintiff's suit rests squarely on the issue of whether Levin Law can be vicariously liable for the alleged calling activity of MCM Services Group ("MCM"). But Plaintiff has not plausibly shown that Levin Law had "control" over the "manner and means" of MCM's alleged calling campaign. *See*, *e.g.*, *In re Monitronics Int'l, Inc., TCPA Litig.,* 223 F. Supp. 3d 514, 520 (N.D.W. Va. 2016) (Bailey, J.), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Ams. Corp., Inc.*, 885 F.3d 243 (4th Cir. 2018); Dkt. 24 at 14–17 (collecting cases).

In the obvious absence of vicarious liability as to MCM, Plaintiff's Opposition attempts a runaround, arguing that Levin Law had an agency relationship with the Principal Law Group ("PLG") and that PLG had an agency relationship with MCM, and therefore Levin Law can be held vicariously liable. *See*, *e.g.*, Dkt. 28 at 14. But this argument fails from the outset because Plaintiff does not allege *any* solicitation campaign by PLG, let alone that Levin Law had control over the manner and means of any of PLG's purported solicitations. Thus, Plaintiff's TCPA claim against Levin Law should be dismissed on the pleadings alone for lack of jurisdiction and standing under Rules 12(b)(2) or 12(b)(1) and/or for failure to state a claim under Rule 12(b)(6).

Because the pleading fails on its face, the Court need not consider the parties' factual evidence in regard to Levin Law's factual jurisdictional challenges under Rules 12(b)(2) and 12(b)(1). Should it opt to do so, the evidence only shows that there is no viable vicarious liability theory against Levin Law and that Levin Law must be dismissed because Levin Law did not, in fact, control the "manner and means" of MCM's alleged calling campaign. *See* Dkt 24-1, ¶ 5. Indeed, Levin Law did not even know of MCM's existence until after this Complaint was filed. *Id.*, ¶ 6. Plaintiff's Opposition failed to refute—or even contest—this evidence.

Instead, Plaintiff offered a Declaration, Dkt. 28-1, attaching unauthenticated transcripts of calls, Dkts. 28-2; 28-3, showing two outbound telephone calls initiated by MCM, one of which was transferred to PLG after Plaintiff expressed interest in receiving the paperwork necessary to file a Camp Lejeune claim. But Plaintiff's evidence does not show that Levin Law had the requisite control over MCM's calling campaign. It also does not show any purported agency relationship between Levin Law and PLG. The possibility that PLG may refer potential cases to Levin Law does not demonstrate Levin Law controlled the manner and means of *any alleged calling campaign*, which is the touchstone of vicarious liability under the TCPA.

While the vicarious liability issues alone are fatal, Plaintiff's Complaint fails for the additional reason that cell phones are not covered by the DNC rules. Plaintiff points to out-of-circuit authority finding coverage, but does not address authority in this circuit holding otherwise. Plaintiff also does not plausibly allege non-conclusory facts demonstrating that she uses the subject phone number for "residential" purposes or that she registered the number on the National DNC Registry. Thus, Plaintiff's DNC claim fails under Rule 12(b)(6).

For all these reasons, Levin Law should be dismissed from this suit.

## II.   <u>PLAINTIFF CANNOT SHOW LEVIN LAW IS VICARIOUSLY LIABLE.</u>

In her Opposition, Plaintiff argues her claims against Levin Law rise and fall based on vicarious liability principles, whether considered in the context of personal jurisdiction under Rule 12(b)(2), Article III standing under Rule 12(b)(1), or on the merits under Rule 12(b)(6). *See* Dkt. 28 at 1, 10-11, 14-16. Thus, we begin with vicarious liability issues.

As shown below, whether considered as a facial challenge (based on the pleadings) or a factual challenge (based on extrinsic evidence), the standard for vicarious TCPA liability is the

same.[1] The relevant inquiry is whether Levin Law controlled the manner and means of the solicitation calls (i.e., the telemarketing campaign). Plaintiff does not sufficiently plead vicarious liability against Levin Law. As a result, Levin Law's motion to dismiss should be granted based on its facial jurisdictional challenges under personal jurisdiction and subject matter jurisdiction and for failure to state a claim under Rule 12(b)(6). The Court need not reach the evidence in support of a factual jurisdictional challenge but, if it does, the evidence only shows why Levin Law's motion should be granted, as discussed further below.

### A.  Plaintiff Fails to Plausibly Allege That Levin Law is Vicariously Liable and Thus, Her TCPA Claim Fails On its Face.

Federal courts in the Fourth Circuit and elsewhere uniformly apply common law agency principles to determine whether a defendant may be held vicariously liable under the TCPA at the pleadings stage under Rule 12, either for jurisdictional purposes or on the merits. *See, e.g.*, Dkt 24 at 12–14.[2] While the touchstone of vicarious liability is "control" over an agent, general control is *not* sufficient. *See* Dkt. 24 at 15. Rather, "[A] plaintiff must show that defendant controlled or had the right to control the purported agent and, more specifically, the *manner and*

---

[1] For a *facial* jurisdictional challenge under Rule 12(b)(2) or 12(b)(1), the Court is generally limited to the four corners of the complaint and must accept all well-pled (i.e., non-conclusory or speculative) allegations as true. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). In contrast, where the defendant makes a *factual* challenge to personal or subject matter jurisdiction, the Court may consider extrinsic evidence. *See id.* ("In this posture, 'the presumption of truthfulness normally accorded a complaint's allegations does not apply.'") (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). The Court need not rule on a factual challenge if the jurisdictional allegations are insufficient. *See, e.g., Williams v. Studivent*, 2010 WL 4273224, at *4 (M.D.N.C. Oct. 20, 2010), *report and rec. adopted,* 2011 WL 941493 (Mar. 7, 2011) (granting motion to dismiss for lack of subject matter jurisdiction on facial challenge). Here, Plaintiff fails to state a vicarious liability claim against Levin Law, either on the face of the Complaint or as a matter of fact based on the evidence.

[2] *See also, e.g., Naiman v. TranzVia LLC*, 2017 WL 5992123, at *10–11 (N.D. Cal. Dec. 4, 2017) (dismissing for lack of personal jurisdiction under 12(b)(2) based solely on the facts alleged); *Powers v. One Techs., LLC,* 2021 WL 3519282, at *4–5 (W.D.N.C. Aug. 10, 2021) (dismissing under Rule 12(b)(2) where plaintiff did not sufficiently allege or present evidence demonstrating that the defendant was vicariously liable for the calls at issue); *Baccari v. Carguard Admin., Inc.,* 2022 WL 3213839, at *2–3 (E.D. Pa. Aug. 8, 2022) (dismissing based on a 12(b)(1) factual standing challenge, where defendant demonstrated it did not control the caller) (citing *Naiman*); Dkt. 24 at 12–13 (citing cases dismissing under Rules 12(b)(6) and 12(b)(1)).

*means of the solicitation campaign that was conducted.*" *Monitronics*, 223 F. Supp. 3d at 520 (emphasis added). Courts across the country have uniformly applied this standard in dismissing vicarious liability claims at the pleadings stage. *See, e.g.,* Dkt. 24 at 12–14.[3] This standard requires that plaintiff show that defendant dictated the functional steps of the call campaign conducted—*e.g.*, whether, when, and to whom to make the calls at issue, and their content. *See, e.g.,* Dkt. 24 at 16. *See also id.* at 17 (citing *Jackson v. Caribbean Cruise Line, Inc.,* 88 F. Supp. 3d 129 (E.D.N.Y. 2015) (holding the power to give "interim instructions" to the caller is the "hallmark of an agency relationship" under the TCPA)).

Here, Plaintiff alleges she received telephone solicitation calls from MCM and that MCM embarked on a telemarketing campaign in order to solicit her for the Camp Lejeune litigation. Dkt. 1, ¶¶ 20, 25, 27, 28. But she does *not* allege telephone solicitations from PLG (nor does Plaintiff dispute in her Opposition that PLG's calls were not telephone solicitations). *See* Dkt. 24 at 17 n.6. Rather, Plaintiff alleges that PLG called her to follow-up on her request to receive the "necessary paperwork" to file a Camp Lejeune claim. *Id*. Thus, the question is whether Levin Law controlled "the manner and means of the solicitation campaign that was conducted" by MCM and specifically, whether Levin Law controlled when MCM made calls, how it made calls, to whom it made calls and the content of those calls. *Monitronics*, 223 F. Supp. 3d at 520.

Plaintiff does not allege in her Complaint, or even argue in her brief, that Levin Law

---

[3] *See also, e.g.*, *Doane v. Benefytt Tech., Inc.*, 2023 WL 2465628, at *9 (D. Mass. Mar. 10, 2023); *Rogers v. Assurance IQ*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023); *Smith v. Liberty Mut. Ins. Co.*, 2021 WL 1581017, at *5 (D. Mass. Apr. 22, 2021); *Smith v. Vision Solar, LLC*, 2020 WL. 5632653, at *3 (E.D. Pa. Sept. 21, 2020); *Doyle v. GoHealth LLC*, 2023 WL 3984951, at *4 (D.N.J. Mar. 30, 2023); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Pct. 7, 2021); *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *4 (N.D. Cal. July 9, 2020) (dismissing where plaintiff did not allege defendant "exercised any control over the 'manner and means' in which [caller] executed the campaign"); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *3 (N.D. Tex. June 13, 2023) (To sufficiently plead vicarious liability in a TCPA case and avoid dismissal, "the principal must have 'both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task.'") (quoting *Callier v. SunPath Ltd.,* 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020)).

controlled any telephonic outreach conducted by MCM. *See* Dkt. 28 at 11 (conceding that "MCM's forum-based contacts give rise to this litigation"). This is because Plaintiff cannot do so. Because Plaintiff cannot demonstrate that Levin Law is vicariously liable for MCM's telemarketing campaign, Levin Law's motion to dismiss should be granted on this basis alone.

Since Plaintiff cannot show that Levin Law is vicariously liable for MCM's telemarketing campaign, Plaintiff urges this Court to apply a different standard—namely, that Levin Law is vicariously liable because "[PLG] acted as an agent of Levin Law" and "MCM acted as an agent of [PLG]." Dkt. 28 at 10-11, 14-15. This is a red herring. Plaintiff's attempt to redefine the standard should be flatly rejected. Even if this was the correct standard, Plaintiff's vicarious liability arguments still fail, as explained below.

Plaintiff argues agency with PLG by pointing to a representation agreement she purportedly received from PLG in which PLG is listed as Levin Law's "Associate Counsel" and which allegedly states that they would share in any fees awarded. Dkt. 1, ¶ 30. Even if true, the fact that PLG and Levin Law may act as co-counsel does not show that Levin Law had control over the "manner and means of the solicitation campaign" *by the alleged telemarketer in this case (MCM)*.

Even if PLG could be considered the "telemarketer" (despite Plaintiff's pleading otherwise), Plaintiff does not allege that Levin Law controlled or provided any instructions to PLG whatsoever on any telephonic solicitation campaign for potential Camp Lejeune claimants. A mere contract with Levin Law's name on it does not show an agency relationship, let alone an agency relationship in connection with telephonic outreach. *See, e.g., Doane*, 2023 WL 2465628 at *9 (dismissing where defendant's name on a health insurance application provided to plaintiff by the caller did not "plausibly suggest that defendant exercised control over any of the callers"); *Jackson*, 88 F. Supp. at 138 ("[T]he existence of a contract between [the defendant] and

[telemarketer]—even one that imposes certain constraints on [telemarketer]—does not necessarily mean that [defendant] had the power to give "interim instructions' to [telemarketer], the hallmark of an agency relationship.") (citing Restatement (Third) of Agency § 1.01 cmt. f(1)).

Because Plaintiff has not alleged an agency relationship with PLG, Plaintiff's "subagent" argument concerning MCM necessarily fails. If there is no agent, then there can be no subagent. Moreover, Plaintiff fails to show that Levin Law gave PLG permission to hire a "subagent" for telephone campaigns. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 777 (N.D. Ill. 2014) (dismissing case on sub-agent theory where "the Consolidated Complaint fails to allege that Nationwide or Farmers authorized its insurance agents to appoint [subagent] as its subagent or coagent."); Restatement (Third) of Agency § 3.15 (2006) (an agent must have actual or apparent authority to appoint a subagent). *Cf. Cobb v. Postmates, Inc.*, 2021 WL 2480109, at *3 (N.D. Ga. Mar. 8, 2021) (permitting amendment on agency and subagency where plaintiff alleged that defendant hired agent "to sell its services using telemarketing calls" and "authoriz[ed] the script and provid[ed] information on whom to call" and then "hired [a] call center to make the call").

In any event, Plaintiff fails to plausibly allege that Levin Law had any type of authority whatsoever over MCM, and certainly no authority to control the manner and means of MCM's telemarketing campaign or the power to give interim instructions on any such campaign. *See*, *e.g.*, *Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at *5–7 (S.D.N.Y. Nov. 30, 2015) (dismissing where the plaintiff failed to plausibly allege the defendant was vicariously liable for texts sent by an alleged subagent, where the plaintiff did not plausibly allege facts suggesting the alleged agent had control over the manner and means of the calling campaign by the alleged subagent); *Rogers,* 2020 WL 1032153, at *3–5 (dismissing where plaintiff alleged defendant

contracted with a third party or its "sub-agents" to place calls but did not otherwise plead facts suggesting defendant "exercised any control over the 'manner and means' in which [the telemarketer] executed the [alleged calling] campaign on its behalf"); Dkt. 24 at 17 (citing *Jackson*). This Court should rule similarly.[4]

Plaintiff's cited authorities on this issue (*see* Dkt. 28 at 9-10) are readily distinguishable. In *Bradley v. DentalPlans.com*, for example, the court found actual authority sufficiently pled where plaintiff alleged that defendant had (1) "the right to assess and audit [agents]' marketing practices and communications," (2) "the right to terminate its relationship with [agent] at any time for any perceived breach of contract," and (3) "the right to 'provide interim instructions' to [agent], 'including with regard to the specifics of [agents'] telemarketing practices.'" 617 F. Supp. 3d 326, 339 (D. Md. 2022). None of these allegations are pled here.

Further, in *Bilek v. Nat'l Cong. of Emps., Inc.,* the court found actual authority existed where plaintiff alleged that the agent was conferred authority by the principal to "administer the sales and solicitation of sales of the [principals]' products," that the agent was authorized by the principal to conduct telephonic sales by contracting with subagents, and that the principal had actual control over the agent's conduct. 470 F. Supp. 3d 857, 861 (N.D. Ill. 2020). Again, no such facts are alleged here.

In *Mey v. Matrix Warranty Solutions, Inc., et al.,* this Court found that "plaintiff has provided sufficient facts for this Court to reasonably infer *that the Matrix Defendants are directly responsible for the telemarketing calls or that the calls were made by a vendor under the Matrix Defendants control*." 2021 WL 11421819, at *6 (N.D.W. Va. Sept. 2, 2021) (emphasis added). But here, there are no allegations in the Complaint demonstrating that the alleged

---

[4] Plaintiff also relies on the unauthenticated call transcripts in support of her Rule 12(b)(6) arguments. *See* Dkt. 28 at 15. This is improper on a Rule 12(b)(6) motion.

solicitation calls here were made by a vendor under Levin Law's control or that Levin Law had control over the solicitation campaign conducted.[5]

\* \* \*

Plaintiff has not plausibly alleged, based on the allegations on the face of the Complaint, that Levin Law is vicariously liable. On these grounds alone, Levin Law should be dismissed for lack of personal and subject matter jurisdiction and for failure to state a claim for relief. The Court need not consider the parties' extrinsic evidence, but if it does, the evidence shows that Plaintiff's claim against Levin Law still fails.

### B.  Plaintiff Does Not Meet her Evidentiary Burden to Rebut Levin Law's Evidence in Support of its Factual Challenges to Personal Jurisdiction and Article III Standing.

Even if the Court reaches the factual jurisdictional challenges in the Motion, which permits extrinsic evidence, the evidence before the Court shows that Levin Law had no control over the manner and means of the solicitation campaign that was conducted.

It is well-established that, once a personal jurisdictional challenge is raised by a defendant, it is Plaintiff's burden to establish a *prima facie* case of jurisdiction "by pointing to affidavits or other relevant evidence." *Wince v. Easterbrooke Cellular Corp.*, 681 F. Supp. 2d 688, 691 (N.D.W. Va. 2010) (Bailey, J.). Thus, "when, as here, evidence refuting the exercise of personal jurisdiction is submitted, the burden shifts to plaintiff to come forward with evidence on the issue of personal jurisdiction and further eliminates the inferences in favor of plaintiff." *Blaniar v. Sw. Energy Co.*, 2020 WL 12654265, at *4 (N.D.W. Va. Oct. 26, 2020) (Bailey, J.). The same is true for a factual challenge to the Court's federal subject matter jurisdiction based on

---

[5] Plaintiff cites this Court's subsequent summary judgment decision in *Monitronics*, where it found there was sufficient evidence of the defendant's right to control the manner and means of the calls for vicarious liability. *See* Dkt. 28 at 14 (citing 2019 WL 7835630 (N.D. W. Va. Apr. 3, 2019)). The primary issue the Court must decide here is whether Plaintiff has sufficiently plead *facts in her Complaint* demonstrating Levin Law's control over the solicitation calls. She is not entitled to any discovery to help her do so.

the plaintiff's lack of standing—*i.e.,* Plaintiff cannot simply rest on conclusory allegations in her Complaint. *See, e.g.,* Dkt. 24 at 5 (citing *Beck*).

Plaintiff submits a declaration, in which she describes the two calls she allegedly received from a telemarketing company and attaches two call transcripts that were purportedly "transcribed by a[n] [unidentified] third-party vendor."[6] *See* Dkt. 28-1 ¶¶ 14. Plaintiff argues that the call transcripts demonstrate that Levin Law "rubberstamps all Camp Lejeune referrals [PLG] furnishes." Dkt. 28 at 15. Though she attaches a 24-page call transcript, Plaintiff relies on a single offhanded comment in which "Dwaine" from PLG stated, "[W]hen I submit this to our [unnamed] partner law firm, they won't even flinch at it" and "you won't have to worry about it getting accepted."[7] Dkt. 28-3, at 19.

Once again, Plaintiff's argument misses the mark. Even if this stray remark can be given any credence, the fact that Levin Law might accept a referral from PLG does not demonstrate that Levin Law had *control over the manner and means of the solicitation campaign that was conducted*, as Plaintiff must show. Plaintiff's evidence shows no connection between Levin Law and the telemarketer who initiated the call to Plaintiff, let alone the requisite control by Levin Law over the *calling campaign*. The Declaration of Mark Proctor—which Plaintiff does not contest—affirms that Levin Law did not even know of telemarketer MCM's existence until the filing of this Complaint. Dkt. 24-1, ¶ 6. Simply put, Plaintiff's evidence is irrelevant because it does not show that Levin Law knew of or controlled any aspect of the telemarketing campaign.

---

[6] The call transcripts should be stricken because they are unauthenticated and constitute inadmissible hearsay. *See also Lipscomb v. Techs., Servs., & Info., Inc.,* 2011 WL 691605, at *6–7 (D. Md. Feb. 18, 2011) (plaintiff's evidence insufficient for a Rule 12(b)(1) motion where it was "rife with inadmissible hearsay and conclusory statements"); *Shaolian-Tehrani v. Khatami,* 2008 WL 1790386, at *2 (S.D.N.Y. Apr. 21, 2008) (hearsay cannot be used to establish a *prima facie* case of personal jurisdiction).

[7] Far from "rubberstamping" potential referrals, PLG told Plaintiff "not to get anybody excited" because law firms "do a little cherry picking" and that if an intake form is not "spotless," the law firms "don't even take it." Dkt. 28-3, at 21.

If Plaintiff's theory were correct, any co-counsel arrangement resulting from case referrals would subject law firms to vicarious liability under the TCPA. That is absurd. That is also not the law.

Moreover, PLG's evidence refutes any agency relationship with MCM. According to the Declaration of Greg March, PLG "contract[ed] with Elite MG LLC ('Elite')" "to perform marketing services such as internet and social media campaigns, not unsolicited telephone calls." Dkt. 22-1, ¶ 9. Elite then "contracted with a third-party marketing agency, MCM Hustle LLC ('MCM')" but "to provide only 'Social-Digital Media Marketing' with respect to Camp Lejeune claims, not telephonic marketing." *Id.* ¶ 13. Plaintiff does not contest this declaration either. Thus, the evidence does not show an agency relationship between PLG and MCM concerning any calling campaign.

In *Johansen v. HomeAdvisor, Inc.*, for example, the court found no agency relationship between HomeAdvisor, an alleged principal, and Lead House, an alleged subagent, where "HomeAdvisor submitted two unrefuted declarations showing that Lead House, who made the offending calls, was not acting or purporting to act as HomeAdvisor's agent." 218 F. Supp. 3d 577, 585 (S.D. Ohio 2016). HomeAdvisor's unrefuted declarations showed that "the company neither knew nor should have known that Lead House violated the TCPA." *Id.* at 585-86.[8] Similarly, here, unrefuted declarations from Levin Law and PLG show no agency relationship in connection with the calling campaign at issue, let alone that Levin Law knew or should have known of any purported TCPA violations.

Plaintiff's purported evidence also does not show that Levin Law controlled the manner and means of any solicitation campaign *by PLG*. It does not show that Levin Law provided any instructions to PLG whatsoever on telephonic solicitation of potential Camp Lejeune claimants.

---

[8] This Court has found *Johanson's* subagency analysis "instructive" in determining agency. *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 526 (N.D.W. Va. 2016).

To the contrary, the transcript shows that PLG *received* a call from a telemarketer that "work[s] with different law firm[s]," Dkt. 28-2, at 4, after Plaintiff expressed interest in receiving further information and agreed to be transferred to a law firm. Dkt. 28-3, at 3–4. It ends there since Levin Law did *not* receive (or accept) any information concerning Plaintiff or know of her existence. Proctor Declaration, Dkt. 24-1, ¶ 7.

Plaintiff's evidence fails for yet another reason. A stray remark from a PLG representative cannot be used to show an agency relationship between PLG and Levin Law because the acts of an alleged agent cannot create an agency relationship with the principal. *See, e.g., Monitronics*, 223 F. Supp. 3d at 525 (apparent authority "cannot be established merely by showing that [the alleged agent] claimed authority or purported to exercise it" but rather "it is only established by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied"); *Naiman*, 2017 WL 5992123, at *7 ("To state a plausible [TCPA] claim under an apparent authority theory [of vicarious liability], plaintiff must allege facts showing that [defendant] did or said something sufficient to create a reasonable belief that [the agent] had authority to act on behalf of [defendant]" and not by the actions of the alleged agent) (citing, *inter alia*, Restatement (Third) of Agency, § 2.01).

In sum, Plaintiff failed to meet her evidentiary burden to defeat Levin Law's factual jurisdictional challenges. Therefore, should this Court consider the parties' extrinsic evidence, Plaintiff's TCPA claim against Levin Law should be dismissed under Rules 12(b)(2) and 12(b)(1). *See Jackson v. Genuine Data Servs., LLC*, 2022 WL 256281, at *7 (E.D. Va. Jan. 26, 2022) (dismissing on personal jurisdiction grounds where plaintiff failed to rebut defendant's evidence with a factual showing).

### III.   THERE IS NO OTHER BASIS FOR PERSONAL JURISDICTION OVER LEVIN LAW.

Plaintiff argues that specific personal jurisdiction[9] exists separate from her unsupported agency theories because Levin Law purposefully availed[10] itself of the forum state and because there is a sufficient nexus to Levin Law's forum-based activities. Specifically, Plaintiff argues that (1) Levin Law agreed to represent Plaintiff in the Camp Lejeune litigation and (2) the Court can "infer" Levin Law's contacts with the forum extend beyond Plaintiff. *See* Dkt. 28 at 7–9. Neither argument has merit.

First, *Levin Law never agreed to represent Plaintiff.* Levin Law never communicated with Plaintiff, nor did it ever receive her information in connection with potential representation in the Camp Lejeune litigation. *See* Proctor Decl., Dkt. 24-1, ¶ 7. Not even Plaintiff's purported evidence shows that Levin Law agreed to represent her, as none of those communications are with Levin Law. And Plaintiff does not allege a signed agreement because one does not exist. *See* Dkt. 1, ¶ 30 (agreement "contemplated that it would be countersigned by both Levin Law and [PLG]").

Second, Plaintiff argues that the Court can "reasonably infer that Levin Law's contacts with the State extend beyond Mey" and takes issue with facts not presented in Proctor's Declaration. Dkt. 28 at 8. But Plaintiff ignores her burden. "When, as here, evidence refuting the exercise of personal jurisdiction is submitted, the burden shifts to plaintiff to come forward with evidence on the issue of personal jurisdiction and further eliminates the inferences in favor of plaintiff." *Blaniar*, 2020 WL 12654265, at *4 (Bailey, J.). As discussed above, Plaintiff presents

---

[9] Plaintiff does not dispute that this Court lacks general jurisdiction over Levin Law.

[10] This Court has held that, in a case sounding in tort, the test is "purposeful direction," not "availment." Dkt. 24 at 8 (citing *Mey v. All Access Telecom, Inc.*, No. 5:19-CV-00237-JPB, 2021 WL 8892199, at *3 (N.D.W. Va. Apr. 23, 2021)).

no contrary evidence and mere speculation cannot overcome Levin Law's factual challenge to personal jurisdiction.

The cases Plaintiff cites are inapposite. Unlike here, in *Johnson v. Diamond Shine, Inc.*, the parties entered into an agreement and performed under it for several years. *See* 890 F. Supp. 2d 763, 766–67 (W.D. Ky. 2012). The *Johnson* court found defendant purposefully availed itself of conducting business in Kentucky when defendant's CEO (1) traveled to Kentucky to negotiate and form the contract and (2) sent payments under the contract to Kentucky for 14 years. *Id.* at 770–71. No such facts are present here. Further, in *Southwest Research Inst. v. California Fueling, LLC*, the court *granted* defendant's motion to dismiss on personal jurisdiction grounds, even where the parties executed a contract. *See* 509 F. Supp. 3d 656, 668 (W.D. Tex. 2020). *See also New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*, 376 F. Supp. 3d 683, 693 (E.D. Va. 2019) ("Because the contract does not invoke Virginia law and was not executed in the state, it does not alone constitute a sufficient basis on which to exercise jurisdiction.").

In short, Plaintiff fails to make a *prima facie* showing, through competent evidence, that this Court has specific jurisdiction over Levin Law, warranting its dismissal under Rule 12(b)(2).

## IV.   <u>PLAINTIFF LACKS STANDING TO PURSUE HER CLAIM AGAINST LEVIN LAW.</u>

The Opposition ignores the directly on-point legal authority on Article III standing in TCPA cases cited in the Motion, demonstrating that Plaintiff's alleged injuries are not fairly traceable to Levin Law's conduct. *See* Dkt 24 at 11 (citing *Baccari v. Carguard Admin., Inc.*, 2022 WL 3213839 (E.D. Pa. Aug. 8, 2022)). In *Baccari*, the TCPA defendant raised a factual challenge to plaintiff's standing based on a lack of control over an alleged agent. *Id.* at *3. Here, both Levin Law and PLG's uncontroverted evidence show Plaintiff's purported harm from MCM's telemarketing activities is not fairly traceable to Levin Law. *See* Section II, *supra*.

Plaintiff's cited authorities are inapposite. In *Kurimski v. Shell Oil Co.*, which is not a

TCPA case, the Court found that the declaration submitted by the defendant challenging jurisdiction did not refute the specific factual allegations in the complaint suggesting that defendant maintained indirect control over an agent. *See* 570 F. Supp. 3d 1228, 1241 (S.D. Fla. 2021). *State Farm v. At Home Auto Glass, LLC.*, is also inapplicable because there, defendant "present[ed] [only] a facial attack on subject matter jurisdiction," not a factual one. 2021 WL 6118102, at *2 (M.D. Fla. Dec. 27, 2021). *Miholich v. Senior Life Ins. Co.* is also distinguishable, as the plaintiff there responded to defendant's factual challenge by submitting factual evidence refuting defendant's declaration. 2022 WL 410945, at *4 (S.D. Cal. Feb. 10, 2022). Here, Plaintiff has failed to make an evidentiary showing. *Underwood v. IFA Holdings, LLC*, 2022 WL 2307738, at *3 (N.D. Ala. June 27, 2022) is inapposite because defendant's evidence did not have any bearing on whether it was not responsible, directly or indirectly, for the source of the harm—the placement of the call in the first place. None of these cases can avoid dismissal on standing grounds under Rule 12(b)(1).

## V.   PLAINTIFF'S TCPA CLAIM FAILS FOR ADDITIONAL REASONS.

### A.   Cell Phones Are Not Subject to the TCPA's DNC Registry Provisions.

Plaintiff accuses Defendant of ignoring authority outside of the Fourth Circuit on whether cell phones are subject to the TCPA's DNC provisions, yet Plaintiff ignores authority in this Circuit on this issue. *See* Dkt 24 at 18–20 (citing *Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023)). Plaintiff asserts that this Court has "consistently" treated calls to cell phones as actionable under the TCPA's DNC provisions, citing *Matrix Warranty Sols., Inc. See* Dkt. 28 at 17. But the issue was not raised or addressed by this Court in *Matrix. See* 2021 WL 11421816 at *6. The *Gaker* court, however, did thoroughly analyze the issue. It acknowledged a split of authority on the issue, 2023 WL 2472649, at *2, but held that cell phones are not covered by the DNC provisions based on the TCPA's plain language. Since *Gaker*'s reasoning is

compelling, and supported by the statutory language drafted by Congress, this Court should follow *Gaker*.

**B.  Plaintiff Fails to Allege that She Used Her Phone for Residential Purposes.**

Plaintiff argues that "it is sufficient to allege that the telephone number was used for a residential purpose and placed on the DNC registry." Plaintiff cites a smattering of out of Circuit cases in support of this proposition (Dkt. 28 at 18), but fails to address authority from this Circuit holding that allegations, much like those at issue here, failed to state a claim. *See* Dkt. 24 at 21 (citing *Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775 (W.D. Va. July 25, 2018)). The *Morgan* court held that similar allegations were "not factual allegations, but legal terms drawn from the operative statute." *Id.* at *2. *Morgan*, and the balance of authorities cited in the Motion which Plaintiff failed to address (Dkt. 24 at 21), compels the dismissal of her claim on this basis.

**C.  Plaintiff Fails to Allege That She Registered Her Phone on the DNC Registry.**

Plaintiff does not address any of Defendant's authority on this issue and simply argues that her allegation that the number at issue is "listed on the National Do-Not-Call Registry" suffices to show that Plaintiff personally registered it. *See* Dkt. 28 at 19. Plaintiff does not dispute, or attempt to distinguish, the many authorities requiring a plaintiff to affirmatively and specifically allege that they personally placed their number on the DNC registry. *See* Dkt. 24 at 22–24. Instead, Plaintiff asks the Court to "infer that Mey registered that telephone number herself." Dkt. 28 at 19. The Court should decline Plaintiff's invitation.

**VI.   CONCLUSION**

For all these reasons, the Court should grant Levin Law's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and/or 12(b)(6) with prejudice.

This the 29th day of June, 2023

**HILL PETERSON CARPER BEE & DEITZLER, PLLC**

BY:    /s/ R. Edison Hill
        R. Edison Hill (WVSB 1734)
        North Gate Business Park
        Charleston, WV 25311
        Ph: 800-822-5667
        Fax: 304-345-1519
        Email: REHill@hpcbd.com

        MANATT, PHELPS & PHILLIPS, LLP

        /s/ Christine M. Reilly
        Christine M. Reilly (admitted pro hac vice)
        Cody A. DeCamp (admitted pro hac vice)
        2049 Century Park East, Suite 1700
        Los Angeles, California 90067
        Telephone: 310.312.4000
        CReilly@manatt.com
        CDeCamp@manatt.com

        Bezalel A. Stern (admitted pro hac vice)
        1050 Connecticut Ave. NW, Suite 600
        Washington, DC 20036
        Telephone: 202.585.6500
        BStern@manatt.com

        *Attorneys for Defendant Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey P.A.*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed with the Clerk of the Court using the

CM/ECF system which will send notice of such filing to the following registered CM/ECF users:

> Ryan M. Donovan (WVSB#1160)
> Andrew C. Robey (WVSB#12806)
> HISSAM FORMAN DONOVAN RITCHIE PLLC
> P.O. Box 3983
> Charleston, WV 25339
> rdonovan@hfdrlaw.com
> arobey@hfdrlaw.com
>
> *Counsel for Plaintiff*

This the 29th day of June, 2023.

> **HILL PETERSON CARPER BEE & DEITZLER, PLLC**
>
> BY:     /s/ R. Edison Hill
>          R. Edison Hill (WVSB 1734)
>          North Gate Business Park
>          Charleston, WV 25311
>          Ph: 800-822-5667
>          Fax: 304-345-1519
>          Email: REHill@hpcbd.com
>
>          *Attorneys for Defendant Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brian, Barr & Mougey P.A.*