IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**DIANA MEY**, individually and on behalf
of a proposed class,

                Plaintiff,

v.                                                 **Civil Action No. 5:23-CV-46**
                                                       Judge Bailey

**LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR & MOUGEY P.A.; PRINCIPAL
LAW GROUP, LLC; MCM SERVICES
GROUP LLC;** and **JOHN DOE DEFENDANTS 1-5**,

                Defendants.

**ORDER**

Pending before this Court is Defendant Principal Law Group, LLC's Motion to Dismiss Plaintiff's Complaint [Doc. 21] and accompanying Memorandum in Support [Doc. 22], filed May 25, 2023. Plaintiff filed a Response in Opposition [Doc. 29] on June 15, 2023. Defendant Principal Law Group, LLC ("Principal Law") filed a Reply [Doc. 30] on June 29, 2023. Accordingly, this matter is ripe for adjudication. For the reasons that follow, this Court will deny Principal Law's Motion.

**BACKGROUND**

This case arises out of the allegation that the defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. In the Complaint, plaintiff alleges "[d]efendants and their agents, acting as a common enterprise to solicit clients for mass tort cases relating to toxic water exposure at Camp Lejeune, knowingly engaged in a

1

pattern and practice of illegal telemarketing in violation of the TCPA." [Doc. 2 at ¶ 2]. Plaintiff alleges that "[d]efendants and their agents violated the TCPA by initiating calls to Mey and other putative class members whose numbers are registered on the National Do Not Call Registry." [Id].

Defendant Principal Law Group seeks dismissal of plaintiff's complaint for lack of personal jurisdiction. *See* [Docs. 21 & 22]. It argues that neither specific nor general jurisdiction exist over Principal Law. *See* [Doc. 22].

## LEGAL STANDARD

Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of producing facts that support the existence of jurisdiction. *See* **Carefirst of Md., Inc. v. Carefirst Pregnancy Crisis Ctrs., Inc.**, 334 F.3d 390, 396 (4th Cir. 2003) ("When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff."). Ultimately, plaintiffs must establish personal jurisdiction by a preponderance of the evidence. **New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.**, 416 F.3d 290, 294 (4th Cir. 2005); **Carefirst of Md., Inc.**, 334 F.3d at 396. At this stage of the case, however, a plaintiff must establish a prima facie case for the exercise of personal jurisdiction by pointing to affidavits or other relevant evidence. *See* **New Wellington Fin. Corp.**, 16 F.3d at 294; **Carefirst of Md., Inc.**, 334 F.3d at 396.

A plaintiff must further make two showings to establish personal jurisdiction over a non-consenting, non-resident defendant. First, a plaintiff must show that a statute makes the defendant amenable to process. *See e.g.,* **Consulting Eng'rs Corp. v. Geometric**

***Ltd.***, 561 F.3d 273, 277 (4th Cir. 2009) ("A federal district court may only exercise personal jurisdiction over a foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment."); *see also* ***Int'l Shoe Co. v. Washington***, 326 U.S. 310, 314–15 (1945). Second, maintenance of the suit in the forum at issue must be consistent with traditional notions of fair play and substantial justice embodied in the Due Process Clause of the United States Constitution. ***Int'l Shoe Co.***, 326 U.S. at 320.

West Virginia's long-arm statute extends to the constitutional maximum permitted by the Due Process Clause. W.Va. Code § 56-3-33; *see also* ***Touchstone Research Lab., Ltd. v. Anchor Equip. Sales, Inc.***, 294 F.Supp.2d 823, 827 (N.D. W.Va. 2003) (Stamp, J.). Thus, in West Virginia, the issue of personal jurisdiction is simple: whether the exercise of personal jurisdiction would comport with the Due Process Clause. *See* ***Williams v. Adver. Sex LLC***, 2007 WL 2570182, at *3 (N.D. W.Va. Aug. 31, 2007) (Keeley, J.); *see also* ***Christian Sci. Bd. of Dirs. v. Nolan***, 259 F.3d 209, 215 (4th Cir. 2001). To comport with the Due Process Clause, a plaintiff must demonstrate that: (1) the non-resident "has 'minimum contacts' with the forum" and (2) "requir[ing] the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" ***Carefirst of Md., Inc.***, 334 F.3d at 397 (quoting ***Int'l Shoe Co.***, 326 U.S. at 316); *see also* ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 474–77 (1985).

General jurisdiction is exercisable when the defendant has continuous and systematic contacts with the forum state. ***ALS Scan, Inc. v. Digit. Serv. Consultants,***

*Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). "General jurisdiction may be exercised when the defendant has contacts with the forum jurisdiction that are 'so constant and pervasive as to render it essentially at home in the forum State.'" ***Fidrych v. Marriott Int'l, Inc.***, 952 F.3d 124, 131–132 (4th Cir. 2020) (quoting ***Daimler AG v. Bauman***, 571 U.S. 117, 122 (2014)). A corporation is "regarded as at home [in] the forums where it is incorporated and where it has its principal place of business." ***Fidrych***, 952 F.3d at 132 (citing ***Goodyear Dunlop Tires Operations, S.A. v. Brown***, 564 U.S. 915 (2011)). The hallmark of general jurisdiction is that the defendants' contact with the forum state is so extensive that it should foresee being haled into court. *See* ***World-Wide Volkswagon Corp. v. Woodson***, 444 U.S. 286, 297 (1980).

"If the defendant does not have sufficient contacts to be at home in the forum, the court may exercise specific personal jurisdiction if the defendant has continuous and systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state." ***Fidrych***, 952 F.3d at 132. The Fourth Circuit laid out a three-part test to determine whether exercise of specific personal jurisdiction is constitutionally appropriate. *See* ***Consulting Eng'gs Corp. v. Geometric Ltd.***, 561 F.3d 273, 277 (4th Cir. 2009). The Court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* (quoting ***ALS Scan, Inc. v. Digital Serv. Consultants, Inc.***, 293 F.3d 707, 712 (4th Cir. 2002)).

4

## **DISCUSSION**

Principal Law seeks dismissal on the basis that this Court lacks personal jurisdiction over it. *See* [Docs. 21 & 22]. Plaintiff argues that this Court has specific jurisdiction over Principal Law. *See* [Doc. 29].

"To validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied." ***Christian Sci. Bd. Dirs. of the First Church of Christ v. Nolan***, 259 F.3d 209, 215 (4th Cir. 2001). First the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of the Fourteenth Amendment's Due Process Clause. ***Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.***, 201 F.3d 314, 317 (4th Cir. 2000).

The scope of this Court's inquiry is therefore whether a defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." ***Int'l Shoe Co. v. Washington***, 326 U.S. 310, 316 (1945) (citations omitted). A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286, 297 (1980). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." ***Hanson v. Denckla***, 357 U.S. 235, 253 (1958).

The analytical framework for determining whether personal jurisdiction exists differs according to which type of personal jurisdiction–general or specific–is alleged. *See generally* **ESAB Group, Inc. v. Centricut, Inc.**, 126 F.3d 617, 623–24 (4th Cir. 1997). When a cause of action arises from a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over a defendant that purposefully directs activities toward the forum state when the litigation results from alleged injuries that arise out of or related to those activities. **Burger King Corp. v. Rudzewicz**, 471 U.S. 462, 472–73 (1985). When the cause of action does not arise out of a defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. **Helicopteros Nacionales de Colombia, S.A. v. Hall**, 466 U.S. 408, 416 (1984).

A.   **General Jurisdiction**

General jurisdiction is exercisable when the defendant has continuous and systematic contacts with the forum state. **ALS Scan, Inc. v. Digit Serv. Consultants, Inc.**, 292 F.3d 707, 712 (4th Cir. 2002). "General jurisdiction may be exercised when the defendant has contacts with the forum jurisdiction that are 'so constant and pervasive as to render it essentially a home in the forum State.'" **Fidrych v. Marriott Int'l, Inc.**, 952 F.3d 124, 131–32 (4th Cir. 2020) (quoting **Daimler AG v. Bauman**, 571 U.S. 117, 122 (2014)). A corporation is "regarded as at home [in] the forum where it is incorporated and where it has its principal place of business." **Fidrych**, 952 F.3d at 132 (citing **Goodyear Dunlop Tires Operations, S.A. Brown**, 564 U.S. 915 (2011)). The hallmark of general jurisdiction is that the defendants' contacts with the forum state is so extensive that it

6

should foresee being hailed into court. See **World-Wide Volkswagon Corp. v. Woodson**, 444 U.S. 286, 297 (1980).

In the Complaint, plaintiff sets forth that Principal Law is a Maryland limited liability company with a principal place of business in Berlin, Maryland. [Doc. 2 at ¶ 7]. Accordingly, this Court finds that it does not have general jurisdiction over Principal Law.

### B.     Specific Jurisdiction

Because this Court may not exercise general jurisdiction over Principal Law, this Court must now consider whether specific jurisdiction will permit this Court to exercise jurisdiction over Principal Law.

To determine if Principal Law's contacts support the exercise of specific jurisdiction, the Court must consider: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, thus invoking the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." **Nolan**, 259 F.3d at 215–16 (citing **Helicopteros**, 466 U.S. at 414–16; **Burger King**, 471 U.S. at 472, 476–77). "Each element must be present to support specific jurisdiction." **Lullen v. Gulick**, 2012 WL 1029577, at *5 (N.D. W.Va. Mar. 26, 2012) (Keeley, J.) (citing **Carefirst of Md., Inc. v. Carefirst Pregnancy Ctr., Inc.**, 334 F.3d 390, 397 (4th Cir. 2003)).

Principal Law argues that plaintiff has failed to establish all three elements required to support specific jurisdiction. See [Doc. 22]. First, Principal Law argues that it has not purposefully availed itself of the privilege of conducting activities in West Virginia. [Id.

7

at 6–9]. In support, Principal Law attached the declaration of Greg March, the Chief Marketing Officer of Principal Law, who "has first hand knowledge of Principal Law Group's business activity." [Doc. 22-1]. Greg March also states he is familiar with Principal Law's case retention practices. [Id. at ¶ 2]. Greg March asserts that: (1) Principal Law Group is located in Berlin, Maryland; (2) Principal Law Group does not maintain offices or agents in West Virginia; (3) Principal Law Group does not own, use, or possess any real property situated in West Virginia; (4) Principal Law Group does not routinely transact business in West Virginia; (5) Principal Law Group maintains no bank accounts in West Virginia; and (6) Principal Law Group does not engage in any long-term business in West Virginia. [Id. at ¶¶ 3–8].

Moreover, Principal Law argues that it was not involved in the delivery or approval of the alleged calls with plaintiff. [Doc. 22 at 9]. In support, Principal Law contends that it contracts with Elite MG LLL ("Elite") to perform marketing services such as internet and social media campaigns. [Doc. 22-1 at ¶ 9]. Elite then engaged with a third-party marketing agency, MCM Hustle LLC ("MCM"), to carry out "social-digital media marketing." [Id. at ¶¶ 10–13]. Principal Law contends that it does not control, direct, or have the right to control its marketer's efforts in engaging in social media marketing. [Id. at ¶ 15]. Principal Law further contends it never authorized Elite or MCM to engage in any unsolicited cold calling. [Id. at ¶ 14].

In response, plaintiff argues that Principal Law purposely availed itself of the privilege of conducting business in West Virginia. *See* [Doc. 29 at 8–9]. Plaintiff argues that Principal Law "directly solicited Mey, a West Virginia resident, for representation in the Camp Lejeune litigation." [Id. at 8]. More specifically, plaintiff contends that:

> On January 24, 2023 at 11:30 a.m., Mey received an unsolicited call from Principal Law's telemarketing agent. After a few pre-qualification questions, the telemarketing agent transferred the call to Dwaine with Principal Law. In the course of transferring the call, the telemarketing agent introduced Mey as a West Virginia resident. The Principal Law representative accepted the call and–knowing that Mey was a West Virginia resident–continued to solicit his firm's services. Then, in a series of subsequent calls, Principal Law directly and repeatedly placed additional unsolicited calls to Mey for the purpose of promoting the firm's services.

[Id. at 8 (internal citations omitted)].

In reply, Principal Law first argues that the subsequent calls it exchanged with plaintiff are not actionable under the TCPA because plaintiff invited those subsequent calls. [Doc. 30 at 2–3]. Principal Law also contends this Court cannot consider the transcripts plaintiff attached to her response in support of her contention that she identified herself as a West Virginia resident to Principal Law because plaintiff's Complaint does not allege that Principal Law knew plaintiff was a West Virginia resident at the time of the subsequent calls.[1]  [Id. at 3–4].

As an initial matter, this Court disagrees with Principal Law as to whether this Court can consider the transcripts attached to plaintiff's response. Principal Law argues that

---

[1] This Court notes that the two transcripts attached to plaintiff's response are not of the subsequent phone calls but are from the two initial calls. The first transcript is from the phone call plaintiff received from Jeff Hopkins and the second transcript is from the call with Jeff Hopkins that was transferred to Dwaine from Principal Law. *See* [Docs. 29-2 & 29-3].

9

***Adams v. Bain***, 697 F.2d 1213 (4th Cir. 1982), which plaintiff relies on in support of her contention that this Court can consider evidence outside the pleadings to resolve factual disputes necessary to determine jurisdiction, deals with a case interpreting a Rule 12(b)(1) Motion, not 12(b)(2) Motion. [Id. at 3].

While the ***Adams*** case dealt with a Rule 12(b)(1) Motion, "[t]he Fourth Circuit has clarified that a Rule 12(b)(2) challenge should generally be resolved before trial "as a preliminary matter." ***Grayson v. Anderson***, 816 F.3d 262, 267 (4th Cir. 2016). "In deciding a motion under Rule 12(b)(2), the court may conduct an evidentiary hearing to resolve disputed facts, or may decide the matter based on the pleadings, motion papers, and supporting memoranda. ***Combs*** [***v. Bakker***], 886 F.2d [673,] 676 [(4th Cir. 1989)]. If the latter option is used, the court must 'construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.' ***Id.*** The plaintiff need only make a 'prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. ***Id.***'" ***Lawrence v. Huntington Police Department***, 2019 WL 2169223, at *3 (S.D. W.Va. Apr. 23, 2019) (Eifert, M.J.). Accordingly, this Court may consider the transcripts attached to plaintiff's response.

Plaintiff alleges that "defendants knowingly solicited West Virginia based clients and engaged in persistent course of conduct in West Virginia." [Doc. 2 at ¶ 10]. Plaintiff attached two transcripts to her response to support her assertion that defendants knowingly solicited West Virginia based clients. The first transcript is from a call that took place on January 24, 2023, at 11:24 a.m., with Jeff Hopkins. *See* [Doc. 29-2]. During that

10

phone conversation, plaintiff identified herself as a West Virginia resident. *See* [id]. The second transcript is from a call that took place on January 24, 2023, at 11:30 a.m., with Jeff Hopkins and Dwaine, a paralegal from Principal Law. *See* [Doc. 29-3]. During this phone conversation, Jeff Hopkins identified plaintiff as a West Virginia resident to Dwaine and Dwaine had a conversation with plaintiff regarding the fact she lives in West Virginia. *See* [id.]. After learning that plaintiff is a West Virginia resident, Dwaine continued to ask plaintiff questions and told plaintiff she would receive paper work via email. *See* [id.].

Even if Principal Law did not authorize Elite or MCM to engage in unsolicited cold calling, it is clear based on a review of the pleadings and briefing that the plaintiff has established a prima facie case for purposeful availment as Principal Law continued to engage with plaintiff after learning she was a West Virginia resident. Accordingly, this Court finds that Principal Law availed itself of the privilege of conducting business in West Virginia.

Next, the parties dispute whether plaintiff has satisfied the second prong, which requires that her lawsuit have a sufficient nexus to the defendant's forum-based activity. A plaintiff may satisfy the nexus requirement by showing that the lawsuit either "arises out of" or "relates to" the defendant's contacts with the forum state. **Bradley v. DentalPlans.com.**, 617 F.Supp. 3d 326, 336 (D. Md. 2022) (Blake, J.). "In dealing with a tort allegation, 'a court may exercise specific personal jurisdiction over a non-resident defendant acting outside the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that the conduct would cause harm to a forum resident." **Henderson v. Metlife Bank, N.A.**, 2011 WL 1897427, at *9 (N.D. W.Va.

11

May 18, 2011) (Bailey, J.) (quoting **Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc.**, 334 F.3d 390, 397–98 (4th Cir. 2003)). "This is referred to as the 'effects test' and 'is typically construed to require that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." **Id.**

Principal Law argues that plaintiff's Complaint does not plausibly allege that Principal Law intentionally directed any tortious conduct towards West Virginia. [Doc. 22 at 10]. Principal Law first contends that plaintiff's TCPA claims can only be premised on the initial two calls placed by the marketing company, and not any subsequent calls she received from Principal Law. [Id.]. As such, Principal Law alleges that plaintiff cannot demonstrate that Principal Law directed any tortious conduct towards her in West Virginia. [Id.]. Further, Principal Law argues that plaintiff failed to plead an agency relationship between Principal Law and the third-party marketing agency as plaintiff does not allege that Principal Law "controlled or had any right to control the actions of the alleged marketing company who placed the potentially actionable calls." [Id. at 4]. Principal Law further argues that it never authorized or requested Elite or MCM to engage in unsolicited cold calling. [Id. at 4]. Principal Law reiterates that it merely hired Elite to do online social media marketing. [Id].

"[E]ven when a defendant does not 'initiate' a call, it 'may be held vicariously liable under federal common law principles of agency for TCPA violations committed by [a] third-party." **Mey v. Venture Data, LLC**, 245 F.Supp.3d 771, 786 (N.D. W.Va. Mar. 29,

2017) (Bailey, J.) (quoting *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013)).

This Court informed in *Mey v. Venture Data, LLC*:

> "In *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 468 (6th Cir. 2010), the Sixth Circuit was faced with the issue of whether the TCPA and its accompanying regulations permitted a plaintiff to recover damages under Sections 227(b) and (c) from a defendant that did not place any illegal calls but whose independent contractors did so in attempts to sell the products and services of the defendant. The Sixth Circuit invoked the doctrine of primary jurisdiction and referred the matter to the Federal Communications Commission ("FCC") to allow the agency to interpret certain provisions of the TCPA and its accompanying regulations. The FCC issued a declaratory ruling clarifying that, even though a seller may not have initiated or made a call under the TCPA, the seller may nonetheless be vicariously liable under the TCPA based on federal common law principles of agency for violations of Sections 227(b) and (c) that are committed when a third-party telemarketer initiates or places an unlawful call on behalf of the seller. *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 2013 WL 1934349 (May 9, 2013)." *Cunningham v. Kondaur Capital*, 2014 WL 8335868, at *5 (M.D. Tenn. Nov. 19, 2014), *report and recommendation approved*, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015).

The FCC opined that "a seller cannot avoid liability simply by delegating placing the call to a third-party. The FCC determined that 'while a seller does not generally "initiate" calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of [ ] section 227(b) ... that are committed by third-party telemarketers.' See *Id.* at 6574. This includes 'a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.' *Id.* at 6584." **Hossfeld v. Gov't Employees Ins. Co.**, 88 F.Supp.3d 504, 510 (D. Md. 2015) (Quarles, J.).

The FCC also stated:

[T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers.... We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules.... By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often

14

> the case.... Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.

**Melito v. Am. Eagle Outfitters, Inc.**, 2015 WL 7736547, at *5 (S.D.N.Y. Nov. 30, 2015), quoting 28 FCC Rcd. at 6588.

245 F.Supp.3d 771, 786 (N.D. W.Va. Mar. 29, 2017) (Bailey, J.).

At this stage of litigation, plaintiff has provided sufficient facts for this Court to reasonably infer that Principal Law is directly responsible for the telemarketing calls or that the calls were made by a vendor under Principal Law's control. Based on a review of the pleadings and briefing in this case, the allegations made by the plaintiff plausibly connect Principal Law to the alleged calls and therefore are sufficient to state a claim under the TCPA.

Third, the parties dispute whether exercising jurisdiction over Principal Law would be constitutionally reasonable. See [Doc. 22 at 13 & Doc. 29 at 12]. In light of the above conclusions, this Court finds that exercising jurisdiction over Principal Law would comport with traditional notions of fair play and substantial justice.

## **CONCLUSION**

For the reasons stated above, Defendant Principal Law Group, LLC's Motion to Dismiss Plaintiff's Complaint **[Doc. 21]** is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: July 18, 2023.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE