IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

DIANA MEY, on behalf of herself
and a class of others similarly situated,

      Plaintiff,

                                      Civil Action No. 5:23-cv-46

v.

LEVIN, PAPANTONIO, RAFFERTY, PROCTOR,
BUCHANAN, O'BRIEN, BARR, & MOUGEY P.A.;
PRINCIPAL LAW GROUP, LLC; MCM HUSTLE LLC;
and JOHN DOE DEFENDANTS 1-5

      Defendants.

## AMENDED COMPLAINT

Plaintiff Diana Mey ("Plaintiff"), on behalf of herself and a class of others similarly situated, states as follows for her Amended Complaint against Defendants Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, and Mougey P.A., Principal Law Group, LLC, MCM Hustle LLC, and John Doe Defendants 1-5 (collectively, "Defendants"):

### Preliminary Statement

1.      Mey brings this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.

2.      Defendants and their agents, acting as a common enterprise to solicit clients for mass tort cases relating to toxic water exposure at Camp Lejeune,

knowingly engaged in a pattern and practice of illegal telemarketing in violation of the TCPA.  In particular, Defendants and their agents violated the TCPA by initiating calls to Mey and other putative class members whose numbers are registered on the National Do Not Call Registry.

3.     Because the calls to Mey were transmitted using technology capable of generating thousands of similar calls per day, Mey brings her claims on behalf of a proposed nationwide class of persons who also received illegal telephone calls from or on behalf of Defendants in violation of the TCPA.

4.     A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties and Jurisdiction

5.     Plaintiff Diana Mey is an individual residing in Wheeling, West Virginia.

6.     Defendant Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, and Mougey, P.A. ("Levin Law") is a Florida professional corporation with a principal place of business in Pensacola, Florida.

7.     Defendant Principal Law Group, LLC ("Principal Law Group") is a Maryland limited liability company with a principal place of business in Berlin, Maryland.

8.     Defendant MCM Hustle LLC ("MCM") is a Florida limited liability company with a principal place of business in Coral Springs, Florida.

9.     Defendants John Does 1-5 are unidentified agents or vendors of the named Defendants that made calls in violation of the TCPA or otherwise participated in the common enterprise alleged herein.

10.     At all relevant times, Defendants knowingly solicited West Virginia-based clients and engaged in persistent course of conduct in West Virginia.

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Mey's claims arise under federal law.

12.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mey's claims occurred in this district.  In particular, the telemarketing calls to Mey occurred in this district.

### Defendants' Illegal Conduct

13.     Levin Law and the Principal Law Group are law firms representing clients in the prosecution of mass toxic tort claims against the United States of America.  These mass toxic tort claims commonly allege that the drinking water at Camp Lejeune was contaminated between the 1950s and 1980s, exposing millions of service members and their families to toxic chemicals.

14.     In August 2022, Congress passed the Promise to Address Comprehensive Toxics Act, providing a new private right of action to a class of individuals affected by the tainted water at Camp Lejeune.

3

15. In a race to sign up clients, law firms—including Levin Law and the Principal Law Group—have collectively spent millions of dollars on mass tort ad campaigns seeking to represent Camp Lejeune victims. Advertising is the main method to find claimants, and it's handled by an ecosystem of lawyer-specific ad agencies known as lead generators.

16. To increase the reach of their efforts to sign up Camp Lejeune victims, Defendants and their agents used automated technology to place thousands of calls to potential claimants.

17. Mey's wireless telephone number is 304-242-XXXX, which is listed on the National Do Not Call Registry (the "DNC Registry"), and used for residential purposes.

18. Despite her being listed on the DNC Registry, Defendants, directly or through one or more intermediaries, initiated telephone calls to Mey to solicit legal services in connection with the Camp Lejeune litigation.

19. On January 24, 2023 at 11:24 a.m., Mey received a call from 304-242-2040 to 304-242-XXXX. The caller "spoofed" this call by transmitting phony caller identification information to disguise the true source of the call. When Mey answered the call, she spoke to "Jeff Hopkins" who represented that he was calling in regard to Camp Lejeune. Before asking a series of scripted questions to determine whether Mey qualified to be a Camp Lejeune claimant, Mr. Hopkins stated that "we represent a law firm" and "we're providing cash settlements on behalf of the government." For some unknown reason, the call abruptly ended after about 5 minutes of discussion.

20.     On January 24, 2023 at 11:30 a.m., Mey received a call from 818-691-7969 to 304-242-XXXX.  It was "Jeff Hopkins" calling back.  After several more pre-qualification questions, the caller transferred Mey to "Dwaine," a paralegal with the Principal Law Group.   After asking more pre-qualification questions, Dwaine qualified Mey and her husband for Camp Lejeune claims.  Dwaine represented that his firm, Principal Law Group, contracts with marketing companies to obtain leads and then partners with a much bigger law firm—here, "LPR"—to prosecute the claims.  Mey would later learn that "LPR" stands for Levin Law.  Before the call was disconnected, Dwaine advised Mey that she would receive the necessary paperwork via email from "Deb Crist."   For some unknown reason, this call also abruptly disconnected.

21.     On January 24, 2023 at 5:25 and 5:28 p.m., Mey and Dwaine exchanged calls in an attempt to reconnect.  Because Mey had not yet conclusively identified "LPR," Mey continued to engage with Dwaine and the Principal Law Group.

22.     On January 24, 2023 at 5:29 p.m., Dwaine with the Principal Law Group called again.  Dwaine reiterated that Deb Crist at the Principal Law Group would email Mey the necessary paperwork.  Dwaine represented that Ms. Crist worked in the same office at the Principal Law Group.  Mey did not receive the promised paperwork because, as she later learned, Dwaine had omitted a character in Mey's email address.

23.     On January 25, 2023 at 10:03 a.m., Dwaine with the Principal Law Group called Mey.  Mey did not answer, so Dwaine was forwarded to her answering

machine.  As his message indicated, Dwaine was following up to ensure that Mey had received the necessary paperwork from Deb Crist.

24.     On January 25, 2023 at 10:27 a.m., Mey received two calls in quick succession from 818-691-7969.  The caller represented himself to by "Brian Fury," calling regarding Camp Lejeune.  Mey did not answer either call; both calls were forwarded to her answering machine.

25.     On January 25, 2023 at 12:03 p.m., Mey received a call from 818-691-7969.  The caller was "Jeff Hopkins" from the original January 24 call.  As if they had never spoken before, Mr. Hopkins again asked a series of scripted questions to determine whether Mey qualified to be a Camp Lejeune claimant.  Like the original January 24 call, Mr. Hopkins represented that he was going to transfer the call to a law firm.  Mr. Hopkins apparently had trouble reaching the law firm, so Mey hung up.

26.     On January 25, 2023 at 12:15 p.m., Mey attempted to call Dwaine at the Principal Law Group to ask why she had not yet received the promised paperwork.  Dwaine did not answer, so Mey left him a voicemail in which she again provided her name and email address.

27.     On January 25, 2023 at 12:24 and 12:27 p.m., Mey again received calls from "Brian Fury" at 818-691-7969.  After again asking a series of scripted questions to determine whether Mey qualified to be a Camp Lejeune claimant, Mr. Fury attempted to connect Mey with his "verification officer."  Mey was on hold for approximately 2 minutes before the call abruptly disconnected.

28.     On January 25, 2023 at 4:27 p.m., Mey received another call from 818-691-7969.  The caller represented himself to be "Mark" from "the verification center" and he was calling to see if Mey was still interested in qualifying for a Camp Lejeune claim.  Before transferring the call to someone at the Principal Law Group, Mark read Mey a disclosure, suggesting that "this and any future calls" with the law firm would override any do-not-call registry her phone number might be on.  Mey did not provide any prior express written consent, but did agree to be transferred, at which point the call was abruptly disconnected.

29.     On January 26, 2023 at 11:22 a.m., Mey received another call from Dwaine at the Principal Law Group, asking if Mey had received the email and paperwork promised in earlier calls.  She had not.  Dwaine then realized that he had omitted a character from Mey's email address.  After correcting Mey's email address, Dwaine resent the email, which contained an "ATTORNEY-CLIENT EMPLOYMENT AGREEMENT in Mass Torts Cases."

30.     The representation agreement was between Mey and Levin Law and provided that Level Law would provide legal services to Mey in her claim for damages arising out of injuries related to exposure at Camp Lejeune.  The Principal Law Group was identified as Levin Law's associate counsel. Under the representation agreement, Levin Law and the Principal Law Group were associated and would share in any fees awarded Mey's case.  The representation agreement contemplated that it would be countersigned by both Levin Law and the Principal Law Group.

31.     On January 27, 2023, Mey emailed debcrist@princpallawgroup.com, asking for the name of the marketing firm responsible for referring her to the Principal Law Group and Levin Law.

32.     On January 30, 2023 at 11:02 a.m., Dwaine from the Principal Law Group called Mey in response to her email.  After discussing the firm's arrangement with various marketing vendors, Dwaine represented that Mey was referred to the firm by "MCM." Dwaine acknowledged that MCM uses, among other methods, cold calls to solicit prospective clients for the Principal Law Group and Levin Law.

33.     On January 30, 2023 at 12:29 p.m., Mey received a call from "James Browes," who represented that he was calling on behalf of the Principal Law Group. Mr. Browes advised Mey that MCM is a Minnesota company and promises to investigate Mey's concerns regarding the source of the calls.  Mey later learned that MCM was instead a Florida company.

34.     On January 30, 2023 at 2:03 p.m., Dwaine from the Principal Law Group calls back and says that it appears a "senior partner at my office had someone from the marketing group call you."  Dwaine attempted to assuage Mey's concerns about the legitimacy of the proposed representation by extolling the size and credentials of the Principal Law Group's partner law firm, Levin Law.

35.     On that call, Mey advised Dwaine that she was not interested in the proposed representation and asked that he pass on her request to not receive any further calls "by you or any of the marketing companies."  The call ended.

36.     On January 20, 2023 at 2:51 p.m., Dwaine called Mey in a last-ditch effort to sign Mey up as a client.  Again, Dwaine extolled the size and credentials of the Principal Law Group's partner law firm, Levin Law.  Mey again rebuffed Dwaine's sales pitch.

37.     Mey never consented to be called by or on behalf of Defendants.  Nor did Mey have a prior business relationship with Defendants.

## Class Allegations

38.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Mey sues on behalf of all other persons or entities similarly situated throughout the United States.

39.     The class of persons Mey proposes to represent include: all residential telephone subscribers within the United States (a) who has registered his or her telephone number on the National Do Not Call Registry and (b) received more than one telephone call within any 12-month period by or on behalf of Defendants (c) at any time four years before the date this action was commenced through the date of class certification.

40.     Excluded from the classes are Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of the judge's staff and immediate family.

41.     The identities of proposed class members are ascertainable through the Defendants' phone records and customer databases.

42.     Upon information and belief, potential class members number in the thousands, at least.  Individual joinder of these persons is impracticable.

43.     Mey is a member of the class and sustained the same injury as those in the putative class.

44.     There are questions of law and fact common to Mey and to the proposed class, including but not limited to:

> a.   Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf made telemarketing calls to residential telephone numbers on the do-not-call registry;
>
> b.   Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf obtained prior express written consent from the call recipients;
>
> c.   Whether the violations of the TCPA were negligent, willful, or knowing; and
>
> d.   Whether Mey and the class members are entitled to statutory damages against Defendants.

45.     Mey's claims are based on the same facts and legal theories, and therefore are typical of the claims of class members.

46.     Mey will fairly and adequately represent the interests of the class.  She is represented by counsel skilled and experienced in class actions, including TCPA class actions.

47.     The actions of the Defendants are applicable to the class and to Mey.

48.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

49.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

50.     Mey is not aware of any class litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(c)

51.     Mey incorporates the allegations from all previous paragraphs as if fully set forth herein.

52.     Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf made telemarketing calls to Mey's residential telephone, which was listed on do-not-call registry, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

53.     Mey received more than one telephone call within a 12-month period by or on behalf of Defendants in violation of the TCPA.

54.     Defendants' violations were negligent, willful, and knowing.

WHEREFORE, Mey prays for the following individual and class-wide relief:

A. Certification of the proposed class;

B. Appointment of Mey as class representative;

C. Appointment of undersigned counsel as class counsel;

D. Judgment permanently enjoining Defendants from engaging in unlawful telemarketing practices;

E. Judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the TCPA;

F. Judgment awarding Mey and all class members statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each knowing violation; and

G. Judgment holding Defendants jointly and severally liable for the conduct alleged herein.

JURY TRIAL DEMANDED

**DIANA MEY**

By Counsel

/s/Andrew C. Robey
Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com