# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### —WHEELING DIVISION—

**DIANA MEY, individually and on behalf of a proposed class,**

**Plaintiff,**

**v.**

**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY P.A.; PRINCIPAL LAW GROUP, LLC; MCM SERVICES GROUP LLC; AND JOHN DOE DEFENDANTS 1-5.**

**Defendants.**

**Civil Action No. 5:23-cv-00046-JPB**

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 2

III.  LEGAL STANDARDS ....................................................................................... 4

IV.  ARGUMENT ...................................................................................................... 5

    A.  The Declaration Plaintiff Filed Before This Court Demonstrates That She consented to Receive Every Call After the First One, So She Can No Longer Show a TCPA violation ................................................................. 5

        i.  Plaintiff Consented to Receive Every Call Alleged in the Amended Complaint But One ................................................................. 5

        ii.  The TCPA's DNC Provisions Do Not Extend to Cell Phones ................. 7

        iii.  Plaintiff Fails to Allege That Her Telephone Number is "Residential." ............................................................................... 9

        iv.  Plaintiff Does Not Allege She Registered Her Telephone Number on the National DNC Registry ................................................ 10

    B.  The Court Lacks Personal Jurisdiction Over Levin Law ..................................... 11

        i.  The Court Does Not Have Jurisdiction Over Non-Resident Plaintiffs ...................................................................................... 13

    C.  Plaintiff Lacks Article III Standing ........................................................................ 13

    D.  Plaintiff Does Not Plead Vicarious Liability Against Levin Law ....................... 15

V.  CONCLUSION .................................................................................................... 17

# TABLE OF CASES

**Page**

*Aaronson v. CHW Grp., Inc.*,
  2019 WL 8953349 (E.D. Va. Apr. 15, 2019)....................................................................16

*Rogers v. Assurance IQ, LLC*,
  2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) .........................................................10, 11

*Baccari v. Carguard Admin., Inc.*,
  2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) .....................................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................................4

*Blaniar v. Sw. Energy Co.*,
  2020 WL 12654265 (N.D.W. Va. Oct. 26, 2020)............................................................4, 12

*Brentzel v. Fairfax Transfer & Storage, Inc.*,
  2021 WL 6138286 (4th Cir. Dec. 29, 2021) ....................................................................16

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
  582 U.S. 255 (2017)............................................................................................................13

*Callier v. Greensky, Inc.*,
  2021 WL 2688622 (W.D. Tex. May 10, 2021) ..................................................................8

*Calzone v. Hawley*,
  866 F.3d 866 (8th Cir. 2017) .............................................................................................14

*Carpenter v. PetSmart, Inc.*,
  441 F. Supp. 3d 1028 (S.D. Cal. 2020)..............................................................................13

*Childress v. Liberty Mut. Ins. Co.*,
  2018 WL 4684209 (D.N.M. Sept. 28, 2018) .....................................................................16

*Conley v. Gibson*,
  355 U.S. 41 (1957)................................................................................................................4

*Cunningham v. Creative Edge Mktg. LLC*,
  2021 WL 3085415, at *5 (E.D. Tex. June 16, 2021), *report and rec. adopted*, 2021
  WL 3085399 (E.D. Tex. July 20, 2021) ..............................................................................8

*Cunningham v. Enagic USA, Inc.*,
  2017 WL 2719992 (M.D. Tenn. June 23, 2017)..................................................................9

*Cunningham v. Rapid Capital Funding, LLC*,
  2017 WL 3574451 (M.D. Tenn. July 27, 2017) ..................................................................9

*Cunningham v. Spectrum Tax Relief, LLC*,
  2017 WL 3222559 (M.D. Tenn. July 7, 2017) ....................................................................8

*Cunningham v. Sunshine Consulting Grp., LLC*,
  2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *report and rec. adopted*, 2018
  WL 5728534 (Aug. 7, 2018)................................................................................................8

## TABLE OF CASES
(continued)

**Page**

*Daniel v. Five Stars Loyalty, Inc.*,
2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) ........................................................17

*Disability Rts. S.C. v. McMaster*,
24 F.4th 893 (4th Cir. 2022) ................................................................................14

*Gaer v. Am. Pub. Educ., Inc.*,
895 F. Supp. 2d 763 (N.D.W. Va. 2011) ................................................................11

*Gaker v. Q3M Ins. Sols.*,
2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) ....................................................5, 7, 9

*Gaston v. LexisNexis Risk Sols., Inc.*,
483 F. Supp. 3d 318 (W.D.N.C. 2020) ..................................................................13

*Gillam v. Reliance First Cap.*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) .........................................................6, 7

*Greene v. Select Funding, LLC*,
2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ............................................................6

*Hamdan v. Rumsfeld*,
548 U.S. 557 (2006) ............................................................................................8

*Hicks v. Alarm.com Inc.*,
2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ......................................................10, 15

*In re Monitronics*,
223 F. Supp. 3d at 520 ......................................................................................16

*Jackson v. Caribbean Cruise Line, Inc.*,
88 F. Supp. 3d 129 (E.D.N.Y. 2015) ....................................................................17

*Johansen v. Nat'l Gas & Elec. LLC*,
2018 WL 3933472 (S.D. Ohio Aug. 16, 2018) .......................................................17

*Johnson v. Palmer Admin. Servs., Inc.*,
2022 WL 17546957, (E.D. Tex. Oct. 20, 2022) ....................................................8, 10

*Jung v. Bank of Am., N.A.*,
2016 WL 5929273 (M.D. Pa. Aug. 2, 2016) ..........................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ..........................................................................................14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 ....................................................................................................14

*Mantha v. QuoteWizard.com, LLC*,
2022 WL 325722 (D. Mass. Feb. 3, 2022) ..............................................................9

*Melito v. Am. Eagle Outfitters, Inc.*,
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) .........................................................16

# TABLE OF CASES
(continued)

**Page**

*Mey v. All Access Telecom, Inc.*,
    2021 WL 8892199 (N.D.W. Va. Apr. 23, 2021) (Bailey, J.)..................................................12

*Morgan v. U.S. Xpress, Inc.*,
    2018 WL 3580775 (W.D. Va. July 25, 2018)................................................................9

*Nickson v. Advanced Mktg. & Processing, Inc.*,
    2023 WL 4932879 (D. Md. Aug. 2, 2023) ..................................................................6

*Panacci v. A1 Solar Power, Inc.*,
    2015 WL 3750112 (N.D. Cal. June 15, 2015) ..........................................................17

*Reese v. Marketron Broadcast Sols., Inc.*,
    2018 WL 2117241 (E.D. La. May 8, 2018)..............................................................17

*Rogers v. Postmates Inc.*,
    2020 WL 3869191 (N.D. Cal. July 9, 2020)............................................................16

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
    2022 WL 2713278 (N.D. Iowa June 9, 2022)..........................................................10

*Rowland Marietta, Inc. v. Casdorph*,
    2008 WL 11381425 (S.D.W. Va. Nov. 26, 2008) ....................................................16

*Salcedo v. Hanna*,
    936 F.3d 1162 (11th Cir. 2019) ................................................................................8

*Shelton v. Fast Advance Funding, LLC*,
    378 F. Supp. 3d 356 (E.D. Pa. 2019) ........................................................................8

*Simon v. Eastern Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)..................................................................................................14

*Smith v. Am. Amicable Life Ins. Co. of Texas*,
    2022 WL 1003762 (E.D. Pa. Apr. 4, 2022) ............................................................10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..............................................................................................4, 5

*Stacker v. Intellisource, LLC*,
    2021 WL 2646444 (D. Kan. June 28, 2021) ..........................................................13

*Strange v. Doe #1*,
    2020 WL 2476545 (W.D. La. May 12, 2020) ..........................................................8

*Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*,
    471 F.3d 544 (4th Cir. 2006) ....................................................................................4

*Taubman Realty Grp. Ltd. P'ship v. Mineta*,
    320 F.3d 475 (4th Cir. 2003) ....................................................................................4

*Universal Leather, LLC*,
    773 F.3d at 559......................................................................................................12

# TABLE OF CASES
(continued)

**Page**

*Vitol, S.A. v. Primerose Shipping Co. Ltd.*,
   708 F.3d 527 (4th Cir. 2013) ....................................................................................4

*Weirton Area Water Bd. v. 3M Co.*,
   2020 WL 8184442 (N.D.W. Va. Nov. 20, 2020)....................................................12

*Wick v. Twilio Inc.*,
   2016 WL 6460316 (W.D. Wash. Nov. 1, 2016) ....................................................17

*Wince v. Easterbrooke Cellular Corp.*,
   681 F. Supp. 2d 688 (N.D.W. Va. 2010) (Bailey, J.)............................................12

## I.   INTRODUCTION

Plaintiff Diana Mey ("Plaintiff") has amended her Complaint to identify a different defendant—MCM Hustle LLC rather than MCM Services Group. She has also presented to the Court what she claims are accurate transcripts of the offending calls. In so doing, she has destroyed her own cause of action: it takes two unconsented calls to a assert a private right of action under the Telephone Consumer Protection Act ("TCPA"). The transcripts Plaintiff declared under penalty of perjury to be accurate show, at most, only one.

Levin Law presents that new argument in this Motion. It also presents other arguments the Court did not adopt the first time around. Levin Law presents these arguments again to preserve them against Plaintiff's somewhat Amended Complaint ("Am. Compl.").

Mey's new Complaint continues to suffer from obvious deficiencies. Even after settling on a new defendant, MCM Hustle, she still does not allege any fact showing that Levin Law had any relationship with it. Levin Law does not have any link to this company, and had never even heard of it before this action was filed.

Mey's new complaint still does not allege that Levin Law had any control of the actions of PLG or MCM Hustle. Her complaint still does not allege that Levin Law approved of the behavior of PLG or MCM Hustle. Her complaint still does not allege Levin Law did anything at all. Levin Law's only link to the facts in the Amended Complaint is that its name appears on a co-representation agreement provided by PLG.

Plaintiff alleges calls to her cell phone, but the TCPA's DNC provision does not cover cellular phones. Plaintiff's DNC claim also fails because she has not pled that she is a "residential" subscriber or that she registered her telephone number on the DNC Registry. Dismissal under Rule 12(b)(6) is also warranted as Plaintiff does not plausibly allege that Levin Law is directly or vicariously liable for any alleged behavior of MCM Hustle. In any event, this

Court lacks personal jurisdiction over Levin Law. Plaintiff also lacks standing to bring a TCPA claim against Levin Law under Article III of the U.S. Constitution. The Court should dismiss the Amended Complaint as to Levin Law, with prejudice, for any or all of these reasons.

## II.    FACTUAL BACKGROUND

Camp Lejeune is a military training facility in Jacksonville, North Carolina. Between the 1950s and the 1980s, members of the United States Armed Forces stationed at Camp Lejeune were exposed to exceptionally high levels of contaminants in the drinking water. Am. Compl. ¶ 13. The contaminated water "expos[ed] millions of service members and their families to toxic chemicals." *Id.* These contaminants have caused cancer and other illnesses in members of the United States Armed Forces and their families. In August 2022, Congress passed the Promise to Address Comprehensive Toxics Act (the "Act"). The Act allows individuals stationed at Camp Lejeune during this period to recover damages through the successful filing of a lawsuit. *Id.* ¶ 14. Levin Law, a Florida corporation[1] whose only office is in Pensacola, Florida, represents servicemembers seeking to recover those damages. *Id.* ¶¶ 6, 13.

Plaintiff alleges that PLG worked with one or more marketing partners to represent Camp Lejeune plaintiffs. *Id.* ¶¶ 31–34. MCM Hustle is alleged to be one of PLG's marketing partners. *Id.* ¶¶ 32–33.[2] Plaintiff does not allege any agency relationship between MCM Hustle and Levin Law.

Plaintiff now alleges she received one call from Jeff Hopkins of MCM Hustle, in which she answered various questions, guiding the MCM Hustle representative to believe that she was

---

[1] Florida law permits a special subset of corporations to be identified as "professional associations." Levin Law is registered as both. Fla. Stat. §§ 621.01 *et seq.*

[2] This contention is refuted in the evidence submitted by PLG in connection with its Motion to Dismiss. PLG contracted with "Elite Marketing" to  identify and/or respond to potential cliamants who alleged to have been injured at Camp Lejeune . Dkt. 22-1 ¶ 9. Elite Marketing, in turn, contracted with MCM Hustle for "social media services." *Id.* ¶ 12; Ex. 1.

a Camp Lejeune victim who may be entitled to compensation. *Id.* ¶ 19. On that initial call, Hopkins asked Mey for consent to call her back on the same cellphone number in which he first called. Crucially, *Plaintiff gave Hopkins consent to call her again*.

> Jeff Hopkins: So ma'am, is this best number to call you back? (304) 242-4327?
>
> Diana Mey: *Yes. Is the attorney going to call me back?* Is that . . .
>
> Jeff Hopkins: No, no. Yeah, when they send you some paperwork and all the details, they definitely need your number. That's the reason I asked you.
>
> Diana Mey: *Yes. Okay. All right.*

Dkt. 29-2, p. 4 (emphasis added).

Shortly after Plaintiff consented to being called back on her cellphone, the call mysteriously disconnected. Dkt. 29-2, p. 5; Dkt. 38 ¶ 19. Having been provided affirmative consent to call Plaintiff back, Hopkins did so. Dkt. 29-3, p. 1; Dkt. 38 ¶ 20.

On that second call, Hopkins asked Plaintiff for consent to be transferred to a PLG representative. Plaintiff provided that consent:

> Jeff Hopkins: Okay. I got you. Right now, Ma'am, I am connecting your call here. Okay?
>
> Diana Mey: *Mm-hmm.*

Dkt. 29-3, p. 5 (emphasis added); Dkt. 38 ¶ 20.

Following the call with PLG disconnecting "for some unknown reason," Am. Compl. ¶ 20, Plaintiff and the PLG representative "exchanged calls in an attempt to reconnect." Am. Compl. ¶ 21. Following multiple calls between Plaintiff and the PLG representative, the PLG representative emailed Plaintiff a document titled "ATTORNEY-CLIENT EMPLOYMENT AGREEMENT in Mass Torts Cases." *Id.* ¶ 29. The document named Levin Law and PLG as co-counsel. *Id.* ¶ 30. The Amended Complaint does not allege that Levin Law agreed to represent Mey (it did not) or that it ever received her information from PLG (it did not). The Amended

Complaint alleges no action on the part of Levin Law at all.

## III.  LEGAL STANDARDS

### A.  FRCP 12(b)(6) – Dismissal for Failure to State a Claim

In order to properly state a claim for relief under FRCP 12(b)(6), plaintiff is required to provide a "'short and plain statement of the claim' that gives defendants 'fair notice of what the claim is and the grounds upon which it rests.' While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (citation omitted).

### B.  FRCP 12(b)(2) – Personal Jurisdiction

Jurisdiction "is a 'threshold' issue that must be resolved before reaching 'an issue relating to the merits of the dispute, such as failure to state a claim.'" *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 533 (4th Cir. 2013) (quoting *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006)). When "evidence refuting the exercise of personal jurisdiction is submitted, the burden shifts to plaintiff to come forward with evidence on the issue of personal jurisdiction and further eliminates the inferences in favor of plaintiff." *Blaniar v. Sw. Energy Co.*, 2020 WL 12654265, at *4 (N.D.W. Va. Oct. 26, 2020) (Bailey, J.).

### C.  FRCP 12(b)(1) – Article III Standing

The Court lacks federal subject matter jurisdiction to hear the claim if the plaintiff lacks standing under Rule 12(b)(1). *See, e.g.*, *Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480–81 (4th Cir. 2003). Plaintiff bears the burden of demonstrating Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To avoid dismissal, Plaintiff must show that: (1) she suffered an "injury in fact," (2) there is a causal connection between the injury and the

conduct complained of (*a.k.a.* causation or "traceability"), and (3) the injury is capable of being redressed by a favorable decision (*a.k.a.* "redressability"). *Id.* at 338.

## IV.  ARGUMENT

### A.  The Declaration Plaintiff Filed Before This Court Demonstrates That She consented to Receive Every Call After the First One, So She Can No Longer Show a TCPA violation.

The FAC's sole count alleges telephone solicitations "to Mey's residential telephone, which was listed on [sic] do-not-call registry[.]" Am. Compl. ¶ 52. "A person who receives more than one call within a twelve-month period that violates those regulations may bring a private cause of action under section 227(c)." *Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649, at *2 (W.D.N.C. Feb. 8, 2023). *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Plaintiff's Declaration, submitted to the Court on penalty of perjury, affirms that she unequivocally consented to be contacted again during her first call. Thus, her claim fails.

#### i.  Plaintiff Consented to Receive Every Call Alleged in the Amended Complaint But One.

The basis of Plaintiff's one-count TCPA Complaint is the allegation that she "received more than one telephone call within a 12-month period by or on behalf of Defendants in violation of the TCPA." Dkt. 38 ¶ 53. But now that Mey has put the actual facts of those calls before the Court—in her verified transcripts—it is clear she received only one.

In her Declaration, Plaintiff states: "On January 24, 2023 at 11:24 a.m., I received a phone call from 304-242-2040 to my phone number at 304-242-XXXX ('Call 1')." *Id.* ¶ 1. Plaintiff then declares: "On January 24, 2023 at 11:30 a.m., I received a phone call from 818-691-7969 to my phone number at 304-242-XXXX ('Call 2')." These two calls form the basis of the FAC's lone TCPA count.

But Plaintiff's own Declaration, and the transcripts of the calls she attaches to it, confirm

that she consented to *every* call she received but one. During Call 1, Jeff Hopkins of MCM Hustle asked Plaintiff for consent to call her again. *Plaintiff affirmatively consented to receive further calls*. Dkt. 29-2, p. 4. *See supra.*, pp. 2-4. Indeed, Plaintiff consented to be called back with three, distinct affirmative responses: "*Yes*. *Okay*. *All right*." Dkt. 29-2, p. 4 (emphasis added).[3] These facts demonstrate as a matter of law that Mey has no valid DNC claim. Only one unconsented call does not add up to a DNC violation. *Nickson v. Advanced Mktg. & Processing, Inc.*, 2023 WL 4932879 (D. Md. Aug. 2, 2023) (dismissing DNC claim where multiple calls were alleged, but court found plaintiff received only one TCPA-covered telephone solicitation since the complaint did not allege that the second call "discussed insurance coverage, offered to help him save money, or otherwise 'encourag[ed] the purchase or rental of, or investment in, property, goods, or services.'"); *Gillam v. Reliance First Cap.*, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) (dismissing DNC claim where multiple calls were alleged, but where plaintiff "only allege[d] answering one call and having one conversation with an RFC representative."); *Greene v. Select Funding, LLC*, 2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) (dismissing DNC claim where plaintiff alleged receipt of eight calls on the grounds that "he only answered one of these calls [. . .]. Thus, at best, Plaintiff has only alleged one telephone solicitation.")

Here, Plaintiff does not and cannot assert a colorable violation of the TCPA's DNC provision. Mey had the transcripts of the alleged calls in her possession when she filed this action but, for some reason, failed to attach them to her initial complaint. Now that she has put the transcript into the record, it's clear these calls cannot support her claim. Her action must be dismissed.

---

[3]      In the second transcript Plaintiff provided, she provided an additional consent to be connected with PLG.

### ii.  The TCPA's DNC Provisions Do Not Extend to Cell Phones.

To plead a DNC claim under the TCPA Plaintiff must allege that she is a residential telephone subscriber. Here, Plaintiff alleges in her Complaint that she received a call on her "wireless telephone." Am. Compl. ¶ 17. But the DNC provision of the TCPA applies only to residential telephones; it does not extend to cell phones.

Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect *residential telephone subscribers' privacy rights* to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). In turn, the FCC promulgated regulations stating, in pertinent part: "No person or entity shall initiate any telephone solicitation to [a] *residential telephone subscriber* who has registered his or her telephone number on the national do-not-call registry of persons[.]" 47 C.F.R. § 64.1200(c)(2) (emphasis added). The plain language of the statute and regulations demonstrates that only residential telephones are covered under the DNC provisions.

Earlier this year, the court in *Gaker v. Q3M Ins. Sols.* granted a motion to dismiss on the basis that the DNC provision of the TCPA does not extend to cell phones. While the court acknowledged FCC authority suggesting that the DNC rules apply to wireless numbers,[4] the court held that "[t]he FCC's interpretation at issue does not preclude this Court from applying the clear text of the TCPA" and that the "*structure and language of the TCPA controvert coverage of cell phones.*" 2023 WL 2472649, at *3 (emphasis added). The Court considered several key factors in reaching its conclusion.

*First*, consistent with the statutory and regulatory history above, the *Gaker* court determined that "[t]he language of the TCPA specifically provides that the regulations

---

[4] *See In re Rules & Regs. Implementing the TCPA*, 18 F.C.C. Rcd. 14014, 14148 (2003).

implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights." *Id.* (citation and quotation omitted).

*Second*, Congress specifically referenced "cellular telephone" in other provisions of the TCPA but not the DNC provision, "evidencing that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)." *Id.* (quoting *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 n.7 (E.D. Pa. 2019)); *see also Hamdan v. Rumsfeld*, 548 U.S. 557, 558 (2006) ("[A] negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute.").

*Third*, the court acknowledged that "[c]ell phones do not present the same concerns as residential telephones," where "the TCPA show[s] a concern for privacy within the sanctity of the home." *Id.* (quoting *Salcedo v. Hanna*, 936 F.3d 1162, 1168–69 (11th Cir. 2019)). *See also id.* (noting the mobility of cell phones and the ability to silence or decline calls).

Other courts are in accord that the DNC provisions of the TCPA do not apply to cell phones. *See, e.g., Johnson v. Palmer Admin. Servs., Inc.*, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), *report and rec. adopted*, 2022 WL 16919786 (Nov. 14, 2022); *Cunningham v. Creative Edge Mktg. LLC*, 2021 WL 3085415, at *5 (E.D. Tex. June 16, 2021), *report and rec. adopted*, 2021 WL 3085399 (E.D. Tex. July 20, 2021)*; Callier v. Greensky, Inc.*, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021); *Strange v. Doe #1*, 2020 WL 2476545, at *3 (W.D. La. May 12, 2020); *Cunningham v. Sunshine Consulting Grp., LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *report and rec. adopted*, 2018 WL 5728534 (Aug. 7, 2018); *Shelton*, 378 F. Supp. 3d at 363 n.7; *Cunningham v. Spectrum Tax Relief, LLC*, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017); *Cunningham v. Enagic USA, Inc.*, 2017 WL 2719992, at *5–6 (M.D.

Tenn. June 23, 2017).

Accordingly, Plaintiff's DNC claim fails as a matter of law because Plaintiff alleges that she was called on her cell phone and cell phones are not covered by the DNC rules. Not only does the statute preclude her claims, but Plaintiff alleges that she repeatedly engaged with MCM Hustle and PLG by phone, and requested to be called back, Am. Compl. ¶¶ 19–36, "thus diminishing any claim that such calls invaded her privacy." *Gaker*, 2023 WL 2472649, at *3.

### iii. Plaintiff Fails to Allege That Her Telephone Number is "Residential."

Even if the DNC provision of the TCPA extended to cell phones, Plaintiff must allege sufficient non-conclusory facts showing that the subject phone number is *actually used* for "residential" purposes in order to avoid dismissal. *See*, *e.g.*, *Cunningham v. Rapid Capital Funding, LLC*, 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017) ("As Plaintiff has not alleged facts showing his cell phones are used for residential purposes, he fails to state a claim under [Section 227(c) of the TCPA]."); *Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (holding that plaintiff's characterization that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute").

Here, Plaintiff simply alleges—without more—that her cell phone is "used for residential purposes." Am. Compl. ¶ 17. That is wholly insufficient. As recognized in *Morgan*, this is a purely conclusory allegation merely parroting the statutory text without any supporting facts demonstrating how her cell phone number is actually used.[5]  Similarly, this Court should find

---

[5] Whether someone qualifies as a "residential telephone subscriber" for purposes of a TCPA DNC claim generally depends on certain conditions, including in particular that the subject phone number at which the alleged calls were received "*is the primary means of reaching the individual at their residence—that is, there is no other landline or phone at their residence* which is instead the primary means of reaching them." *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added). Plaintiff alleges no such facts in her Complaint here.

that Plaintiff fails to state a plausible DNC claim. *See, e.g., Hicks*, 2020 WL 9261758, at *5 (dismissing Section 227(c) claim where the plaintiff alleged that his cell phone was "not associated with a business and is for personal use" but not how the phone was used for residential purposes); *Johnson,* 2022 WL 17546957, at *8 ("Assuming, *arguendo*, the Court were to view cell phones to constitute residential phones . . . Plaintiff failed to plead that his cellphone was used as a residential phone."); *Smith v. Am. Amicable Life Ins. Co. of Texas*, 2022 WL 1003762, at *3 (E.D. Pa. Apr. 4, 2022) (dismissing Section 227(c) where plaintiff did not sufficiently plead residential use of the subject phone number).

### iv. Plaintiff Does Not Allege She Registered Her Telephone Number on the National DNC Registry.

The TCPA's DNC provision expressly proscribes initiating a telephone solicitation to a "residential telephone subscriber *who has registered his or her telephone number*" on the Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added). Given the plain language of the statute, courts have dismissed claims under Section 227(c) where plaintiffs fail to allege that they personally registered their telephone number on the DNC Registry. *See, e.g., Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *4 (W.D. Wash. Mar. 27, 2023) (the absence of this critical fact made it equally plausible that "the numbers could have been registered by previous owners of those numbers rather than by Plaintiffs themselves"); *Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 WL 2713278, at *3 (N.D. Iowa June 9, 2022) (dismissing where plaintiff "did not allege, either directly or indirectly, that *she* [personally] registered her telephone on the [DNC] registry" and noting that "Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national [DNC] registry") (emphasis in original). *See also Jung v. Bank of Am., N.A.*, 2016 WL 5929273, at *9 (M.D. Pa. Aug. 2, 2016) (dismissing DNC claim because plaintiff alleged no facts plausibly

demonstrating that the defendants "violated the FCC's prescribed regulations for protecting the privacy of residential telephone subscribers").

Here, Plaintiff does not allege that she registered her phone number on the DNC registry. Instead, Plaintiff alleges that her "wireless telephone number is 304-242-XXXX, which is listed on the National Do-Not-Call Registry[] is used for residential purpose. Am. Compl. ¶17. This inartful pleading suggests that "the numbers could have been registered by previous owners of those numbers rather than by Plaintiff[.]" *Assurance IQ, LLC*, 2023 WL 2646468, at *4. Dismissal is particularly appropriate given that "[t]hese are facts that are easily within the knowledge of Plaintiff[] and can be pleaded to remove any doubt about whether [Plaintiff] actually registered [her] own number[] on the DNC list[.]" *Id*. As such, Plaintiff taking her second bite at the apple still is unable to properly plead this fact and therefore the Amended Complaint fails and must be dismissed with prejudice.  *See Gaer v. Am. Pub. Educ., Inc*., 895 F. Supp. 2d 763, 793 (N.D.W. Va. 2011) (dismissing complaint with prejudice where the "Court has already given the Class Plaintiffs the opportunity to amend their complaint once.")(Bailey, J.).

## B.  The Court Lacks Personal Jurisdiction Over Levin Law.

Plaintiff correctly alleges that Levin Law is a Florida corporation with its principal place of business in Florida. Am. Compl. ¶ 6; Thus, the Court lacks general jurisdiction over Levin Law. Lacking general personal jurisdiction, Plaintiff must rely on specific personal jurisdiction to pursue her claim in this forum.

The Fourth Circuit employs a three-part test to determine whether the exercise of specific personal jurisdiction meets the requirements of Due Process: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Universal Leather, LLC*, 773 F.3d at 559.

Plaintiff must establish all three factors. *Mey v. All Access Telecom, Inc.*, 2021 WL 8892199, at *2 (N.D.W. Va. Apr. 23, 2021) (Bailey, J.).

"[T]he first part of the three part [specific jurisdiction] test encompasses two distinct concepts, 'purposeful direction' and 'purposeful availment.' 'Purposeful availment' is generally used to analyze contract claims, while 'purposeful direction' is used to analyze tort claims." *All Access Telecom, Inc.*, 2021 WL 8892199, at *3. Because Plaintiff's one-count TCPA Complaint sounds in tort, the analysis of the first prong of the specific jurisdiction test focuses on whether Levin Law purposefully directed the alleged tortious activity. *Id.* Plaintiff's Amended Complaint does not adequately allege that Levin Law did so.

To be sure, the Amended Complaint alleges that Plaintiff received an agreement (albeit not from Levin Law) naming Levin Law as co-counsel. Am. Compl. ¶ 30.  But this is not enough to create a 12(b)(2) agency relationship. To satisfy 12(b)(2), an agency relationship must be established by *facts*. Plaintiff may not rest on her pleadings in the face of a factual challenge to jurisdiction.

Once a jurisdictional challenge is raised by a defendant, the plaintiff's burden of establishing jurisdiction must be made "by pointing to affidavits or other relevant evidence." *Wince v. Easterbrooke Cellular Corp.*, 681 F. Supp. 2d 688, 691 (N.D.W. Va. 2010) (Bailey, J.); *Weirton Area Water Bd. v. 3M Co.*, 2020 WL 8184442, at *2 (N.D.W. Va. Nov. 20, 2020) (same) (Bailey, J.). Even under the *prima facie* jurisdictional standard "when, as here, evidence refuting the exercise of personal jurisdiction is submitted, the burden shifts to plaintiff to come forward with evidence on the issue of personal jurisdiction and further eliminates the inferences in favor of plaintiff." *Blaniar*, 2020 WL 12654265, at *4 (Bailey, J.). The Rule 12(b)(2) standard does not allow for inferences in the face of Levin Law's specific denials.

Levin Law never agreed to represent Plaintiff, never sent her any contract or agreement,

and never received Plaintiff's information from PLG. Proctor Decl. ¶ 5. Any one of these uncontested facts should be sufficient to defeat jurisdiction on this basis.

### i. The Court Does Not Have Jurisdiction Over Non-Resident Plaintiffs.

In addition to lacking jurisdiction over Levin Law, this Court lacks jurisdiction over the unnamed non-resident plaintiffs. "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017).

Here, the claims of out-of-state members of the purported class do not arise, or have any connection to, activity occurring in West Virginia. Pursuant to *Bristol-Myers*, the Amended Complaint should be dismissed as to all out-of-state putative class members for lack of personal jurisdiction. *See*, *e.g.*, *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 338 (W.D.N.C. 2020) (denying out-of-state class certification following *Bristol-Myers*); *Stacker v. Intellisource, LLC*, 2021 WL 2646444, at *11 (D. Kan. June 28, 2021) (same); *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1035 (S.D. Cal. 2020) (same).

### C. Plaintiff Lacks Article III Standing.

Plaintiff cannot overcome a factual or facial challenge to her Article III standing with respect to her TCPA claim against Levin Law.

### i. Plaintiff Lacks Article III Standing as a Matter of Fact.

Any alleged injury must be "fairly traceable" to a defendant's conduct to meet the second "causation" element for Article III standing. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 125–26 (2014). Article III standing must be determined for each defendant.

*Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022) ("[T]he standing inquiry must be evaluated separately as to each defendant."). *See also Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) ("Article III standing to sue each defendant . . . requires a showing that each defendant caused [the plaintiff's] injury and that an order of the court against each defendant could redress the injury.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61). This requirement is not satisfied where the injury complained of is "th[e] result [of] the *independent action of some third party*[.]" *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)) (emphasis added). An "independent action" of a third party (MCM Hustle) is what occurred here.

Plaintiff alleges that "MCM uses . . . cold calls to solicit prospective clients," Am. Compl. ¶ 32, but Levin Law did not instruct, hire, or contract with  MCM Hustle to make anycalls.[6] *See* Proctor Decl. ¶ 5. Nor did Levin Law instruct MCM Hustle, directly or indirectly, or control its telephonic outreach, let alone outreach that might violate the DNC Rules. *Id.* Levin Law could not have instructed or controlled MCM Hustle's calling activities because Levin Law has no relationship with MCM Hustle whatsoever, nor does Plaintiff allege any such relationship. *See id.* ¶¶ 5-6. In fact, Levin Law was not aware of MCM Hustle's existence, or its telephonic outreach, until after this lawsuit was filed. *Id.*

Plaintiff's alleged injury—which rests entirely on purported unlawful telemarketing calls initiated by MCM Hustle—is not fairly traceable to any alleged conduct by Levin Law, lawful or unlawful. Therefore, Levin Law should be dismissed. *See Baccari v. Carguard Admin., Inc.*, 2022 WL 3213839, at *2–3 (E.D. Pa. Aug. 8, 2022) (dismissing TCPA case under Rule 12(b)(1)

---

[6] Levin Law disputes that Plaintiff has suffered a concrete and particularized injury-in-fact sufficient for Article III standing purposes, or that she has adequately alleged such an injury, and therefore reserves the right to address this issue at a later time.

based on factual standing challenge where plaintiff's alleged harm was not fairly traceable to defendant because it did not make or authorize the alleged unlawful calls).

### ii.  Plaintiff Fails to Plead Sufficient Facts Demonstrating Article III Standing.

On its face, the Amended Complaint also does not allege sufficient facts demonstrating that Plaintiff has Article III standing to bring a TCPA claim against Levin Law. Plaintiff (i) readily concedes that Levin Law is not directly liable under the TCPA because Levin Law did not physically place any calls to her, and (ii) does not plausibly allege Levin Law had any modicum of "control" over the "manner and means" of the calls at issue, as is required to state a claim for vicarious TCPA liability.

These defects not only warrant Levin Law's dismissal under Rule 12(b)(6); they also show that Plaintiff failed to properly plead the causation and redressability elements for Article III standing, warranting Levin Law's dismissal under Rule 12(b)(1). *See*, *e.g.*, *Hicks v. Alarm.com Inc.,* 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (holding that, "[b]ased on the deficiencies identified under Rule 12(b)(6) [with respect to direct and vicarious TCPA liability], Plaintiff also fails to properly plead causation and redressability" under Rule 12(b)(1)).

### D.  Plaintiff Does Not Plead Vicarious Liability Against Levin Law.

Even assuming *arguendo* Plaintiff could plead a valid DNC claim (she cannot), the Amended Complaint should still be dismissed as to Levin Law because Plaintiff cannot and has not pled that Levin Law is vicariously liable for any alleged action of MCM Hustle.

It is well settled that, to avoid dismissal of any TCPA claim, plaintiffs must first adequately plead a viable theory of liability—*i.e.,* direct or vicarious liability. *See*, *e.g.*, *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020). Plaintiff does not allege that Levin Law was directly liable for either of the at-issue calls. Thus, Plaintiff must rely on a theory of vicarious liability to pursue her claim. Such a theory fails.

To plead vicarious liability under the TCPA, Plaintiff must allege facts showing a consensual common-law agency relationship existed between Levin Law and the third-party who allegedly made the offending call(s). *See*, *e.g.*, *Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019). The touchstone of any agency relationship is the principal's "control" over the alleged agent. *See, e.g., Rowland Marietta, Inc. v. Casdorph*, 2008 WL 11381425, at *10 (S.D.W. Va. Nov. 26, 2008) ("[T]he concept of agency posits a consensual relationship in which one person . . . acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person. The person represented has a right to control the actions of the agent.") (quoting Restatement (Third) of Agency § 1.01 ("Restatement"), cmt. c).

In the TCPA context, Plaintiff "'cannot simply allege general control in a vacuum'" to avoid dismissal under Rule 12(b)(6). *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (quoting *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015)). What matters is whether Levin Law had sufficient control over the "*manner and means*"—*the functional steps*—*of how the alleged call campaign was conducted*. *In re Monitronics*, 223 F. Supp. 3d at 520 (emphasis added). Courts consistently dismiss TCPA complaints at the pleadings stage that lack sufficient, non-conclusory facts demonstrating control over where, how, and when allegedly violative calls are made. *See*, *e.g.*, *Brentzel v. Fairfax Transfer & Storage, Inc.*, 2021 WL 6138286, at *4 (4th Cir. Dec. 29, 2021) (finding "meritless" a claim of agency that "does not allege how, when, or where [defendants] agreed to the agency relationship and its limitations and fails to provide the contours of this agreement, except in general terms").

Plaintiff alleges that MCM Hustle made at least one offending "solicitation." Am. Compl. ¶¶ 19, 20. But Plaintiff fails to allege that Levin Law exercised any control over the "manner and

means" of MCM Hustle's calling activities. Plaintiff does not allege *any* relationship whatsoever between MCM Hustle and Levin Law. It is not possible to find or infer that Levin Law could have controlled the manner or means of any calls that MCM Hustle placed. Nor is it possible for Levin Law to have provided MCM Hustle "interim instructions." *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138–39 (E.D.N.Y. 2015) (noting that the "power to give 'interim instructions' to" an alleged third party telemarketer is "the hallmark of an agency relationship").[7] Accordingly, Plaintiff does not—and cannot—allege the essential ingredient of control—or any control at all—to state a claim for vicarious liability. *See Panacci v. A1 Solar Power, Inc.*, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (dismissing where plaintiff did not allege defendant "controlled, authorized, or even knew about [third party's] phone calls or that [defendant] had any control over" the caller and plead "virtually no allegations regarding the relationship" between the defendant and caller).

Plaintiff does not plausibly allege that Levin Law is vicariously liable. Accordingly, the Court should dismiss Plaintiff's DNC claim against Levin Law under Rule 12(b)(6).

## V.  CONCLUSION

For all these reasons, the Court should grant Levin Law's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and/or 12(b)(6) and dismiss Levin Law with

---

[7] The alleged calls made by PLG were in response to Plaintiff's request for the "necessary paperwork," Am. Compl. ¶¶ 20–23, 26, 29, and are not "telephone solicitations." *See*, *e.g.*, *Daniel v. Five Stars Loyalty*, *Inc.*, 2015 WL 7454260, at *3 (N.D. Cal. Nov. 24, 2015) (text message sent on how to complete registration after opting into rewards program not marketing); *Reese v. Marketron Broadcast Sols., Inc.*, 2018 WL 2117241, at *4 (E.D. La. May 8, 2018) (text message sent in response to request to enter contest for free concert tickets not marketing); *Wick v. Twilio Inc.*, 2016 WL 6460316, at *1–3 (W.D. Wash. Nov. 1, 2016) (text directing recipient to complete order not marketing). *See also Johansen v. Nat'l Gas & Elec. LLC*, 2018 WL 3933472, at *5 (S.D. Ohio Aug. 16, 2018), case dismissed, 2019 WL 4597740 (6th Cir. Apr. 18, 2019) (no telephone solicitation where plaintiff "kept agreeing to be called by an enrollment specialist and even attempted to call NG&E to complete the enrollment process").

prejudice.

This the 10th of August, 2023

**HILL PETERSON CARPER BEE & DEITZLER, PLLC**

BY:    <u>/s/ R. Edison Hill</u>
          R. Edison Hill (WVSB 1734)
          North Gate Business Park
          Charleston, WV 25311
          Ph: 800-822-5667
          Fax: 304-345-1519
          Email: REHill@hpcbd.com

*Attorneys for Defendant Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey P.A.*

MANATT, PHELPS & PHILLIPS, LLP

<u>/s/ Christine M. Reilly</u>
Christine M. Reilly (admitted pro hac vice)
Cody A. DeCamp (admitted pro hac vice)
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
CReilly@manatt.com
CDeCamp@manatt.com

Bezalel A. Stern (admitted pro hac vice)
1050 Connecticut Ave. NW, Suite 600
Washington, DC 20036
Telephone: 202.585.6500
BStern@manatt.com

*Attorneys for Defendant Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey P.A.*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed with the Clerk of the Court using the

CM/ECF system which will send notice of such filing to the following registered CM/ECF users:

> Ryan M. Donovan (WVSB#1160)
> Andrew C. Robey (WVSB#12806)
> HISSAM FORMAN DONOVAN RITCHIE PLLC
> P.O. Box 3983
> Charleston, WV 25339
> rdonovan@hfdrlaw.com
> arobey@hfdrlaw.com
>
> *Counsel for Plaintiff*

This the 10th day of August, 2023.

> **HILL PETERSON CARPER BEE & DEITZLER, PLLC**
>
> BY:     /s/ R. Edison Hill
>           R. Edison Hill (WVSB 1734)
>           North Gate Business Park
>           Charleston, WV 25311
>           Ph: 800-822-5667
>           Fax: 304-345-1519
>           Email: REHill@hpcbd.com
>
> *Attorneys for Defendant Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brian, Barr & Mougey P.A.*