IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

| | |
|---|---|
| DIANA MEY, individually and on behalf of a proposed class, | ) CASE NO. 5:23-cv-00046-JPB |
| | ) |
| | ) JUDGE JOHN PRESTON BAILEY |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) **DEFENDANT PRINCIPAL LAW** |
| LEVIN, PAPANTONIO, RAFFERTY, | ) **GROUP, LLC'S REPLY TO** |
| PROCTOR, BUCHANAN, O'BRIEN, | ) **PLAINTIFF'S RESPONSE TO PLG'S** |
| BARR & MOUGEY P.A., et al., | ) **MOTION TO DISMISS PLAINTIFF'S** |
| | ) **AMENDED COMPLAINT** |
| Defendants. | ) |

When Plaintiff received a call from MCM Hustle LLC ("MCM") despite her presence on the DNC list, she had several options, including: (1) ignore it; (2) answer and hang up; (3) inform the caller, Jeff Hopkins, that she is on the Do Not Call List, not interested in legal services, and not to call back, or (4) answer the call, express interest in the services offered, inquire about the potential for future contact, confirm her information to ensure future contact, and expressly consent to a transfer to a representative from PLG. Based on the transcripts incorporated into Plaintiff's Complaint, Plaintiff chose option four. And, in doing so, Plaintiff established a business relationship negating her civil claim under the TCPA.

Plaintiff's Response does nothing to contest the foregoing factual allegations; and fails to identify any legal authority reaching a different conclusion regarding the creation of a disqualifying business relationship under analogous circumstances. Similarly, Plaintiff's sole reliance on inapposite cases citing a general disfavor for disposing of class claims at the pleading stage is unavailing in light of the alleged transcripts incorporated into Plaintiff's Amended Complaint here. In short, Plaintiff's Response misses the mark entirely and PLG's Motion to Dismiss should be granted.

1

## I. Plaintiff's Conduct During Her Initial Contact with Jeff Hopkins Created an Established Business Relationship Which is an Affirmative Defense to Plaintiff's Claim

It is undisputed that an established business relationship is an affirmative defense to Plaintiff's TCPA claim. 47 C.F.R. § 64.1200(f)(5) ("a prior or existing relationship formed by **a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration**, * * * **on the basis of the subscriber's inquiry** or application regarding products or services offered by the entity within the three months immediately preceding the date of the call") (emphasis added), *see also Williams v. PISA Grp., Inc.*, No. 18-4752, 2023 U.S. Dist. LEXIS 30768, at *5 (E.D. Feb. 24, 2023). It is further undisputed that a business relationship can be established (1) without prior written consent; and (2) without a prior purchase of any kind. *See e.g. Morris v. Copart*, No. 4:15-CV-724, 2016 U.S. Dist. LEXIS 155755 (E.D. Tex. Nov. 9, 2016); *Hamilton v. Spurting*, No. 31 1-cv-102, 2013 U.S. Dist. LEXIS 38585 (S.D. Ohio Mar. 20, 2013); and *Charvat v. Southard Corp.*, No. 2:18-cv-190, 2019 U.S. Dist. LEXIS 241404 (S.D. Ohio Sep. 30, 2019). In fact, it is undisputed that an EBR can be established during a call that might otherwise be in violation of the TCPA. *Id.*

Plaintiff's inability or unwillingness to address these realities or to offer any legal authority to rebut PLG's argument is significant to the present Motion because a plaintiff must have "received more than one telephone call within any 12-month period by or on the behalf of the same entity in violation of [47 C.F.R. § 64.1200]." *See* 47 U.S.C. § 227(c)(5). (*Pl's Resp.*, at p. 5, ECF No. 51). Plaintiff's choice to ignore this legal argument does nothing to impact its clear application to the factual allegations at issue, nor the inevitable conclusion that PLG's Motion to Dismiss should be granted.

2

Although the TCPA did not define an EBR, when first enacted in 1991 the statute included the EBR exception in the "telephone solicitation" definition. The legislative history indicates that Congress intended the relationship to be interpreted **broadly**. *Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330, at *32-33 (W.D. Mo. Apr. 28, 2020). *See, e.g.*, H. Rep. No. 102-317, at 14-15 (1991) ("[A]n 'established business relationship' could be **based upon any** prior transaction, negotiation, or **inquiry** between the called party and the business entity") (emphasis added). *See also Mey v. Matrix Warranty Sols., Inc.*, No. 5:21-CV-62, 2023 U.S. Dist. LEXIS 94167, at *9 (N.D.W. Va. Mar. 23, 2023) (Bailey, J.) (confirming an EBR is created, in pertinent part "after an individual makes a[n] * * * inquiry, or application for * * * services.").[1]

Courts have established a two-prong test to determine whether was an individual's conduct was sufficient to establish an EBR:

> First, Southard must show that the alleged relationship was "formed by a *voluntary* two-way communication" between Southard and Plaintiff 47 C.F.R. § 64.1200(f)(5). Second, Southard must demonstrate that Plaintiff made an "inquiry or application regarding **products or services** offered by" Southard.

*Charvat* LEXIS 241404, at *8 (emphasis added).

### a. The Communications Between Plaintiff and Jeff Hopkins Were Voluntary

The term "voluntary'" is not defined in the statute, however, the Bouvier Law Dictionary defines Voluntariness as, "a condition of acting from one's free will, a knowing and willful act, without coercion or manipulation, and free from the influence of another person." (*Voluntariness,*

---

[1] Plaintiff quizzically cites to this case in support of her position, but her reliance in unavailing. PLG's success on its motion to dismiss does not hinge on an inquiry or application from Plaintiff prior to the initial call. As explained thoroughly in its Motion and in the volume of authority cited herein, Plaintiff's undisputed voluntary inquiry during the initial call renders any subsequent call in-actionable under the TCPA.

3

The Wolters Kluwer Bouvier Law Dictionary, 2012). *Charvat* looked at two cases – with facts analogous to the case at bar and discussed in PLG's Motion – to determine whether the communications were voluntary. *Morris*, 2016 U.S. Dist. LEXIS 155755; and *Hamilton,* 2013 U.S. Dist. LEXIS 38585. Those cases arose from circumstances where the plaintiffs engaged with the telemarketer to investigate the caller's identity. *Charvat,* 2019 U.S. Dist. LEXIS 241404, at *11-12. However, as the Court explained, whether the plaintiffs' interest was feigned or sincere was simply irrelevant to the question regarding whether their communications were "voluntary" under the TCPA:

> Plaintiff could have chosen to not engage in any communication at all—i.e., by hanging up. Alternatively, Plaintiff could have taken what is most likely the best course of action which is to inform the caller that Plaintiff's number is on the NDNCR, and he does not wish to receive any more phone calls. It may be true that Plaintiff has trouble discerning the identity of telemarketers in order to bring lawsuits against them unless he feigns interest in their services, but this does not make an otherwise voluntary conversation involuntary.

*Id.,* at *12. *Chatvat* explained the communications were voluntary even if the call was initiated by a telemarketer. *Id.,* at *12. *See also Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330, at *32-33 (W.D. Mo. Apr. 28, 2020). Here, as in *Charvart*, Plaintiff could have: (1) chosen not to answer; (2) hung up the phone; or (3) informed Mr. Hopkins that her phone number was on the DNC list. She did not. During her initial contact, she chose to engage in conversation, and to confirm and exchange information, rendering the communications voluntary. Plaintiff expressed interest, feigned or not, that she was interested in the services provided, continued the conversation, and agreed to be transferred to a law firm to discuss further.

Perhaps the most persuasive aspect of Plaintiff's Response on these issues is the fact that Plaintiff was unable to identify, literally, any case law to support her position that her affirmation to Mr. Hopkins was anything but voluntary. (*Pl's Resp.*, *generally* p.6, ECF No. 51). Indeed, such

a position is wholly unsupportable both factually and legally in a circumstance where Plaintiff voluntarily answered her phone; voluntarily engaged with Mr. Hopkins regarding legal services; voluntarily expressed interest and answered his questions; voluntarily inquired whether her confirmation of contact information would result in a call from an attorney about her claim; and voluntarily confirmed her information in response to an affirmative answer. Even if it is conceded – as it must be for purposes of the Court's analysis on motion to dismiss – that Mr. Hopkins's initial call was made in violation of 47 C.F.R. § 64.1200, there is literally nothing about Plaintiff's interaction during that call that would suggest anything but voluntary acquiescence and interest in the services being offered.

### b. Plaintiff Inquired About Legal Services and Expected Future Communication, thus Creating an EBR.

The FCC states that, for a voluntary inquiry about services to create an EBR, "[t]he nature of an inquiry must . . . be such **to create an expectation on the part of the consumer that a particular company will call them**." 68 Fed. Reg. 44,144. (Emphasis added). "[A]n inquiry regarding a business's hours or location," for example, would not establish an EBR – whereas an inquiry expressly related to the prospect of a business calling an individual, undoubtably would. *See Id.*

Plaintiff's proffered transcript shows Plaintiff was informed about the legal services being offered, the potential to receive a cash settlement, and absolutely believed confirming her phone number would result in a phone call from an attorney in connection with her interest in pursuing a claim:

> Diana Mey:
> Who are you with again?

> Jeff Hopkins:
> We are calling on behalf of Camp Lejeune, ma'am, **we work with law firms** so **who are handling this case to providing cash settlement from behalf of government.** * * *
>
> * * *
> Diana Mey:
> What is the law firm?
>
> Jeff Hopkins:
> So ma'am **we work with different law firm[s] here. We work with different attorneys here. Okay?**
>
> * * *
> Jeff Hopkins:
> So ma'am, **is this best number to call you back? (304) 242-4327?**
>
> Diana Mey:
> **Yes. Is the attorney going to call me back?** Is that…
>
> Jeff Hopkins:
> No, no. **Yeah,** when they send you some paperwork and all the details, they definitely need your number. **That is the reason I asked you.**
>
> Diana Mey:
> **Yes. Okay. All right.**
>
> Jeff Hopkins:
> So by any chance, ma'am, do you use any kind of emails like yahoo, Gmail? **We can also send you in an email as well information?**
>
> Diana Mey:
> **Yes.**
>
> Jeff Hopkins:
> Okay, just bear with me. Let me check here. **So what's your email, ma'am?**
>
> Diana Mey:
> **It's my name separated by the underscore mark, D-I-A-N-A, underscore, M-E-Y @comcast.net**.

(*Transcript*, pp.2; 4-5, ECF No. 29-2) (emphasis added). Plaintiff even tacitly concedes her intended purpose for providing this business relationship was to "complete the onboarding

6

process," i.e., to get prequalified for a potential claim and to seek legal services. (*Pl's Resp.*, p.6, ECF No. 51). In short, there is no question that voluntarily inquired about the legal services to be provided and, thus created an established business relationship negating her claim that any subsequent call could substantiate a second call in violation of the TCPA necessary to support her claim.

Plaintiff's assertion that "the broader context of this exchange" indicates Plaintiff confirmed her **phone number** – immediately after **inquiring whether an attorney would call her** – because she wanted to receive an informational packet by email strains the bounds of credulity. (*Pl's Resp.*, p. 6, ECF No. 51). As does Plaintiff's alternative argument that, after confirming her contact information and inquiring about a call back, Plaintiff's repeated statements of knowing and express permission to submit her information to a law firm would result in anything other than an expectation of a future call. (*Id.*, pp.6-8, ECF No. 51).

Indeed, the factual and legal inadequacy of this – frankly – unbelievable position is underscored by Plaintiff's inability to identify a single analogous case in support of her position. This dearth of legal support is particularly notable in light of the multiple on-point cases cited in PLG's briefing that directly support the relief requested in PLG's Motion to Dismiss Plaintiff's Amended Complaint.

II. **This Court Should Strike Plaintiff's Class Allegations at the Pleading Stage Because Plaintiff Provided this Court with a Transcript that is Dispositive of Her Claim.**

Plaintiff proffers two arguments in opposition to PLG's alternative request to strike class claims: (1) Plaintiff did not provide express written consent prior to the initial contact; and (2) Dismissal of class allegations is generally disfavored at the pleading stage. Both arguments completely miss the mark.

7

As explained thoroughly above, and in its Original Memorandum, PLG's Motion to Dismiss is predicated on an EBR defense. Plaintiff's dissertation on matters of "consent" are simply not applicable. Moreover, even if PLG were ultimately to fail in proving its EBR defense with respect to Plaintiff, the fact that – at an absolute minimum – the transcripts provide a factual basis for an EBR defense is sufficient to render Plaintiff not typical or adequate to represent the purported class. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011); *see also Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 604 (C.D. Cal. 2015); *see also Park v. Webloyalty.com, Inc.*, 2019 U.S. Dist. LEXIS 42887, 2019 WL 1227062, at *12 (S.D. Cal. Mar 15, 2019); *see also Banarji v. Wilshire Consumer Capital, LLC*, 2016 U.S. Dist. LEXIS 18015, 2016 WL 595323, at *3 (S.D. Cal. Feb. 12, 2016); *See Sherman v. Yahoo! Inc.*, 2015 WL 5604400, at **8-9 (S.D. Cal. Sept. 23, 2015); *Trenz v. On-line Administrators, Inc.*, 2017 WL 3084158, at *5 (C.D. Cal. Apr. 26, 2017); *See Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1034 (D. Nev. 2018); s*ee also Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 383 n.4 (C.D. Cal. 2016) ("It does not matter whether Defendants will ultimately prevail on these defenses. What matters is that Defendants will assert these defenses, and they have a factual basis for doing so."). Plaintiff is unable to provide any authority suggesting, and makes no effort to argue, otherwise.

Finally, Plaintiff's reliance on a general-rule as opposed to any on-point authority or legal analysis of the Court's authority to strike class allegations under the circumstances presented is as telling as it is flawed. It is well established that striking class allegations "is not premature where it is unnecessary for the court "to probe behind the pleadings before coming to rest on the certification question." *Burch v. Murphy*, No. 2:17-cv-03311-DLT, 2019 U.S. Dist. LEXIS 43947, 2019 WL 1243860, at *2 (D.S.C. Feb. 25, 2019) (recommending district court grant motion to strike class action allegations) (quoting *Waters*, 2016 U.S. Dist. LEXIS 92862, 2016 WL 3926431,

at *4); *see also Donelson v. Ameriprise Fin. Servs.*, 999 F.3d 1080, 1091 (8th Cir. 2021) (holding that striking class allegations is "sensible" if it is apparent from the pleadings that "permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained."); *see also Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *see also Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("it is Plaintiffs' burden to set forth a prima facie case showing that Rule 23's requirements are met"); *see also Ross-Randolph v. Allstate Ins.*, 2001 U.S. Dist. LEXIS 25645, *32 (MD. Dist. Ct., May 11, 2021) ("If it appears from the pleadings that class certification is unwarranted, the court may strike allegations pertaining to those claims and refuse to allow further discovery."); *see also Waters v. Electrolux Home Prods.*, 2016 U.S. Dist. LEXIS 92862, *10 (N.D. W.Va., Jul. 18, 2016). Indeed, this very Court recognizes several circuits – including the Fourth Circuit - "have determined that Rule 23 permits defendants to file preemptive motions to deny certification before discovery is completed." *Post v. AmerisourceBergen Corp.*, 2020 U.S. Dist. LEXIS 202492, *6 (N.D.W. Va. Oct. 30, 2020) (Bailey, J.). As noted in the foregoing body of case law, the determining factor is whether the pleadings provide the court with sufficient allegations to make a determination on the essential legal issues. *See generally Id.*

  Here, the Court has the requisite information to make an evaluation of Plaintiff's atypicality and inadequacy to serve as a class representative because Plaintiff has incorporated purported transcripts of her interactions with MCM Hustle into the allegations of her Amended Complaint. Simply put, the Court has – in the pleadings – the best-case scenario Plaintiff can provide of the call she received, and that scenario supports an EBR defense. Thus, because it appears from the pleadings that Plaintiff's class claims will fail either (1) because her individual claims will fail; or

9

(2) because Defendant has a factual basis upon which to pursue an affirmative defense against Plaintiff's individual claim, the facts of which are unique to her.

Notably, the case law to which Plaintiff cites in opposition to PLG's Motion to Strike class claims is completely inapposite to the case at bar. In *Alig*, the Defendant's Motion asserted that Plaintiff's class allegations for unconscionable conduct in connection with mortgage lending should be dismissed as a matter of law because discovery regarding conscionability required individualized discovery. *Alig v. Shea*, 2015 U.S. Dist. LEXIS 194450, *6 (N.D.W. Va. Oct. 15, 2015). In denying the motion, the Court noted certain alleged conduct could be "unconscionable per se" and thus dismissal at the pleading stage was premature. *See generally Id.* Meanwhile in In *Post*, and in *S. Country Farms*, the motions to dismiss were predicated on the alleged failure to plead a certifiable class. *Post v. AmerisourceBergen Corp.,* 2020 U.S. Dist. LEXIS 202492, *5 (N.D.W. Va. Oct. 30, 2020) (Bailey, J.). *S. Country Farms, Inc. v. Th Expl., LLC*, 2021 U.S. Dist. LEXIS 213742, *3 (N.D.W. Va. Nov. 4, 2021) (Bailey, J.). In each case, those motions were denied on the premise that discovery could better define the class. *See id.*

None of those cases presented either the issue, or the factual allegations presented to the Court in reviewing the pleadings in this case. Here, the Court is required to strike Plaintiff's class claims because of the unique facts supporting PLG's established business relationship affirmative defense to Plaintiff's individual claim. The factual basis for that defense is the allegations of fact presented by the Plaintiff through transcripts of alleged calls incorporated into her Amended Complaint. In short, the Court has the Plaintiff's version of the record at its disposal. Plaintiff fails to identify any additional discovery needed for her to address her atypicality and inadequacy to represent the purported class - presumably because, at the pleading stage, the transcript serves to present Plaintiff's best possible version of events.

Simply put, is unnecessary for the Court to probe behind the pleadings before coming to rest on whether the unique fact related to Plaintiff's individual claim render her an improper class representative. Applying the overwhelming case law – that has gone unopposed and undistinguished in Plaintiff's briefing – to the detailed factual allegations proffered by Plaintiff through her incorporated transcripts, it is clear that Plaintiff is atypical and inadequate to serve as a class representative. Accordingly, even if the Court were to deny PLG's Motion to Dismiss on the basis of the established business relationship defense, Plaintiff's concession and the detailed transcript provided dictate that the Court should strike Plaintiff's class claims.

III.  **Conclusion**

Plaintiff failed to respond to PLG's affirmative defense that there was an established businesses relationship. Regardless, PLG has provided this Court with the facts and legal authority that demonstrates Plaintiff's conversation with Jeff Hopkins was voluntary and that Plaintiff inquired about legal services with the expectation of receiving a call related thereto. By definition, that creates an established business relationship. And because there was an established business relationship created during the initial contact, all subsequent calls carry zero liability under the TCPA. Accordingly, the Court should grant PLG's Motion to Dismiss.

In the alternative, the transcripts provide the unique factual basis upon which PLG will pursue an EBR defense against Plaintiff's individual claims, rendering her atypical and inadequate as a class representative. Thus, if the Court is not inclined to grant PLG's Motion to Dismiss under the controlling law, the Court should strike Plaintiff's class allegations and allow the case to continue only with respect to Plaintiff's individual claims.

        Respectfully submitted,

        *James M. Popson*
        James M. Popson (WV #8843)
        Kevin W. Kita (*pro hac vice*)
        3600 Erieview Tower
        1301 East 9th Street
        Cleveland, Ohio 44114
        (216) 928-2200
        Fax: (216) 928-4400
        Email: jpopson@sutter-law.com
              kkita@sutter-law.com
        Attorneys for Defendant Principal Law Group LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of August 2023, the foregoing *Defendant Principal Law Group, LLC's Reply to Plaintiff's Response to Motion to Dismiss Plaintiff's Amended Complaint* was filed electronically with the Clerk of Court using the CM/ECF system, which will send information of such filing to all counsel of record.

        *James M. Popson*
        James M. Popson (WV #8843)
        Kevin W. Kita (*pro hac vice*)