IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
—WHEELING DIVISION—

| | |
|---|---|
| **DIANA MEY, individually and on behalf of a proposed class,** <br><br> **Plaintiff,** <br><br> v. <br><br> **LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY P.A.; PRINCIPAL LAW GROUP, LLC; MCM HUSTLE LLC; AND JOHN DOE DEFENDANTS 1-5.** <br><br> **Defendants.** | **Civil Action No. 5:23-cv-00046-JPB** |

**DEFENDANT LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY P.A.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I. THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE A CAUSE OF ACTION UNDER THE TCPA'S DNC PROVISION BECAUSE PLAINTIFF CONSENTED TO ALL SUBSEQUENT CALLS ON THE FIRST CALL ...................... 2

    A. PLAINTIFF'S ATTEMPT TO MISCONSTRUE HER FACTUAL ADMISSION IS UNAVAILING ................................................................ 4

II. PLAINTIFF CREATED AN ESTABLISHED BUSINESS RELATIONSHIP ON THE FIRST CALL .................................................................................................... 5

    A. PLAINTIFF'S FACTUAL ADMISSIONS DEMONSTRATE THE CREATION OF AN ESTABLISHED BUSINESS RELATIONSHIP ................. 6

        I. PLAINTIFF'S INQUIRY ON THE FIRST CALL CREATED AN ESTABLISHED BUSINESS RELATIONSHIP ....................................... 7

        II. AN ESTABLISHED BUSINESS RELATIONSHIP CAN BE FORMED ON AN UNSOLICITED CALL ............................................. 8

CONCLUSION ....................................................................................................................... 9

## TABLE OF CASES

**Page**

*Charvat v. Southard Corp.*,
    2019 WL 13128407 (S.D. Ohio Sept. 30, 2019) ..............................................................6, 7, 8

*Derossett v. Jonathan C. Patrowicz, D.O., P.A.*,
    2022 WL 4448859 (D. Md. Sept. 23, 2022) ...........................................................................3

*Faucett v. Move, Inc.*,
    2023 WL 2563071 (C.D. Cal. Mar. 17, 2023) .......................................................................7

*Hamilton v. Spurling*,
    2013 WL 1164336 (S.D. Ohio Mar. 20, 2013) ...................................................................7, 9

*Morris v. Copart*,
    2016 WL 6608874 (E.D. Tex. Nov. 9, 2016) ........................................................................7

*Reinert v. Power Home Remodeling Grp., LLC*,
    2020 WL 6743094 (E.D. Mich. Nov. 17, 2020) ....................................................................2

*Steinhoff v. Star Trib. Media Co., LLC*,
    2014 WL 1207804 (D. Minn. Mar. 24, 2014) .......................................................................5

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ................................................................................................3

**INTRODUCTION**

On June 16, 2023, Plaintiff Diana Mey ("Plaintiff") submitted her Declaration to this Court (the "Mey Declaration"). Dkt. 28-1. Plaintiff submitted as an attachment to the Mey Declaration the transcript of a January 24, 2023, call at 11:24am to Plaintiff from one Jeff Hopkins (the "First Call"). Dkt. 28-2. The First Call is referenced in Paragraph 19 of the Amended Complaint as the first purportedly unlawful call Plaintiff received in relationship to the Complaint's lone Do-Not-Call ("DNC") Count.

To adequately plead liability for a DNC claim under the Telephone Consumer Protection Act ("TCPA" or the "Act"), a plaintiff must plausibly allege that a DNC-registered phone was called on at least two occasions without consent. Plaintiff has provided a factual admission—in the form of a transcript authenticated by her Declaration—that she provided express consent to be called again regarding Camp Lejeune on the First Call. During the First Call, Plaintiff verbally assented to being further contacted at least twice:

> Jeff Hopkins: So ma'am, is this best number to call you back? (304) 242-4327?
>
> Diana Mey: *Yes*. Is the attorney going to call me back? Is that . . .
>
> Jeff Hopkins: No, no. Yeah, when they send you some paperwork and all the details, they definitely need your number. That's the reason I asked you.
>
> Diana Mey: *Yes. Okay. All right*.

Dkt. 28-2, p. 4 (emphasis added).

Plaintiff has proffered under penalty of perjury the factual admission that she consented on the First Call—the first call alleged in the Amended Complaint—to all of the further calls alleged therein. Given this factual admission proffered by Plaintiff, she cannot plausibly plead a cognizable DNC claim. For this reason, as well as for any or all of the additional reasons elaborated on in the Motion to Dismiss and incorporated herein by reference, Plaintiff's

Amended Complaint must be dismissed.[1]

## ARGUMENT

### I. The Amended Complaint Fails to Plausibly Allege a Cause of Action Under the TCPA's DNC Provision Because Plaintiff Consented to All Subsequent Calls on the First Call

The Amended Complaint advances a single claim for alleged violations of the TCPA's DNC provision, alleging that she "received more than one telephone call within a 12-month period by or on behalf of Defendants in violation of the TCPA." *See* Dkt. 38, ¶¶ 51–54. As Plaintiff acknowledges, to maintain a private right of action under the TCPA's DNC provisions she must plausibly allege that she received more than one telephone solicitation "within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c).

Plaintiff argues that consent is only a defense to a DNC claim where that consent is "evidenced by a signed, written agreement between the consumer and seller[.]" Dkt. 52, p. 5, citing 47 C.F.R. § 64.1200(c)(2)(ii). Plaintiff's rebuttal misses the point. The provision Plaintiff cites presumes at least two telephone solicitations. Specifically, the provision states that an "entity making ***telephone solicitations***" can escape liability if it qualifies for the DNC safe harbor provision or it has obtained a signed, written agreement in which "the consumer agrees to be contacted."  47 C.F.R. § 64.1200(c)(2)(i), (ii) (emphasis added). But here, Plaintiff cannot show at least two "telephone solicitations" as a threshold matter because she consented to be contacted on the First Call.[2] *See* 47 C.F.R. § 64.1200(f)(15) (defining "telephone solicitation" not

---

[1] Levin Law incorporates its other arguments in support of its Motion to Dismiss Plaintiff's Amended Complaint by reference to its prior Reply in support of its Motion to Dismiss Plaintiff's original Complaint. *See* Dkt. 31.

[2] Even if a written agreement were required here, Plaintiff does not dispute that her consent to be contacted was recorded (hence the call transcript), which satisfies any writing requirement. *See*, *e.g.*, *Reinert v. Power Home Remodeling Grp., LLC*, 2020 WL 6743094, at *1 (E.D. Mich. Nov.

to include a call made "with that person's prior express invitation or permission" or consent). Since Plaintiff invited further calls on the First Call, none of the subsequent calls qualify as "telephone solicitations." And since Plaintiff cannot show two telephone solicitations in a twelve-month period, Plaintiff's DNC claim fails.

The Amended Complaint and transcripts incorporated by reference therein clearly demonstrate that Plaintiff provided her consent to be contacted by Plaintiff and invited subsequent calls. Courts have granted motions to dismiss in similar situations where plaintiffs provided their phone number to defendant, either voluntarily or at defendant's request. *See*, *e.g.*, *Pinkard*, 2012 WL 5511039, at *6 (N.D. Ala. Nov. 9, 2012) ("By her complaint's own admission, plaintiff provided her telephone number to defendant at defendant's request. Thus, defendant's motion to dismiss is due to be granted."); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1046 (9th Cir. 2017) ("[W]e hold that as a matter of law Van Patten gave prior express consent to receive Defendants' text messages. He gave his cellular telephone number for the purpose of a gym membership contract with a Gold's Gym franchised gym."); *Derossett v. Jonathan C. Patrowicz, D.O., P.A.*, 2022 WL 4448859, at *5 (D. Md. Sept. 23, 2022) ("[A] called party generally provides [] consent simply by giving her phone number to a business in connection with a transaction.") (internal citations omitted). *See generally In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (Oct. 16, 1992) ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."). The Court should do the same.

---

17, 2020) (holding verbal response of "Yes" during recorded telephone call constituted consent to be contacted for purposes of plaintiff's DNC claim).

### A. Plaintiff's Attempt to Misconstrue Her Factual Admission is Unavailing

As Plaintiff affirms in the Mey Declaration, and as explained above, on the first call alleged in the Amended Complaint, she consented to be called regarding Camp Lejeune at least two times. *Supra*, 1. Plaintiff cannot plausibly dispute this admitted fact. Her attempts to do so belie belief.

Plaintiff argues that in the "broader context of the exchange," Mey did not consent to additional calls because "Mey and Hopkins were discussing an informational packet that would later be sent to Mey via email. And, as the transcript demonstrates, Hopkins only requested Mey's number because it was supposedly necessary to completing the onboarding process. At no point in this exchange did Mey invite or consent to calls by or on behalf of Levin Law." Dkt. 52, pp. 4–5.

This passage is illuminating because Plaintiff readily concedes that the following exchange took place, where Plaintiff confirmed her phone number and desire to have someone call her back:

> Jeff Hopkins: So ma'am, is this best number to call you back? (304) 242-4327?
>
> Diana Mey: *Yes. Is the attorney going to call me back?* Is that . . .
>
> Jeff Hopkins: No, no. Yeah, when they send you some paperwork and all the details, they definitely need your number. That's the reason I asked you.
>
> Diana Mey: *Yes. Okay. All right.*

Dkt. 28, p. 4 (emphasis added).

In Opposition, Plaintiff admits (as she must) that she provided consent to be contacted again. Dkt 52, p. 4. Plaintiff challenges only the *scope* of her consent, arguing that the consent she provided to be contacted was in order "to complet[e] the onboarding process." Dkt. 52, p. 5. But the transcript shows that Plaintiff's consented to be contacted was not so limited. Dkt. 28, p.

-4-

4 ("Jeff Hopkins: So ma'am, is this best number to call you back? (304) 242-4327? Diana Mey: *Yes. Is the attorney going to call me back?*" (Emphasis added)). *See Steinhoff v. Star Trib. Media Co., LLC*, 2014 WL 1207804, at *3 (D. Minn. Mar. 24, 2014) (granting motion to dismiss on issue of consent where "[p]laintiff provided the 7646 number to Defendant in the process of obtaining a subscription. Although Plaintiff now claims that she provided her cellular number 'for the sole purpose of having her call returned so that she could obtain more detailed information regarding this special offer,' Plaintiff does not allege that she actually instructed Defendant to this effect."). And, even if the consent was limited "to completing the onboarding process"—every single call alleged in the Amended Complaint—both to and from Plaintiff—was made precisely to do just that. *See* Dkt. 38, ¶¶ 20–34.

Plaintiff's factual admissions demonstrate she communicated her consent to be contacted again regarding the Camp Lejeune litigation, and subsequently received calls within the scope of that consent. As such, Plaintiff's one-count Amended Complaint should be dismissed with prejudice.

## II. Plaintiff Created an Established Business Relationship on the First Call

Plaintiff concedes that "a telephone solicitation does not violate the DNC regulations if it is made to a person with whom the caller has an" established business relationship. Dkt. 52, p. 6. Plaintiff argues that no established business relationship was created on the First Call. Plaintiff is wrong on the law.

The regulations prescribed under subsection 227(c) of the TCPA provide that it shall be a violation of the Act to initiate "any telephone solicitation" to any number registered on the national DNC registry. 47 C.F.R. § 64.1200(c)(2). Exempted from the definition of "telephone solicitation" (in addition to calls made with consent or invitation) are calls placed to a party with whom the caller has "an established business relationship." 47 U.S.C. § 227(a)(4). An

established business relationship can be created in one of two ways. As relevant for purposes of this Motion, it can be created "on the basis of the subscriber's *inquiry* or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5) (emphasis added).[3]

Plaintiff concedes, and the record reflects, that Plaintiff inquired into legal services in connection with the Camp Lejeune litigation on the First Call. *See* Dkt. 52, pp. 4–5. All further calls alleged in the Amended Complaint were placed within three months of the date of the inquiry. *See* Dkt. 38, ¶¶ 19, 34 (calls placed between January 24, 2023, the date of Plaintiff's inquiry, and January 30, 2023, the date of the last call alleged to have been received by Plaintiff). As such, an established business relationship was created on the First Call.

### A. Plaintiff's Factual Admissions Demonstrate the Creation of an Established Business Relationship

Plaintiff argues that the issues of consent and the existence of an established business relationship "cannot be decided at the pleading stage, where Mey is afforded the benefit of every inference." *See* Dkt. 52, p. 5. Not so. The existence of an established business relationship can be determined at the pleading stage when it is apparent from the face of the complaint or from documents incorporated therein by reference. *See*, *e.g.*, *Charvat v. Southard Corp.*, 2019 WL 13128407, at *5 (S.D. Ohio Sept. 30, 2019) (granting motion to dismiss in part where transcripts revealed that plaintiff formed an established business relationship during a telemarketing call such that future calls did not violate the TCPA's DNC provisions).

Here, there is no disputed issue of fact. Indeed, given that Plaintiff provided the

---

[3] Plaintiff's partial quotation of this regulation omits the pertinent portion of the regulation quoted here, replacing it with ellipses. Dkt. 52, p. 6.

transcript, and the contents of the transcript are not in dispute, the Court may consider them for purposes of this motion. *See Faucett v. Move, Inc.*, 2023 WL 2563071, at *2 (C.D. Cal. Mar. 17, 2023) (considering call transcripts in TCPA action where plaintiff relied on the transcripts in opposition to a motion to dismiss, and "because the calls reflected in the Transcriptions form the basis of [plaintiff]'s TCPA claims and [plaintiff] does not contest the reliability of the Transcriptions, the Court finds that it may properly consider these documents under the doctrine of incorporation by reference.").

    i.  **Plaintiff's Inquiry on the First Call Created an Established Business Relationship**

Plaintiff is correct that "that an [established business relationship] can only arise from a prior purchase, transaction, inquiry or application." Dkt. 52, p. 6. Where Plaintiff falters, however, is in her argument that she did not "inquire" into Defendants' products or services. *See id.*, p. 7. She did. Dkt. 28-2, 28-3, 38.

Courts have found communications just like those submitted in Plaintiff's declaration sufficient to create an established business relationship. *See, e.g., Morris v. Copart*, 2016 WL 6608874 (E.D. Tex. Nov. 9, 2016) (dismissing on basis of an established business relationship at motion to dismiss stage where "[p]laintiff's false affirmation that he had a vehicle to donate established a business relationship, excusing subsequent calls made in furtherance of that business relationship[.]"); *Hamilton v. Spurling*, 2013 WL 1164336 (S.D. Ohio Mar. 20, 2013) (dismissing on established business relationship grounds where plaintiff made appointments with chiropractors in response to unsolicited calls and the subsequent calls related to those appointments). *Charvat*, 2019 WL 13128407, at *4 (S.D. Ohio Sept. 30, 2019) (finding an EBR existed where a "plaintiff seeking the protections of the TCPA chose to engage with the telemarketer to try to discover the caller's identity[,]" and that the "inquiry" portion of the established business relationship was satisfied by plaintiff asking about the length of the

-7-

warranty offered by defendants).

The case of *Johansen v. Nat'l Gas & Elec., LLC* is instructive because it explains that the relevant consideration for purposes of the "established business relationship" inquiry is whether the called party's conduct creates in the caller a reasonable expectation that such a relationship has been created. 2018 WL 3933472 (S.D. Ohio Aug. 16, 2018). In *Johansen*, plaintiff submitted sworn testimony that "he knowingly provided incorrect information to [defendant]. Plaintiff admitted in his affidavit that he supplied a false address and false account number. Thus, even though the [defendant's] representative on the telephone would have believed that plaintiff was enrolling, plaintiff 'knew that no matter what happened, he would not receive [defendant]'s services.'" *Id.*, at \*1. The court then issued an order to show cause for why the case should not be dismissed on established business relationship grounds. *See id.* In issuing the OSC, the *Johansen* court explained that an existing business relationship existed because where "Johansen may have privately understood that his purchase and inquiry were not in earnest and that he would not receive [defendant]'s services. But his deceptive conduct gave [defendant] an objectively reasonable basis for believing that he had established a business relationship with [defendant][.]" *Id.* (emphasis added).

By providing her medical information, confirming her phone number, verifying that she would receive a follow-up call, and expressing interest in redressing her purported claims, Plaintiff's "deceptive conduct gave [defendant] an objectively reasonable basis for believing that [s]he had established a business relationship with [defendant]." *Id.*, at \*1. Dismissal is therefore appropriate at this juncture.

### ii. An Established Business Relationship Can be Formed on an Unsolicited Call

Plaintiff argues that she could not have consented if the initial call was an illegal telemarketing call. Dkt. 52, p. 1. Plaintiff submits no legal authority for this proposition. This is

unsurprising because Plaintiff is wrong on the law.

In *Hamilton*, plaintiffs received unsolicited calls for chiropractor services after being in a motor vehicle accident. 2013 WL 1164336, at *1. Plaintiffs had no interest in receiving these calls and began answering the calls to make appointments with the callers to determine their identities. *See id.* at *1. While the initial call may have been unsolicited, plaintiffs could not prevail on a DNC claim because an established business relationship was formed during the unsolicited call:

> Although [plaintiff] did not have an established business relationship with Dr. Bruce at Chiropractic Therapy West prior to the first call by Ms. Bagley, it is the finding of this Court that she agreed to set up an appointment with Dr. Bruce for chiropractic services during the first call. Setting up the appointment constitutes an "inquiry" or "application" regarding chiropractic services offered at Chiropractic Therapy West. Thereafter, absent [plaintiff]'s termination of this established business relationship, Ms. Bagley's second, third, and fourth calls following up regarding the missed appointment do not meet the definition of a "telephone solicitation" under the TCPA Regulations.

*Id*. at *10. *See also Johansen*, 2018 WL 3933472 (established business relationship formed during unsolicited call where Plaintiff pretended to be interested in enrolling in defendant's services).

As such, even if the initial contact from Hopkins was unsolicited, Plaintiff's interest in filing a Camp Lejeune claim and her invitation to be contacted in the future were sufficient to create reasonable belief that Plaintiff and Defendants formed an established business relationship. Because an established relationship was formed on the First Call and Plaintiff cannot show that she received two telephone solicitations, Plaintiff's DNC claim fails, and the Amended Complaint should be dismissed with prejudice.

## CONCLUSION

The Mey Declaration, submitted to the Court under penalty of perjury, affirms that Plaintiff cannot state a cognizable claim for relief. Because Plaintiff's Amended Complaint only

plausibly alleges the receipt of a single DNC-violative call, she has no cause of action. As such, the Court should grant Levin Law's Motion to Dismiss the Amended Complaint with prejudice.

This the 31st day of August 2023

                              **HILL PETERSON CARPER BEE & DEITZLER, PLLC**

BY:    /s/ R. Edison Hill
          R. Edison Hill (WVSB 1734)
          North Gate Business Park
          Charleston, WV 25311
          Ph: 800-822-5667
          Fax: 304-345-1519
          Email: REHill@hpcbd.com

**MANATT, PHELPS & PHILLIPS, LLP**

/s/ Christine M. Reilly
Christine M. Reilly (admitted pro hac vice)
Cody A. DeCamp (admitted pro hac vice)
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
CReilly@manatt.com
CDeCamp@manatt.com

Bezalel A. Stern (admitted pro hac vice)
1050 Connecticut Ave. NW, Suite 600
Washington, DC 20036
Telephone: 202.585.6500
BStern@manatt.com

*Attorneys for Defendant Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey P.A.*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send notice of such filing to the following registered CM/ECF users:

    Ryan M. Donovan (WVSB#1160)
    Andrew C. Robey (WVSB#12806)
    HISSAM FORMAN DONOVAN RITCHIE PLLC
    P.O. Box 3983
    Charleston, WV 25339
    rdonovan@hfdrlaw.com
    arobey@hfdrlaw.com

    *Counsel for Plaintiff*

This the 31st day of August 2023.

        **HILL PETERSON CARPER BEE & DEITZLER, PLLC**

BY:    /s/ R. Edison Hill
        R. Edison Hill (WVSB 1734)
        North Gate Business Park
        Charleston, WV 25311
        Ph: 800-822-5667
        Fax: 304-345-1519
        Email: REHill@hpcbd.com

        *Attorneys for Defendant Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brian, Barr & Mougey P.A.*