**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

| | |
|---|---|
| DIANA MEY, on behalf of herself and a class of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRINCIPAL LAW GROUP, LLC, JOHN DOE DEFENDANTS 1-5, and MCM HUSTLE LLC,<br><br>Defendants. | Civil Action No. 23-cv-00046-JPB<br><br><br>**EXPERT REPORT OF ANYA VERKHOVSKAYA** |

**March 14, 2025**

## TABLE OF CONTENTS

I.    SUMMARY ....................................................................................................3

II.   EXPERIENCE AND QUALIFICATIONS ............................................................3

III.  DATA AND DOCUMENTS RELIED ON .......................................................12

IV.   OPINION: Using the CDR, there is a reliable method of efficiently and effectively notifying the proposed Class that comports with the requirements of Federal Rule of Civil Procedure 23. .........................................................................................12

I, Anya Verkhovskaya, hereby state as follows:

1.      The facts set forth in this report (the "Expert Report") are based upon my personal knowledge, and I could competently testify to them if called upon to do so.

2.      It is my understanding that the Court has certified the following class: All individuals appearing on the Call Detail Records (the "CDR") attached as Exhibit A to the Plaintiff's Motion for Class Certification.

3.      Plaintiff retained me at an hourly rate of $625 for the data analysis and my time preparing this Amended Expert Report, and $850 for testimony in deposition, hearing, or trial. My staff performs work at rates ranging between $110 and $375 per hour. My compensation does not depend upon the opinions that I offer or on the outcome of this matter.

4.      In the past ten years, I have authored no publications.

5.      I am over the age of 21 and I am not a party to this action.

6.      I am not a member of the certified class in this matter.

7.      I testified as an expert witness at deposition or trial in the last four years in the cases listed on Exhibit 1.

I.      **SUMMARY**

8.      <u>OPINION</u>: Using the CDR, there is a reliable method of effectively notifying Class members that comports with the requirements of Federal Rule of Civil Procedure 23.

9.      My opinion is offered to a reasonable degree of certainty within the fields of data management, data analysis, class member identification and location, notice, and claims administration.

II.     **EXPERIENCE AND QUALIFICATIONS**

10.     I am the President and Chief Executive Officer of Class Experts Group, LLC (CEG), a firm that offers litigation support services, including as consulting or testifying experts, with a focus on data management and data analysis, particularly in the area of TCPA, consumer protection, human and civil rights class actions. CEG also provides class notification, claims administration, and consumer protection class action litigation support services.

11.     I have more than two decades of experience serving as an expert witness or court-approved administrator in various class action matters, including hundreds of TCPA cases and consumer protection, employment, antitrust, securities fraud, ERISA, human and civil rights, and other class action claims. My resumé describes my experience and qualifications in more detail and is attached as Exhibit 2.

12.     In my professional experience, I have analyzed, overseen, and directed data analysis, and made determinations regarding sets of data containing billions of records, including but not limited to the analysis of telephone call records; credit card company records; governmental agency data files; life, automobile, medical, and title insurance records; medical billing records; mortgage, securities, and other banking records; and other large-volume data sets from dozens of industries.

13.     As a result of this experience, I am familiar with numerous and diverse methods and systems that are commonly used to perform reliable record analysis on voluminous sets of data, including, but not limited to loading, standardizing, transformation, querying, and cross-referencing.

14.     I have extensive experience in identifying and locating class members in order to administer class actions and related programs, involving all aspects of direct, media, digital, email, and third-party notice programs, data management, claims administration, and settlement fund distribution, both domestically and internationally.

15.     I have overseen the administration, processing, and adjudication of millions of class action claims, including analysis, classification, processing of documentation (paper and digital) and related correspondence; issuance of payment; and assuring legal and tax settlement fund compliance.

16.     I regularly serve as an expert witness, providing opinions and testimony in state and federal court cases related to class member identification and location, class certification, notice adequacy, claims administration, and settlement disbursal.

17.    I also serve as an expert witness, providing opinions and testimony in TCPA cases concerning identification of wireless telephone numbers; telephone numbers registered on the NDNCR, tallying of telephone call dispositions; internal do-not-call list violations; reverse-append of names, mailing, and email addresses; historical and current telephone carrier identification; address updating; historical identification of telephone numbers as business or residential; and cross-referencing data points between two or more data sets in order to aggregate or compare information. For example, my team and I provided expert reports employing or describing many of these or similar methods, and offered either deposition and/or trial testimony, including but not limited to the following TCPA cases:

*Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-cv-06314 (N.D. Cal.)

*Bakov v. Consolidated World Travel*, No. 15-cv-02980 (N.D. Ill.)

*Baldwin v. Miracle-Ear, Inc.*, No. 20-01502 (D. Minn.)

*Benzion v. Vivint, Inc.*, No. 12-cv-61826 (S.D. Fla.)

*Berman v. Freedom Fin. Network, LLC*, No. 18-cv-01060 (N.D. Cal.)

*Biringer v. First Fam. Ins., Inc.*, No. 14-cv-00566 (N.D. Fla.)

*Brown v. DirecTV, LLC*, No. 13-cv-01170 (C.D. Cal.)

*Buchanan v. Sirius XM Radio, Inc.*, No. 17-cv-00728 (N. D. Tex.)

*Chinitz v. Intero Real Estate Services*, No. 18-cv-05623 (N.D. Cal.)

*Chinitz v. NRT West, Inc.*, No. 18-cv-06100 (N.D. Cal.)

*Cordoba v. DIRECTV, LLC*, No. 15-cv-03755 (N.D. Ga.)

*CS Wang & Assoc. v. Wells Fargo Bank, N.A.*, No. 16-11223 (N.D. Ill.)

*Drayton v. Toyota Motor Credit Corp.*, No. 16-cv-00046 (M.D. Fla.)

*Duchene v. Westlake Services, LLC*, No. 13-cv-01577 (W.D. Pa.)

*Fabricant v. AmeriSave Mortgage*, No. 19-04659 (C.D. Cal.)

*Fitzgerald v. Universal Pictures*, No. 16-cv-01193 (M.D. Fla.)

*Garcia v. Target Corp.*, No. 16-cv-20727 (S.D. Fla.)

*Gilmore v. USCB Corp.*, No. 17-cv-00119 (M.D. Ga.)

*Goins v. Palmer Recovery Attys., PLLC*, No. 17-cv-00654 (M.D. Fla.)

*Heidarpour v. Cent. Payment Co. LLC*, No. 15-cv-00139 (M.D. Ga.)

*Hennie v. ICOT Hearing Systems, LLC d/b/a ListenClear*, No. 18-02045 (N.D. Ga.)

*Hopkins v. Modernize, Inc.*, No. 17-cv-40087 (D. Mass.)

*Hossfeld v. Compass Bank*, No. 16-cv-02017 (N.D. Ala.)

*Jenkins v. National Grid USA*, No. 15-cv-01219 (E.D.N.Y.)

*Johansen v. One Planet Ops, Inc.*, No. 16-cv-00121 (S.D. Ohio)

*Johnson v. Comodo Group, Inc.*, No. 16-cv-04469 (D.N.J.)

*Johnson v. Navient Solutions, Inc.*, No. 15-cv-00716 (S.D. Ind.)

*Krakauer v. DISH Network, LLC*, No. 14-cv-00333 (M.D.N.C.)

*Manopla v. Home Depot USA, Inc.*, No. 15-cv-01120 (D.N.J.)

*McMillion v. Rash Curtis & Assoc.*, No. 16-cv-03396 (N.D. Cal.)

*McCurley v. Royal Seas Cruises, Inc.*, No. 17-0986 (S.D. Cal.)

*Mey v. Frontier Commc'n Corp.*, No. 13-cv-01191 (D. Conn.)

*Mey v. Honeywell Int'l, Inc.*, No. 12-cv-01721 (S.D.W. Va.)

*In re Monitronics Int'l., Inc. TCPA Litig.*, No. 13-md-02493 (N.D. W. Va.)

*Morris v. SolarCity Corp.*, No. 15-cv-05107 (N.D. Cal.)

*Lennartson v. Papa Murphy's Int'l. LLC*, 15-cv-05307 (W.D. Wash.)

*Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-02306 (N.D. Cal.)

*Reyes v. BCA Fin. Services, Inc.*, No. 16-cv-24077 (S.D. Fla.)

*Roberts v. Wyndham Int'l, Inc.*, No. 12-cv-05083 (N.D. Cal.)

*Samson v. United Health Care Services*, No. 19-cv-00175 (W.D. Wash.)

*Slovin v. Sunrun, Inc.*, No. 15-cv-05340 (N.D. Cal.)

*Trenz v. Volkswagen Grp of Am.*, No. 15-cv-08356 (C.D. Cal.)

*Youngman v. A&B Ins. & Fin.*, No. 16-cv-01478 (M.D. Fla.)

*West v. Cal. Service Bureau, Inc.*, No. 16-cv-0324 (N.D. Cal.)

*Williams v. PillPack, LLC*, No. 19-cv-05282 (W.D. Wash.)

*Winters v. Capital One Bank (USA) N.A.*, No. 17-cv-01178 (C.D. Cal.)

*Wright v. eXp Realty, LLC*, No. 18-cv-01851 (M.D. Fla.)

18.     I was the court-appointed settlement administrator and managed claims processing and the fund distribution and/or was a notice expert, including but not limited to the following TCPA cases:

*Benzion v. Vivint, Inc.*, No. 12-cv-61826 (S.D. Fla.)

*Brey Corp v. Life Time Improv., Inc.*, No. 11-cv-00948 (D. Md.)

*Brieger v. Tellabs, Inc.*, No. 06-cv-1882 (N.D. Ill.)

*Brown v. Rita's Water Ice Franchise Co., LLC*, No. 15-cv-3509 (E.D. Pa.)

*Buchanan v. Sirius XM Radio, Inc.*, No. 17-cv-00728 (N.D. Tex.)

*Collins v. Am. Consumer Shows, Inc.*, No. 10-cv-11912 (D. Mass.)

*Desai v. ADT Security Services, Inc.*, No. 11-cv-1925 (N.D. Ill.)

*Duchene v. Westlake Services, LLC*, No. 13-cv-01577 (W.D. Pa.)

*Fray-Witzer v. Metropolitan Antiques, LLC*, No. 02-5827 (Mass. Super. Ct.)

*Fray-Witzer v. Olde Stone Land Survey Co., Inc.*, No. 08-cv-04175 (Mass. Super. Ct.)

*Heidarpour v. Cent. Payment Co., LLC*, No. 15-cv-00139 (M.D. Ga.)

*Horton v. Cavalry Portfolio Services, LLC*, No. 13-cv-00307 (S.D. Cal.)

*Ikuseghan v. MultiCare Health Sys.*, No. 14-cv-05539 (W.D. Wash.)

*Krakauer v. DISH Network, LLC*, No. 14-cv-00333 (M.D.N.C.)

*LaVigne v. First Cmty. Bancshares, Inc.*, No. 15-cv-00934 (D.N.M.)

*Luster v. Green Tree Servicing, LLC*, No. 14-cv-01763 (N.D. Ga.)

*Mann & Co., PC v. C-Tech Ind., Inc.*, No. 08-cv-11312 (D. Mass.)

*Martin v. Dun & Bradstreet, Inc.*, No. 12-cv-00215 (N.D. Ill.)

*Mey v. Herbalife Int'l, Inc.*, No. 01-C-263 (W.Va. Cir. Ct.)

*Mey v. Interstate Nat'l Dealer Services, Inc.*, No. 14-cv-01846 (N.D. Ga.)

*Mey v. Venture Data, LLC*, No. 14-cv-00123 (N.D.W. Va.)

*Milford & Ford Assoc., Inc. v. Am. Consumer Shows, LLC*, No. 10-cv-11912 (D. Mass.)

*Milford & Ford Assoc., Inc. v. Cell-Tek, LLC*, No. 09-cv-11261 (D. Mass.)

*Mohamed v. Am. Motor Co., LLC*, No. 15-cv-23352 (S.D. Fla.)

*Munday v. Navy Fed. Credit Union*, No. 15-cv-01629 (C.D. Cal.)

*Nguyen v. Vantiv LLC*, No. 15-cv-02436 (N.D. Cal.)

*O'Neill v. Carrington Mortgage Serv.'s*, No. 19-cv-10643 (Mass. Super. Ct.)

*Peltier, et al., v. Bernhardt, et al.*, No. 1:20-cv-03775 (D. D.C.)

*Ward v. Flagship Credit Acceptance LLC*, No. 17-cv-02069 (E.D. Pa.)

19.     In each case, I employed a reliable method using industry-standard best practices to identify and locate persons who met the class definition. If asked to do so here, I could likewise develop and employ a reliable method to identify and locate Class members and/or issue payment, without recourse to individualized review.

20.     These cases collectively identified, notified, and/or issued payment to millions of persons who met the respective class definitions in each case. Identifying, locating, notifying class members, processing claims, and issuing payment are routine processes that claims administration firms have been completing under court supervision for decades.

21.     Many of the cases listed above involved classes comprised of persons for whom the defendants did not have name/address/email information. In each case, I used industry-standard best practices to identify class members' missing contact information and ultimately to ensure payment to settlement class members who submitted valid claim forms.

22.     Courts have admitted my expert opinions and testimony about my data analysis methods, notice programs' effectiveness and efficiency, and the reliability of claims administration determinations made under my direction, in dozens of cases.

23.     In *Krakauer v. DISH Network, LLC*, No. 14-cv-00333 (M.D.N.C.), when defendants sought to exclude my report, the court noted that it had "reviewed a number of Ms. Verkhovskaya's reports and declarations during the course of these proceedings and heard her testify at trial… Based on its familiarity with her work over time and on its personal, in-court observations of her testimony, the Court finds her to be a credible witness and has no concerns about her honesty or integrity." The jury then weighed my testimony about initial data processing (call dispositions and durations), identification of telephone numbers on the NDNCR at a given point in time, and identification of residential and business telephone numbers. The jury entered a verdict in favor of the plaintiff and the class (with treble damages). In denying a later motion to set aside the verdict, the court stated that "Ms. Verkhovskaya provided clear, cogent testimony explaining her methodology and the bases for her opinions. To the extent there was conflicting evidence that questioned the validity, credibility, and weight of Ms. Verkhovskaya's opinions, the jury weighed that evidence and rejected Dish's evidence."

24.     Also, in the *Krakauer* matter, Defendant's expert opined that my method was unreliable. The court dismissed this testimony, stating that Defendant's expert "testified at some length that Ms. Verkhovskaya 'failed to apply the proper standards, the accepted standards of data

analysis'" but that even "if the Court agreed that Ms. Verkhovskaya's evidence was shaky, ***which it does not***, Dish had a full opportunity to contest it and took advantage of that opportunity… The plaintiffs offered credible evidence that [the vendor] made thousands of telemarketing phone calls on Dish's behalf and as Dish's agent to residential numbers…in violation of federal law… [T]here was no miscarriage of justice." (emphasis added, citations omitted).

25.     In *McMillion v. Rash Curtis & Associates*, No. 16-cv-03396 (N.D. Cal.), a jury weighed my testimony about historical wireless identification of telephone numbers and historical reverse-append of users and/or subscribers names and addresses. The jury entered a verdict in favor of Plaintiff McMillion and the classes at $500 per each call I identified, resulting in a common fund award of $267,349,000.

26.     Several other courts have commented favorably on the record regarding my TCPA-related experience and expertise.

27.     In *Shamblin v. Obama for America*, No. 13-cv-2428 (S.D. Fla.), the court called me "amply qualified," saying that my "relevant experience, education, and training render [me] competent to offer expert testimony in TCPA cases." The court also noted that I "employ generally reliable methodologies … and utilization of LexisNexis data …"

28.     In *Reyes v. BCA Financial Services, Inc.*, No. 16-cv-24077 (S.D. Fla.), the court noted that "[s]everal other district courts have also relied on Verkhovskaya's expertise when deciding whether to certify TCPA and other classes," including *Shamblin* and *Krakauer*, before denying a *Daubert* motion to strike my expert report in that matter.

29.     In *Abante Rooter & Plumbing, Inc. v. Alarm.com*, No. 15-cv-06314 (N.D. Cal.), the court denied a motion to strike my expert report under *Daubert*, where defendant had argued that the data I relied on to identify business telephone numbers was not reliable. The court noted that the same argument had been made in Krakauer, and the court there had "rejected a similar challenge to her methodology … finding that Ms. Verkhovskaya properly used Lexis Nexis data

to remove business numbers from her output list because it was the type of data reasonably relied upon by experts in the field" and the error rate in the data was normal for the field. Concurring, the court denied the *Daubert* motion and admitted my opinion into evidence.

30.    In *Chinitz v. Intero*, No. 18-cv-05623 (N.D. Cal.), the court denied a motion to strike my expert report under *Daubert*, because the defendant argued that the data I relied on to identify business telephone numbers is not reliable. The court stated, "… Indeed, several courts have approved of Ms. Verkhovskaya's use of LexisNexis to remove business numbers from her output list as this is the type of data reasonably relied upon by experts in the field."

31.    In addition to the cases referenced above and, in my resumé, I have also overseen a number of complex, large-scale domestic and international administration programs.

32.    As the court-appointed notice administrator in the *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000), I played a key role in a worldwide Phase I notice program that resulted in the processing of more than 500,000 initial questionnaires relating to a $1.25 billion settlement. In Phase III of that matter, I coordinated delivering notice to more than 10,000 Jewish communities in 109 countries. In both Phases I and III of that matter, I administered international help and call centers that directly assisted more than 100,000 potential claimants, created a class-appropriate notice targeting members of the Romani community in 48 countries, directed hundreds of staff in communicating with Romani communities and individuals, and notified more than two million people of the settlement.

33.    I was appointed by the government of Germany to lead notice and claims collection efforts in the German Forced Labour Compensation Programme (GFLCP). Under my direction, the program located more than 43,000 Romani survivors in 17 countries in central and eastern Europe who were potentially eligible for humanitarian aid. I oversaw creation of a comprehensive database for the GFLCP and the Holocaust Victim Assets Programme and coordinated direct assistance with claim completion for more than 11,000 Romanies in eight central and eastern European countries.

34.     I was appointed by Chairman Lawrence Eagleburger, former U.S. Secretary of State, to serve as consultant to the International Commission on Holocaust Era Insurance Claims (ICHEIC) on notice and outreach strategies and supervised the notification of claimants and face-to-face assistance programs in eastern Europe and the former Soviet Union.

35.     I was appointed by the Israeli government as the administrative director of Project HEART (Holocaust Era Asset Restitution Taskforce) to provide essential tools, strategy, and information to enable Israel and its partners to secure restitution for eligible Jewish Holocaust victims and their heirs. Project HEART was one of the most comprehensive multilingual notice campaigns ever undertaken, covering 137 countries. I assisted in launching a multilingual, interactive website, establishing a 24-hour call center in 13 languages, distributing more than 500,000 documents to potentially eligible families of Holocaust victims, handling more than 80,000 telephone calls, conducting archival research, and creating the most comprehensive online database of nearly two million records looted Jewish property. In addition, under my supervision, Project HEART reached out to 15,000 non-governmental organizations (NGOs) to engage them in the project to provide personal assistance to thousands of Holocaust victims and their heirs in making their claims.

36.     I was appointed as the Settlement Administrator in the matter of *Leslie Ann Wilkie Peltier, et al. v. Deb Haaland, et al.*, No. 20-cv-03775 (D. D.C.), a class action lawsuit to redress alleged breaches of trust by the United States Department of the Interior, the United States Department of the Treasury, and the United States of America with respect to the accounting and management of two Judgment Awards of the Indian Claims Commission (ICC). The $59 million settlement provides relief to several generations of tribal families. As part of this litigation, I worked over the course of several years to develop a novel class notification and claims adjudication process that would quickly and efficiently distribute settlement funds to surviving tribal members and their heirs, many of whom are ageing. At the preliminary approval hearing, the federal judge overseeing the settlement noted that CEG was "instrumental in helping to shape the deal…"

37.     At the final settlement approval fairness hearing, class counsel noted that CEG "made extensive efforts to identify and reach" the class and that CEG's class notification efforts "have met or gone beyond the Rule 23…requirements…The notice program here has been thorough…" In his order granting final class action settlement agreement approval, the court noted that CEG's class notification process provided "the best notice practicable under the circumstances…and it was reasonably calculated to reach the class members."

38.     As an indication of the notice adequacy and its expansive reach, claimants were reached beyond the USA and claims were filed by class members from additional countries.

## III.    DATA AND DOCUMENTS RELIED ON

39.     My opinions are based on the data and information available to me as of today. I reserve the right to supplement or amend this Expert Report should new and/or additional data or information be provided to me.

40.     In the course of my work on this matter, I have reviewed the Order Granting Motion for Class Certification (the "Class Certification Order") and the CDR.

## IV.    OPINION: Using the CDR, there is a reliable method of efficiently and effectively notifying the proposed Class that comports with the requirements of Federal Rule of Civil Procedure 23.

41.     Providing notice of class certification is a standard process that class action administrators have been performing for decades. My team and I have overseen notice of class certification, notice of class settlement, claims adjudication, and fund distribution in more than 1,700 class action cases in my professional experience.

42.     It is a straightforward and administratively feasible process to provide notice of class certification to the class members in this case. The CDR includes relevant telephone numbers which can be used for purposes of providing email notice.

43.     The telephone numbers from the CDR would be used to identify class members' email addresses, using a reverse append process available through data processors which would append up to five email addresses per class member.

Expert Report of Anya Verkhovskaya                                          Page 12 of 13
*Mey v. Principal Law Group, LLC, et al.*

44.     Once the email addresses of class members associated with the telephone numbers in the CDR are identified, the notice can be easily provided.

45.     Email notices, including the full text of the Notice, will be issued. These email notices will be tracked for their status as "bounced," "delivered," and/or "opened."

46.     Based on my experience, expertise, and the data available to me, it is my opinion to a reasonable degree of certainty that there is a reliable, efficient, and effective method to notify the certified Class in this matter that comports with the requirements of Federal Rule of Civil Procedure 23. By utilizing the Call Detail Records (CDR) provided and employing industry-standard techniques, including reverse append processes, class member email addresses can be located, and email notice can be delivered. The proposed methodology follows established best practices in class action administration and been utilized in numerous cases.

47.     I reserve the right to amend or supplement this Expert Report if additional data or information becomes available that may impact my opinion.

Executed at Milwaukee, Wisconsin, this March 14, 2025.

Anya Verkhovskaya

Expert Report of Anya Verkhovskaya
*Mey v. Principal Law Group, LLC, et al.*