IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

DIANA MEY, on behalf of herself
and a class of others similarly situated,

    Plaintiff,

v.
                                Civil Action No. 5:23-cv-46

PRINCIPAL LAW GROUP, LLC, et al.

    Defendants.

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND AWARD OF ATTORNEYS' FEES AND COSTS

Principal Law Group, LLC has refused to defend or otherwise participate in this litigation. As a result, this Court entered default against it. Following that, this Court certified a class of 804 individuals who collectively received 1,027 unlawful calls, and class notice was provided pursuant to the Court-approved notice plan. Plaintiff Diana Mey now moves for (1) entry of default judgment against Principal Law Group in the amount of $1,540,500; (2) an award of attorney's fees and costs not to exceed $520,000, the receipt of which will be contingent upon the success of ensuing judgment collection efforts; and (3) an incentive award to Mey in the amount of $10,000 in recognition of her efforts on behalf of the class.

### OPERATIVE FACTS

In February 2024, after Principal Law decided to abandon its defense and refused any further participation in this litigation, this Court struck Principal Law's

answer and directed entry of default. (ECF No. 95). As a result, the allegations in Mey's Amended Complaint (ECF No. 38), summarized below, are deemed admitted.

Principal Law is a law firm representing clients in the prosecution of mass toxic tort claims against the United States of America in what has become known as the Camp Lejeune litigation. (Am. Compl. ¶13). In a race to sign up clients, law firms—including Principal Law—have collectively spent millions of dollars on mass tort ad campaigns seeking to represent Camp Lejeune victims. (*Id.* at ¶15). Advertising is the main method to find claimants, and it's handled by an ecosystem of lawyer-specific ad agencies known as lead generators. (*Id.*) To increase the reach of its efforts to sign up Camp Lejeune victims, Principal Law and its agents used automated technology to place thousands of calls to potential claimants. (*Id.* at ¶16).

Despite her being listed on the DNC Registry, Principal Law, directly and through its agent MCM Hustle LLC, initiated telephone calls to Mey and others for the purpose of soliciting legal services in connection with the Camp Lejeune litigation. (*Id.* at ¶18). For instance, in January 2023, Mey received several calls seeking to qualify her as a claimant in the Camp Lejeune litigation. (*Id.* at ¶¶19-36). Mey never consented to be called by or on behalf of Principal Law. (*Id.* at ¶37). Nor did Mey have a prior business relationship with the firm. (*Id.*)

During these calls, Mey feigned interest in the solicitations in order to identify those responsible for placing the offending calls. (see generally, *id.* at ¶¶19-36). Those efforts to unveil the responsible parties were successful. (*Id.*) In the course of those calls, it was revealed that the calls were physically placed by MCM Hustle LLC, a

2

telemarketing vendor procuring leads on behalf of Principal Law. (*Id.* at ¶32-33). Principal Law acknowledged that MCM Hustle used, among other methods, cold calls to solicit prospective clients for Principal Law. (*Id.*) Once MCM Hustle identified prospective clients, the calls were then forwarded to Principal Law for final client onboarding. (*Id.* at ¶¶ 19-36) (ECF No. 106-1). As a result of the calls, Mey received an "ATTORNEY-CLIENT EMPLOYMENT AGREEMENT in Mass Torts Cases." (*Id.* at ¶29-30). The representation agreement was emailed to Mey by an employee of Principal Law and provided that Principal Law would assist in the provision of legal services. (*Id.* at ¶ 30.)

In sum, as a result of Principal's default, the following critical facts are deemed admitted: (1) Principal Law, through its agent MCM Hustle, used automated technology to place thousands of calls to potential Camp Lejeune claimants; (2) Principal Law and its telemarketing agent placed telemarketing calls to residential phone numbers on the do-not-call registry; (3) the putative class members whose numbers are registered with the National Do-Not-Call registry received more than one call in a twelve-month period; (4) neither Principal Law nor its telemarketing agent had the requisite consent from the putative class members; (5) the telemarketer responsible for physically placing the offending calls was an agent of Principal Law; and (6) the resulting TCPA violations were knowing and willful.

## PROCEDURAL HISTORY

Following entry of default against Principal Law, this Court certified the following class: "All individuals appearing on the Call Detail Records attached as

3

Exhibit A to the Plaintiff's motion for class certification." (ECF No. 114). On March 24, 2025, this Court approved Plaintiff's class notice plan. (ECF No. 122). Class notice has been effectuated and the deadline by which class members may opt-out has expired.[1] (*See* Exhibit A, Decl. of C. Peters-Stasiewicz). The Class Notice Administrator received no opt-out requests. (*Id.*)

### DISCUSSION

### I. Default Judgment is Appropriate, and the Amount Thereof is Readily Calculable

Under Fed. R. Civ. P. 55(b)(2), a court may enter default judgment upon application of a party and upon a showing of entitlement to relief. The decision to grant default judgment rests in the sound discretion of the Court. *See Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986). In a TCPA action, damages may be awarded without a hearing where the amount is a sum certain or can be made certain by computation. *See Mey v. Castle L. Grp., PC*, 2022 WL 3108034, at *6 (N.D.W. Va. July 5, 2022) ("While the court may conduct a hearing to determine the amount of damages pursuant to Rule 55(b)(2), it may also award damages without a hearing where the amount claimed is 'capable of mathematical calculation'"). "Courts are afforded significant discretion when determining the need for a hearing

---

[1] Under the court-approved notice plan, Principal Law was required to post conspicuous notice of this lawsuit and a copy of the class certification order at the top of each page of its website. (ECF Nos. 119 and 120). Despite having been notified of this requirement on more than one occasion, Principal Law has yet to publish any such notice on its website (https://principallawgroup.com/). Though Principal Law's refusal may warrant sanctions, which can be addressed by separate motion, its failure to comply with this Court's order is not necessarily fatal to the class notice plan and should not preclude default judgment. After all, class notice was successfully emailed to approximately 93% of the class. (*See* Ex. A, at ¶4).

on damages" and "[t]his is especially true where the award is that of statutory damages." *Id*. Here, like in *Mey v. Castle L. Grp.*, the damages sought are statutory and straightforward to calculate based on the number of violative calls.

The TCPA provides for statutory damages of $500 per violation, and permits trebled damages of $1,500 per call for willful or knowing violations. *See* 47 U.S.C. § 227(c)(5). The admitted factual allegations establish that each of the 1,027 calls identified in the Call Detail Records ("CDRs") (*see* ECF No. 106-1) amounted to willful violations of the TCPA's DNC provisions. As a result, the total sum certain for final judgment is $1,540,500 (1,027 calls x $1,500).

Because this figure is derived entirely from statutory damages tied to discrete calls identified in the CDRs, no evidentiary hearing is necessary. *See Mey v. Phillips*, 71 F.4th 203, 224 (4th Cir. 2023) ("because the damages consisted strictly of statutory penalties, the amount of the which was readily discernable on the basis of undisputed evidence in the record, the district court did not abuse its discretion by entering judgment in favor of [plaintiff] and awarding statutory damages without a trial").

## II. The Requested Fee Award is Reasonable and Appropriately Structured to Ensure Alignment of Interests

### A. Structure of Award and Administration of Collected Sums

Class Counsel requests that this Court approve an award of attorneys' fees and expenses not to exceed $520,000, to be paid exclusively from funds actually recovered on the judgment. This total amount represents one-third of the anticipated judgment ($1,540,500), consistent with customary contingency arrangements, plus $6,500 in reimbursable litigation expenses. To ensure that Class Counsel remains properly

incentivized to pursue enforcement and that the interests of counsel and the Class remain fully aligned, Class Counsel proposes that the approved fee and expense award be disbursed according to the following tiered and collection-based structure:

- <u>Initial Recovery</u>. The first $50,000 recovered from the judgment debtor shall be paid entirely to Class Counsel. This initial disbursement will reimburse Class Counsel for incurred litigation expenses ($6,500) and serve as seed funding for future enforcement activities.

- <u>Subsequent Recoveries</u>. All additional funds collected on the judgment shall be allocated 67% to the Class and 33% to Class Counsel, continuing until the full $520,000 fee and expense cap has been satisfied.

- <u>Subsequent Disbursements to Class Counsel</u>. Funds allocated to Class Counsel pursuant to this structure may be disbursed to Class Counsel upon receipt of each recovery, rather than held for periodic distribution. Class Counsel may receive its proportionate share of each collection as it occurs.

- <u>Disbursements to Class Members</u>. Funds allocated to the Class shall be distributed in a single distribution following the earlier of (i) collection of the full judgment amount or (ii) a determination by Class Counsel, subject to Court approval, that further collection efforts are no longer economically feasible or likely to succeed. This approach streamlines administration and avoids the burdens of repeated interim distributions

while preserving prompt payment to class members once the overall recovery is determined.

- Opt-In Requirement for Class Members. To receive a distribution, class members must submit a valid and timely claim form affirmatively electing to participate in any recoveries. Class Counsel will design and administer a streamlined claims process, subject to Court approval, and provide periodic reporting on class member participation.

- Compensation to Class Members. Eligible class members who submit timely claims shall receive compensation of up to $1,500 per violative call received, consistent with the statutory damages authorized by the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3). If total recoveries are insufficient to fully satisfy all valid claims, payments shall be made on a pro rata basis.

- Residual Funds and Cy Pres Distribution. Once all participating class members have been fully compensated at the statutory maximum, any remaining funds allocated to the class shall be distributed cy pres to one or more nonprofit or charitable organizations whose mission aligns with the interests of the class or the subject matter of this litigation (e.g., consumer privacy, digital rights, or telecommunications accountability). Class Counsel will submit proposed recipients for Court approval prior to final distribution.

- <u>Court Oversight and Reporting</u>: Class Counsel will submit semi-annual status reports detailing collections to date, disbursements to Counsel, claims participation rates, and any proposed cy pres recipients once applicable. The Court shall retain jurisdiction to oversee the implementation and administration of this recovery and distribution framework.

This proposed structure strikes a fair and practical balance: it conditions Class Counsel's compensation on the actual benefit delivered to the Class, provides essential upfront funding to facilitate judgment enforcement, and ensures that participating class members receive their full statutory recovery before any excess funds are directed to appropriate public-interest organizations. It reflects both the substantial work already performed and the significant efforts that will be required to collect and distribute funds under a default judgment posture.

*B. The Requested Fees and Expenses are Reasonable and Appropriate*

Within the Fourth Circuit, as in the majority of all federal district courts, the percentage-of-recovery method is the "preferred approach" to calculating attorneys' fees in common fund settlements. *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015); *see also Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 481 (D. Md. 2014) ("District courts in the Fourth Circuit, and the majority of courts in other jurisdictions, use the percentage of recovery method in common fund cases"); *Krakauer v. Dish Network, L.L.C.,* No. 14-333, 2018 WL 6305785, at *2 (M.D.N.C.

Dec. 3, 2018); *Hatzey v. Divurgent, LLC*, No. 18-191, 2018 WL 5624300, at *4 (E.D. Va. Oct. 9, 2018).

As compared to the alternative "lodestar" method (discussed below), the percentage-of-recovery approach "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 461 (S.D. W. Va. 2010). It provides a strong incentive to plaintiffs' counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances, by removing the incentive, present under the lodestar method, for class counsel to "over-litigate" or "draw out" cases in an effort to increase the number of hours used to calculate their fees. *See Jones v. Dominion Res. Servs. Inc.*, 601 F. Supp. 2d 756, 759 (S.D. W. Va. 2009); *see also Teague v. Bakker*, 213 F. Supp. 2d 571, 584 (W.D.N.C. 2002) ("[A]n award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund."). Further, the percentage-of-recovery approach eliminates the burden on courts to engage in a detailed review and calculation of attorneys' hours and rates. *See In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010). And finally, "it is also viewed as the preferable method in cases such as this one, where the Plaintiff[] agreed to pay counsel on a contingency fee basis." *In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, No. 09-0054, 2012 WL 5430841, at *2 (D.S.C. Nov. 7, 2012).

An award of attorneys' fees in a class action must be "reasonable." Fed. R. Civ. P. 23(h). For several reasons, the Court should conclude that Class Counsel's request for a one-third fee in this case meets that requirement.

First, a one-third fee is a reasonable market rate that has been routinely approved in TCPA class actions. *See, e.g., Williams v. Old HB, Inc.,* No. 13-00464, 2015 WL 127862, at *6 (W.D. Va. Jan. 8, 2015) (concluding that one-third contingency fee was "customary" and "reasonable" for tort cases in Western District of Virginia). Indeed, a district court within this circuit surveyed cases and found that fee awards of one-third of the settlement value are "typical" in TCPA class action settlements. *See Krakauer,* 2018 WL 6305785 at *3.[2] And indeed, Class Counsel and their co-counsel in this case have routinely been awarded attorneys' fees of one-third of the value of the settlements or judgments they have obtained on behalf of class members. *See, e.g., id.* at *6 (awarding one-third of $61 million judgment after trial); *Mey v. Venture Data,* No. 14-123, ECF No. 313 (N.D. W. Va. Sept. 6, 2018) (awarding one-

---

[2] The *Krakauer* court cited *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, No. 11-02467, ECF No. 105-1 at ¶ 5, ECF No. 110 at ¶ 13 (D. Md. Oct 21, 2014 and Feb. 12, 2015) (approving fee award of one-third of $4.5 million TCPA settlement); *Hageman v. AT&T Mobility, LLC*, No. 13-00050, ECF No. 68 at ¶ 14 (D. Mont. Feb. 11, 2015) (awarding attorney's fees equal to one-third of TCPA settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-05953, ECF No. 146 at ¶¶ 9, 11 (N.D. Ill. Nov. 1, 2010) (same); and *Saf-T-Gard Int'l, Inc., v. Seiko Corp. of Am.*, No. 09-00776, ECF No. 98-2 at 7, ECF No. 100 at ¶ 8 (N.D. Ill. Jan. 7, 14, 2011) (same).

For other recent examples, see *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ("[C]ourts in this district regularly base fee awards on the market rate of one-third of the common fund in TCPA class action settlements."); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 502–03 (N.D. Ill. 2015) (36% fee award); *Lees v. Anthem Ins. Cos.*, No. 4:13cv1411, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (34% award); and *Vandervort v. Balboa Capital Corp.*, 8 F.Supp.3d 1200, 1210 (C.D. Cal. 2014) (33% award).

third of $2.1 million class settlement); *Mey v. Patriot Payment Grp.*, No. 15-27, ECF No. 127 (N.D. W. Va. July 26, 2017) (awarding one-third of $3.7 million class settlement).

Second, the particular circumstances of this case merit the requested fee, when weighed against the so-called *Barber* factors, which can be used to assess the reasonableness of attorneys' fees in common fund class action lawsuits. *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978); *Krakauer,* 2018 WL 6305785, at *3 (applying *Barber* factors in TCPA class action). The *Barber* factors focus the Court's analysis on three main issues: (1) the value of counsel's work and the results obtained; (2) the risks and obstacles counsel faced; and (3) quantitative inputs like time and labor expended, the customary fee for like work, and other awards in similar cases.[3] Here, Class Counsel has invested over 330 hours and advanced more than $6,500 to prosecute this case. Ex. B. In particular, Plaintiff and her counsel have defeated motions to dismiss the Complaint, as well as additional

---

[3] These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber*, 577 F.2d at n.28.

Recognizing that *Barber* is not a common fund case, some district courts have instead looked to the seven-factor test adopted by the Third Circuit in *In re Cendant Corp. Prides Litigation* to determine the amount of a reasonable percentage award. *See In re Wachovia Corp. ERISA Litig.*, 2011 WL 5037183, at *3–4 (W.D.N.C. Oct. 24, 2011) (citing cases). Under either set of factors, however, the Court's reasonableness analysis would focus on the three broad categories described above, and the result would be the same.

11

motions to dismiss the Amended Complaint. [ECF Nos. 32, 33, 58, and 59]. From there, Plaintiff and her counsel defeated a motion to certify an issue for interlocutory appeal [ECF No. 57], engaged in critical discovery, successfully compelled the production of critical class call records [ECF No. 105], secured entry of default against Principal Law [ECF No. 95], obtained class certification [ECF No. 114], and prepared and facilitated a court-approved a class notice plan [ECF No. 122]—all of which has culminated in this motion for default judgment in the amount of $1,540,500. The fee is further justified given the additional work that lies ahead and which will be necessary to collecting on a default judgment.

Although a lodestar crosscheck is unnecessary, it further justifies the requested fee. As stated earlier, the percentage-of-recovery method is the "preferred" approach in the Fourth Circuit and comports with class action practice nationwide, where the "vast majority" of courts now direct or permit district courts to award a percentage from the common fund. *See* Manual for Complex Litig., § 14.121 (4th ed. 2004). Despite the advantages and popularity of the percentage-of-recovery method, however, some courts employ what is known as a "lodestar crosscheck"—analyzing the value of counsel's work in relation to their hours and hourly billing rates—to confirm the reasonableness of the percentage award. Although such analysis is not required by the Fourth Circuit and is, in many respects, problematic,[4] a lodestar

---

[4] In many respects, the lodestar crosscheck reintroduces the same bad policy and perverse incentives that the increasingly popular percentage-of-fund method has overcome. If class counsel believe that courts will limit their fee to some multiple of their lodestar, then they will have the same imperfect incentives they would if courts used the lodestar method alone: to be inefficient, perform unnecessary projects, delay results, and overbill and

12

crosscheck in this case only provides further support for Class Counsel's requested fee.

The extent to which requested fee exceeds the lodestar amount is known as the "lodestar multiplier." A reasonable lodestar multiplier rewards counsel for the risks inherent in contingent litigation, the value of the time and money invested on behalf of the class, and the result achieved. *See In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 340 (3d Cir. 1998). Put another way:

> [C]ontingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The interest rate on such a loan is high because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is so much higher than that of conventional loans.

Richard A. Posner, *Economic Analysis of Law* § 21.9, at 534–35 (2d ed. 1984); *accord In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011) (Posner, J.). "Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee." *Krakauer,* 2018 WL 6305785 at *5 (cleaned up); *see also Singleton v. Domino's Pizza, LLC,* 976 F.Supp.2d 665, 689 (D. Md. 2013) (noting that the lodestar multipliers "on large and complicated class actions have ranged from at least 2.26 to 4.5").

---

overstaff work in order to run up their lodestar. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) ("The lodestar method is merely a crosscheck on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee . . . ."). The lodestar crosscheck also caps the amount of compensation class counsel can receive, thereby misaligning their incentives from those of class, and reducing their rational incentive to achieve the largest possible award for the class.

As of this filing, Class Counsel have devoted more than 330 hours to the class claims, for a total lodestar of approximately $187,000. *See* Exhibit B. Thus, Class Counsels' fee request for $513,500 (exclusive of costs) yields a lodestar multiplier of just 2.75—well within the range approved by courts within this circuit and elsewhere. Applying the lodestar crosscheck thus confirms that the requested fee is reasonable.

## Conclusion

Default has been entered, the class has been certified, class notice has been effectuated, no opt-outs have been received, and damages are calculable from the record. Plaintiff, on behalf of herself and the certified class, requests that the Court: (1) enter final default judgment against Principal Law Group, LLC in the total amount of $1,540,500, reflecting $1,500 per call for 1,027 independent violations of the TCPA's DNC rules; (2) award Class Counsel attorney's fees and costs not to exceed $520,000; and (3) award Mey $10,000 in recognition of her efforts on behalf of the class.

**DIANA MEY**

By Counsel:

/s/Andrew C. Robey
Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com

14

## CERTIFICATE OF SERVICE

The undersigned counsel does hereby certify that on July 15, a true copy of foregoing document was served upon all parties of record via electronic mail. In addition, a hard copy was served upon Principal Law by U.S. Mail at the below address:

Principal Law Group, LLC
10441 Racetrack Road, Suite 3B
Berlin, Maryland 21811

Principal Law Group, LLC
c/o Deborah Crist, Registered Agent
1614 Mercers Way
Berlin, Maryland 21811

/s/ *Andrew C. Robey*
Andrew C. Robey (WVSB #12806)